UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | : | MULTIDISTRICT LITIGATION NO. 05-1708 (DWF/AJB) |

This Document Relates to:

Leopoldo Duron, Jr.,

    Plaintiff,

  v.    Civil No. 06-25 (DWF/AJB)

Guidant Corporation, Guidant Sales
Corporation, Boston Scientific Corp., and
Cardiac Pacemakers, Inc.,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF BLOOMBERG L.P.'S MOTION
TO INTERVENE AND UNSEAL THE SUMMARY JUDGMENT MOTION
PAPERS AND ASSOCIATED MATERIALS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

    I.    Bloomberg is Entitled to Intervene on the Public's Behalf Pursuant to Rule 24(b) for the Limited Purpose of Moving to Unseal the Summary Judgment Materials. ............... 5

        A.    Bloomberg serves the public by disseminating news throughout the nation and world. ...................................................................................................................... 5

        B.    As the eyes and ears of the public, the press -- including Bloomberg -- has a right under the First Amendment and common law to intervene. ................................... 6

    II.    The Wholesale Filing under Seal of the Summary Judgment Materials is Unwarranted, and the Court Should Unseal the Summary Judgment Materials. ................................... 8

        A.    The First Amendment and common law establish a presumption of access to the Summary Judgment Materials. ................................................................................ 8

        B.    Guidant must meet a high burden to establish that any of the Summary Judgment Materials should be redacted or sealed. .............................................................. 10

        C.    To the extent that Guidant demonstrates that it is entitled to protection for any of the Summary Judgment Materials, such protection must be narrowly tailored. .... 12

        D.    Guidant has not carried its burden to show good cause or articulate compelling reasons to seal the Summary Judgment Materials, which should therefore be unsealed ............................................................................................................... 13

    III.    This Court Should Grant Bloomberg's Motion to Intervene and Unseal the Summary Judgment Materials in an Expedited Fashion. ............................................................ 15

CONCLUSION ...................................................................................................................... 16

Pursuant to Federal Rule of Civil Procedure 24(b) ("Rule 24(b)"), non-party Bloomberg L.P. ("Bloomberg") hereby moves to intervene in these proceedings for the limited purpose of: 1) allowing access to those sealed documents specifically referenced in the hearing before the Court on defendants' several summary judgment motions, and 2) seeking to unseal the summary judgment motion papers and the associated materials filed with the Court (the "Summary Judgment Materials"). Under well-settled principles of the First Amendment and common law, Bloomberg's motion to intervene should be granted, and the Court should unseal the Summary Judgment Materials to the extent that the Guidant Corp. defendants ("Guidant") cannot affirmatively demonstrate, on a document-by-document basis, good cause and compelling reasons for sealing specific documents. To the extent that Guidant can show good cause and compelling reasons for sealing specific documents, moreover, the documents should be narrowly redacted and released to the public in redacted form.

## PRELIMINARY STATEMENT

During litigation in this matter the Court adopted the terms of a stipulated protective order to govern access to documents in this case. Unfortunately, the protective order went too far and contained a paragraph the effect of which allowed Guidant and required plaintiffs to file court papers under seal without demonstrating good cause or compelling reasons to do so.

The public in general -- and Bloomberg in specific -- has a presumptive right of access to the Summary Judgment Materials, particularly in light of the fact that

1297988.1

some of these documents were expressly referred to in open court, and all of them comprise and support, or oppose, dispositive motions that will either end the proceedings before this Court, or, at least, "shape[] the scope and substance of the litigation and put the litigants squarely on a path toward trial." Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660 (3d Cir. 1991).

The public's right to know what goes on in its courthouses is manifest. Consequently, the First Amendment and common law grant the public -- and the news media as the public's eyes and ears -- the right to review judicial filings such as the Summary Judgment Materials. Indeed, the public's interest in this case is particularly compelling, given the underlying questions of whether a life-saving medical device functioned properly and whether the manufacturer of the device sold it to the public with knowledge that the device was flawed and had failed to function in some cases.

Even on the rare occasion that a litigant's legitimate interests in filing certain papers under seal or in redacted form trump the public's right to access judicial filings, the Constitution demands that such denial of access be necessitated by compelling reasons and narrowly tailored to serve those interests. Consequently, the Court should require Guidant to make a particularized showing of a need for confidentiality before the Court seals portions of the Summary Judgment Materials. If Guidant is able to make such a showing, the confidential material in question should be protected by the least restrictive means possible.

1297988.1

## STATEMENT OF FACTS

According to the description of this litigation maintained on the Court's website, the cases now before the Court allege that "various implantable defibrillator pacemaker devices manufactured by Guidant Corporation were defective and have caused injury or threaten to cause injury to the plaintiffs and members of the class . . . ."

Under this Court's previous rulings, as Bloomberg understands it, the Court will conduct five bellwether trials. The trial of this, the <u>Duron</u> action, is scheduled to begin on July 30, 2007.

Apparently in anticipation of this trial, Guidant filed several summary judgment motions seeking to have Duron's claims dismissed on the grounds of federal preemption, Learned Intermediary Doctrine, lack of injury and lack of breach of warranty. Guidant also sought an order dismissing Mr. Duron's claims for unjust enrichment, strict liability, intentional and negligent infliction of emotional distress, unfair and deceptive practices and consumer fraud. Finally, Guidant sought an order of this Court denying Mr. Duron's punitive damage claim. Guidant filed exhibits to assist this Court in making its decision; according to the case docket, all of those exhibits were filed under seal. It appears that the exhibits filed in opposition to Guidant's motions were also filed under seal.

Finally, at the dispositive motion hearing held by this Court on May 18, 2007, several sealed documents were referred to by counsel during their presentations. Guidant marketing documents, important because of their historical context, were

-3-

1297988.1

discussed on pages 37, 43 and 44 of the transcript. A health risk assessment was cited at page 38. Guidant memos about the products and their potential risks were cited at pages 47, 51, 53 and 54. A device schematic was referred to on page 49. A third party paper was cited on page 45. Several references to the deposition of a Mr. Armstrong were spread throughout the arguments. Although these references were made in open court, and even though the documents may have been available to the audience for viewing, and ultimately may be important to the Court's decision on these dispositive motions, they remain sealed.

Bloomberg understands that these exhibits are sealed pursuant to a Stipulated Protective Order filed on October 12, 2005 in one of the original lawsuits ("October 12 Protective Order"). The October 12 Protective Order grants to any party the power to designate material as confidential if that party unilaterally determines that such material "constitutes or reflects trade secrets or information whose confidentiality is otherwise protectable under applicable law." (See Hannah Aff. Exh. A, Protective Order ¶ 1). If a party files "documents" and that "deposition testimony" designated as confidential, those documents must be filed under seal. (See Hannah Aff. Exh. A, Protective Order ¶ 10).

This paragraph is where the October 15 Protective Order is constitutionally flawed because it deprives the public of its right to access judicial documents. The October 15 Protective Order must not allow the sealing of substantive judicial filings without a deeper constitutional analysis. The October 15 Protective Order neither

1297988.1

requires any party to show good cause or articulate compelling reasons for filing a judicial document under seal, nor tailors narrowly any protection of legitimately confidential information. Accordingly, Guidant has inappropriately filed the exhibits to the Summary Judgment Materials under seal in their entirety, in clear violation of the dictates of the First Amendment and common law.

## ARGUMENT

I. Bloomberg is Entitled to Intervene on the Public's Behalf Pursuant to Rule 24(b) for the Limited Purpose of Moving to Unseal the Summary Judgment Materials.

   A. Bloomberg serves the public by disseminating news throughout the nation and world.

   Bloomberg is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in New York. Among other things, Bloomberg operates Bloomberg News, a 24-hour global news service based in New York with more than 1,800 journalists in 108 bureaus around the world. Bloomberg supplies real-time business, financial, and legal news to more than 200,000 subscribers world-wide. As a wire service, Bloomberg provides news to more than 400 newspapers globally, including the St. Paul Pioneer Press and the Star-Tribune in Minneapolis. Bloomberg provides radio and television programming throughout the world through its 750 radio affiliates and its eleven 24-hour cable news television stations. Bloomberg publishes four monthly magazines and more than 50 books each year. Bloomberg's website receives 3.5 million visits each month. In total, Bloomberg distributes news, information, and commentary to millions of readers and listeners each day, and has published over one-hundred million stories.

1297988.1

> B. <u>As the eyes and ears of the public, the press -- including Bloomberg -- has a right under the First Amendment and common law to intervene.</u>

The October 15 Protective Order recognized the significant harm which could result from an overbroad interpretation of its terms. Under its language, the "Court retains the power, either upon motion of any interested party or on its own motion, to determine whether materials filed under seal shall remain sealed." (<u>See</u> Hannah Aff. Exh. A, Protective Order ¶ 10).

Bloomberg files this motion pursuant to Rule 24(b), upon which courts uniformly rely to entertain motions by non-parties seeking access to judicial pleadings and documents. <u>See, e.g.</u>, <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 778 (3d Cir. 1994) ("the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered into that action"); <u>In re Baycol Prods. Litig.</u>, 214 F.R.D. 542 (D. Minn. 2003) ("<u>Baycol I</u>"); <u>Northern States Power Co. v. Westinghouse Elec., Corp.</u>, 156 F.R.D. 168 (D. Minn. 1994). "Although the Eighth Circuit has not yet issued a decision on this precise issue, the clear majority view allows the use of Rule 24(b) to challenge a confidentiality order." <u>Baycol I</u>, 214 F.R.D. at 543 (allowing to a newspaper to intervene to challenge a confidentiality order). Bloomberg has found no reason or indication that the Eighth Circuit would create a body of contrary law. Further, "Rule 24(b)(2) should be interpreted broadly to allow news media an effective mechanism to contest the scope or need for a confidentiality order." <u>Id.</u> at 544. <u>See also</u> <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596, 609 n.25 (1982) ("representatives of the

-6-

1297988.1

press and general 'public must be given an opportunity to be heard on the question of their exclusion'") (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 401 (1979)); Jessup v. Luther, 227 F.3d 993, 997 (7th Cir. 2000) (holding that the right of the press to intervene to challenge the closure of courts in civil litigation "is rooted in the public's well-established right of access to public proceedings"); Washington Post v. Robinson, 935 F.2d 282, 287 (D.C. Cir. 1991) ("The first amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed."); Bigelow v. District of Columbia, 122 F.R.D. 111, 112 (D.D.C. 1988); Westmoreland v. CBS, 752 F.2d 16, 23 (2d Cir. 1984) ("the First Amendment does secure to the public and to the press a right of access to civil proceedings").

"The principle consideration for this Court in determining whether permissive intervention should be granted is whether such intervention will unduly delay or prejudice the adjudication of the parties' rights." Baycol I, 214 F.R.D. at 544 (citing South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003)).

As a guardian of the public's presumptive right of access, and to discharge its right and obligation to gather and report upon matters of significant public interest, Bloomberg seeks access to the Summary Judgment Materials.  Because Bloomberg seeks to intervene only to exercise its -- and the public's -- rights of access, and not to engage in the substance of the underlying litigation, moreover, there can be no question that Bloomberg's "intervention will [not] unduly delay or prejudice the adjudication of the

1297988.1

parties' rights." Baycol I, 214 F.R.D. at 544. Pursuant to Rule 24(b), and in keeping with the principles set forth thereunder, Bloomberg should be granted leave to intervene.

II. The Wholesale Filing under Seal of the Summary Judgment Materials is Unwarranted, and the Court Should Unseal the Summary Judgment Materials.

A. The First Amendment and common law establish a presumption of access to the Summary Judgment Materials.

The First Amendment and common law grant the public and the press the right of access to civil judicial proceedings and documents. "It has long been recognized that the public has a First Amendment right of access to criminal proceedings, civil proceedings, and to 'receive information and ideas' pertaining to the conduct of public affairs." Center for Nat'l Sec. Studies v. United States, 215 F. Supp. 2d 94, 111-12 (D.D.C. 2002) (footnotes omitted) (quoting Kleindienst v. Mandel, 408 U.S. 753, 762 (1972)) cert. denied sub nom., Center for Nat'l Sec. Studies v. DOJ, 540 U.S. 1104 (2004); see also Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (citing Grove Fresh Distribs. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994)); Washington Post, 935 F.2d at 287 (holding that the First Amendment "guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed."). The presumptive right of access to pretrial civil proceedings "derives from the core purpose of the First Amendment, which is to ensure 'freedom of communication on matters relating to the functioning of government.'" Center for Nat'l Sec. Studies, 215 F. Supp. 2d at 112 (quoting Richmond Newspapers Inc. v. Virginia,

1297988.1

448 U.S. 555, 575 (1980)).  There can be no doubt that the Summary Judgment Materials are judicial documents to which the public's constitutional right of access applies.

The public's presumptive right of access to judicial documents in this Court is particularly acute where, as here, the judicial documents are potentially dispositive, and where some were, in fact, specifically referenced in the summary judgment hearing.  See, e.g., Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (holding that the "rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"); San Jose Mercury News, Inc. v. U.S. Dist. Ct., 187 F.3d 1096, 1102 (9th Cir. 1999) (holding that the common law right of public access reaches materials used in support of a summary judgment motion in a civil action); Joint Stock Soc'y v. UDV N. Am., Inc., 104 F. Supp. 2d 390, 401 (D. Del. 2000) (unsealing selected materials that were improperly admitted on summary judgment motion because the public, nonetheless, has the right of access to record evidence); Joy v. North, 692 F.2d 880, 893-97 (2d Cir.) ("documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"); Stone v. Univ. of Md. Med. Sys., 948 F.2d 128, 129-31 (4th Cir. 1991) (reversing order sealing records attached to summary judgment motion); Cianci v. New Times Publ'g Co., 88 F.R.D. 562, 564-65 (S.D.N.Y. 1980) (granting access to discovery materials filed in connection with the defendants' unsuccessful motion to dismiss).

1297988.1

      B.      <u>Guidant must meet a high burden to establish that any of the Summary Judgment Materials should be redacted or sealed.</u>

To be sure, there are instances in which a litigant can overcome the presumptive right of access where, for example, bona fide trade secrets will be disclosed. But it is black-letter law that the party seeking to file materials under seal must first make a "'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements' . . . that the disclosure [of the information] will result in a 'clearly defined and very serious injury to its business.'" <u>United States v. Exxon Corp.</u>, 94 F.R.D. 250, 251 (D.D.C. 1981) (quoting 8 Wright & Miller, <u>Federal Practice & Procedure</u> § 2035, at 265 (1970) and <u>United States v. IBM</u>, 67 F.R.D. 40, 46 (S.D.N.Y. 1975)); <u>see also</u> <u>Citizens</u>, 178 F.3d at 944; <u>Leucadia, Inc. v. Applied Extrusion Techs., Inc.</u>, 998 F.2d 157, 165 (3d Cir. 1993) (holding that the party wishing to file under seal bears the burden of showing some significant interest that outweighs the presumption of access); <u>Johnson</u>, 951 F.2d at 1278 (holding that a party seeking to file records under seal must show "specific reasons why the record, or any part thereof, should remain under seal"). This Court is then required to articulate the interest that it is protecting by sealing the materials and make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." <u>Press-Enter. Co. v. Superior Ct.</u>, 464 U.S. 501, 510 (1984).

Showing good cause is not a simple task. The Supreme Court has pointed out that there must be "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." <u>Press-Enter.</u>, 464

-10-

1297988.1

U.S. at 510. Indeed, in <u>Johnson</u>, the D.C. Circuit made clear that a party's general statement that sealing is required to keep its "processes out of the public eye" is insufficient to justify sealing court files in a civil case. <u>Johnson</u>, 951 F.2d at 1277. Similarly, the Sixth Circuit has pointed out that "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." <u>Brown & Williamson Tobacco Corp. v. FTC</u>, 710 F.2d 1165, 1179 (6th Cir. 1983).

Some courts have recognized that a party seeking to seal a dispositive document -- as Guidant does here -- must show more than "good cause"; it must "articulate[] <u>compelling reasons</u> supported by specific factual findings" to justify the continued sealing of the document. <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added).[1] "A 'good cause' showing will not, without more, satisfy a 'compelling reasons' test." <u>Kamakana v. City & County of Honolulu</u>, 447 F.3d 1172, 1180 (9th Cir. 2006) (citations omitted). Rather, a court must "base its decision [to seal certain judicial records relating to a dispositive motion] on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995) (citing <u>Valley Broad. Co. v. United States Dist. Ct.</u>, 789 F.2d 1289, 1295 (9th Cir. 1986)). As the Ninth Circuit has stated, "[u]nlike private materials unearthed during discovery,

---

[1] The Eighth Circuit has not yet addressed the Ninth Circuit's "compelling reasons" test, though there is no reason not to adopt it.

-11-

1297988.1

judicial records are public documents almost by definition, and the public is entitled to access by default." Kamakana, 447 F.3d at 1180 (citing Nixon, 435 U.S. at 597).

    C.    <u>To the extent that Guidant demonstrates that it is entitled to protection for any of the Summary Judgment Materials, such protection must be narrowly tailored.</u>

Even if Guidant is ultimately able to make the requisite good cause or compelling reasons for the need for some secrecy, the relief provided must be narrowly tailored. "[T]o deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling government interest, and is narrowly tailored to serve that interest." Press-Enter., 464 U.S. at 510 (quoting Globe Newspaper, 457 U.S. at 606-07). Furthermore, "[s]hould the court determine that some kind of sealing order is warranted, that order should be no broader than is necessary to protect those specific interests identified as in need of protection." Johnson, 951 F.2d at 1278. As Judge Easterbrook of the Seventh Circuit has noted, "Holding trade secrets in confidence is one thing, holding entire judicial proceedings in confidence is quite another." PepsiCo, Inc. v. Redmond, 46 F.3d 29, 31 (7th Cir. 1995).

To the extent that Guidant affirmatively demonstrates that it is entitled to protection for any information within the Summary Judgment Materials, the constitutionally acceptable form of relief would be a narrow redaction of the Summary Judgment Materials, releasing the redacted Summary Judgment Materials to the public and Bloomberg. See, e.g., In re Search Warrants Issued on June 11, 1988 for the Premises of Three Buildings at Unisys, Inc., 710 F. Supp. 701, 705 (D. Minn. 1989)

1297988.1

("The court finds that the privacy rights of certain individuals implicated in the sealed documents are of a compelling nature adequate to overcome the first amendment rights of public access. The portions of the documents redacted to protect these individuals is very small, amounting to approximately twenty-five words. The [F]irst [A]mendment requires disclosure of all the other material except where the government has shown a compelling interest in its ongoing investigation"); EEOC v. Dial Corp., No. Civ. A. 99C 3356, 2000 WL 684195 (N.D. Ill. May 16, 2000) (denying motion to seal documents relating to summary judgment motion in sexual harassment suit because there was no good cause shown, but permitting redaction of personal identifying information).

> D. Guidant has not carried its burden to show good cause or articulate compelling reasons to seal the Summary Judgment Materials, which should therefore be unsealed.

There is no question that the Summary Judgment Materials are judicial documents -- in particular, potentially dispositive judicial documents. Accordingly, the public and Bloomberg have a presumptive right of access to the Summary Judgment Materials under the First Amendment and common law. The burden falls squarely on Guidant to demonstrate why its interests overcome the public's presumptive right of access to the Summary Judgment Materials. See, e.g., Capellupo v. FMC Corp., Civ. Nos. 4-85-1239, 4-86-945, 1989 WL 42615 at *2 (D. Minn. Apr. 28, 1989); Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 165 (3d Cir. 1993) (holding that the party wishing to seal bears the burden of showing some significant interest that outweighs the presumption of access). Guidant has not met that burden.

Indeed, pursuant to the Protective Order, Guidant was not required to make any showing to designate discovery materials as confidential. (See Ex. A, Protective Order ¶ 1.)[2] Once Guidant designated discovery materials as confidential, moreover, the filing of those materials -- or "other things" (such as summary judgment papers) in which the designated discovery materials "are identified, discussed, or disclosed" -- would automatically be filed under seal. (See id. at ¶ 8.) In short, under the Protective Order, Guidant has not shown good cause why the Summary Judgment Materials should be sealed, much less articulated compelling reasons to do so. It is not surprising, then, that the Court has not issued "findings specific enough that a reviewing court can determine whether the closure order was properly entered." Press-Enter., 464 U.S. at 510.

Finally, as far as Bloomberg can tell, the Summary Judgment Materials have been sealed in their entirety. This, of course, is an overly-broad, drastic, and constitutionally untenable solution to protect any information for which there is good cause and are compelling reasons to seal. Rather, any remedy granted Guidant must be narrowly tailored to uphold the public's presumptive right of access. As described above, redactions no broader than necessary to protect any legitimately redactable secrets would be such an appropriate remedy. And even that remedy can be entered if, and only if,

---

[2] Although Bloomberg reserves its right to challenge the terms of the Protective Order, for the purpose of this Motion, the requirements of the First Amendment and common law would be satisfied if this Court: (1) requires Guidant to show good cause and articulate compelling reasons why any Summary Judgment Materials should be sealed; (2) orders redactions no broader than necessary to protect any legitimately redactable secrets; (3) orders the immediate production of the redacted Summary Judgment Materials; and (4) issues findings specific enough that a reviewing court can determine whether this Court's order sealing or redacting any of the Summary Judgment Materials was properly entered.

1297988.1

Guidant meets its burden by affirmatively showing good cause and articulating compelling reasons for such redactions.

III. <u>This Court Should Grant Bloomberg's Motion to Intervene and Unseal the Summary Judgment Materials in an Expedited Fashion.</u>

Each day that the public is denied access to the Summary Judgment Materials constitutes a "separate and cognizable" violation of the First Amendment. <u>Nebraska Press Ass'n v. Stuart</u>, 423 U.S. 1327, 1329 (1975); <u>CBS, Inc. v. Davis</u>, 510 U.S. 1315, 1318 (1994). Indeed, time is of paramount importance in cases like this, which implicate the media's right to report upon matters of significant public interest, as the Kentucky Supreme Court has recognized:

> In relative terms, in reporting the news, time is of the essence. News is news when it happens and the news media needs access while it is still news and not history. The value of investigative reporting as a tool to discovery of matters of public importance is directly proportional to the speed of access. This is true when investigating court records after the case is closed as well as with a case in progress.

<u>Courier-Journal & Louisville Times Co. v. Peers</u>, 747 S.W.2d 125, 129 (Ky. 1988). The <u>Courier-Journal</u> court's admonition is particularly true for a newswire such as Bloomberg, on which the public relies for contemporaneous business and business-related news and analysis. Accordingly, this Court should grant this Motion as soon as possible.

-15-

1297988.1

## CONCLUSION

For the foregoing reasons, Bloomberg respectfully requests that this Court consider this motion on an expedited basis, grant its motion to intervene in this action, and unseal the Summary Judgment Materials.

Dated: Minneapolis, Minnesota
June 13, 2007

                Kelly & Berens, PA

                By:  s/Paul R. Hannah
                    Paul R. Hannah (#40502)
                    Barbara P. Berens (#209788)
                3720 IDS Center
                80 South Eighth Street
                Minneapolis, MN 55402
                (612) 349-6171

Of Counsel:
Charles J. Glasser
General Counsel – Bloomberg News

Thomas H. Golden
Jared E. Cohen
WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY  10019-6099
(212) 728-8000

                *Attorneys for Intervenor Bloomberg L.P.*