**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re:  GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to All Actions | **ORDER REGARDING PLALINTIFFS' MOTION TO STRIKE DR. STEVEN L. HIGGINS AND FOR MONETARY SANCTIONS** |

This matter came before the Court pursuant to a Plaintiffs' Motion to Strike

Dr. Steven L. Higgins and for Monetary Sanctions.  For the reasons set forth below, the

Court grants in part and denies in part the motion.

The factual background, procedural history, and Dr. Higgins' relationship with

Guidant are set forth in the Court's May 22, 2007, June 12, 2007, and July 6, 2007

Orders.  Pursuant to Federal Rule of Civil Procedure 37(b)(2) and (c)(1), Plaintiffs move

the Court for an order (1) prohibiting all testimony by Dr. Higgins in any of the

bellwether trials; (2) striking Dr. Higgins' affidavits used by Guidant to support their

*Duron* and *Clasby* summary judgment motions; (3) imposing monetary sanctions against

Guidant in the sum of $25,000 to be paid to the Court; (4) finding Dr. Higgins in willful

non-compliance and civil contempt for failing to comply in good-faith with the Court's

discovery orders; and (5) granting Plaintiffs leave to file a request for fees and costs

incurred in connection with repeated motion practice concerning discovery from

Dr. Higgins.

Plaintiffs' first three requests are based on their assumption that Guidant violated various Court Orders, in particular the March 22, 2006 Order and March 26, 2007 Order, and the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). The March 22, 2006 Order prohibited Guidant from "commuincat[ing] with the treating physicians of named Plaintiffs regarding the care and treatment of those Plaintiffs." (March 22, 2006 Order at 1-2.) The March 26, 2007 Order required Dr. Higgins to comply with a subpoena *duces tecum* and appear for a deposition, and it reserved the right to exclude Dr. Higgins' testimony at trial if he failed to comply with the Court's Order. (March 26, 2007 Order at 3-4.) HIPPA places specific restrictions on physicians concerning the disclosure of confidential patient medical information. *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1027-29 (S.D. Cal. 2004) (discussing HIPPA's scope of disclosure of patient information).

Duron contends that Guidant's attorneys had ex parte contact with Dr. Higgins in violation of the Court's Orders and HIPPA when those attorneys, among other things, (1) retained Dr. Higgins to testify as a "non-retained expert witness" in the bellwether trials; (2) discussed Dr. Singh's deposition concerning Duron's treatment with Dr. Higgins; (3) drafted his affidavit concerning his care of Duron; (4) served as his "de-facto" attorney during his deposition; and (5) helped him draft an e-mail to the Court that implied that Dr. Higgins was without guidance in this litigation.

Guidant responds that it did not violate the Court's Orders or HIPPA because its

attorneys' communications with Dr. Higgins did not involve discussions concerning

Duron's care and treatment other than the date of Duron's implant.[1]  Rather, based on

Dr. Higgins' "longstanding, confidential consulting relationship with Guidant," Guidant

asserts that "[t]he subject matter discussed at meetings between Dr. Higgins and

Guidant's counsel is the same as that which Dr. Higgins discussed during his work on the

Medical Advisory Board."  (Guidant's Opp. Mem. at 3, 9.)  Guidant asserts that its

attorneys did not discuss Duron's treatment and care with Dr. Higgins, despite the fact

that he reviewed Dr. Singh's deposition concerning Duron.  Instead, Guidant contends

that its attorneys and Dr. Higgins only discussed the fact that Dr. Singh's deposition

focused on whether Duron's replacement device was recalled and Kaiser's approach to

replacement of recalled devices.  Guidant further points out that it did not violate any

Court Order concerning expert disclosure because Dr. Higgins' status as a non-retained

expert witness exempts him from any written report requirements and because Plaintiffs'

---

[1]      Guidant also contends that Duron's position would make it impossible for Guidant
to consult with any electrophysiologist in the United States because all of them treated at
least one individual plaintiff.  At first blush, Guidant's argument is persuasive, but the
Court does not believe that the parties' intended such a result when stipulating to the
March 22, 2006 Order.  The intent of that Order was that Guidant would not consult with
a treating doctor about that doctor's patients.  The better practice would have been for
Guidant to consult with an electrophysiologist who did not treat a bellwether plaintiff.
Given the number of electrophysiologists in the United States, the Court is confident that
this could have been done.

examined Dr. Higgins about his opinions during his deposition.[2]  Dr. Higgins concurs

with Guidant's description of his interaction with Guidant's attorneys.

The history associated with the March 22, 2006 Order reveals that the parties

contemplated Guidant having the ability to consult with physicians to support its case.

Based on the present motion, however, it is evident that the March 22, 2006 Order should

have been more clear, despite the fact that the parties drafted and stipulated to the

language contained in that Order.  The Court believes Guidant's attorneys' interaction

with Dr. Higgins, especially those involving early communications and representations

made by Dr. Higgins to the Court concerning discovery requests, should have been more

forthright.  In working with Dr. Higgins, Guidant and its attorneys are walking a tight

rope, one which they may slip off at any time.  Nevertheless, at this stage, given the

language contained in the March 22, 2006 Order, Guidant's attorneys' and Dr. Higgins'

representations to the Court describing the nature of the contact between Guidant's

attorneys and Dr. Higgins, and the current record before the Court, the Court finds that

Guidant and Dr. Higgins have not yet violated any of the Court's Orders or HIPPA.

With respect to on-going discovery issues from either Guidant or Dr. Higgins, the

Court has repeatedly ordered responses to such discovery requests, and it is dismayed that

document production still needs to be completed.  Given this, it is **HEREBY**

**ORDERED** that:

---

[2]      The Court does not have a complete copy of Dr. Higgins' deposition and therefore asks the parties to immediately provide it with a complete copy.

1.      Plaintiffs' Motion to Strike Dr. Steven L. Higgins and for Monetary

Sanctions (MDL No. 05-1708 (DWF/AJB), Doc. No. 1966) is **GRANTED IN PART**

and **DENIED IN PART WITHOUT PREJUDICE** as follows:

a.      Guidant and Dr. Higgins' creative interpretation of what

"services are performed for Guidant" is respectfully rejected.  Absent an

agreement between the parties, within five calendar days from the date of

this Order,  Guidant and any and all of its attorneys shall produce any and

all documents showing any and all payments or gifts of any kind given for

any reason by Guidant and any and all of its attorneys for any time period

to Dr. Higgins.[3]  This production shall include any and all documents that

list all payments and gifts by year.  If Guidant has a question regarding the

scope of this directive, it should contact the Court immediately, rather than

basing its production on its own interpretation of this Order.  This

production is necessary because it goes directly to Dr. Higgins' credibility,

interest, and bias.

b.      Guidant has acknowledged that it only "substantially

complied" with its production of Dr. Higgins-related documents, despite

---

[3]     Dr. Higgins is correct that Guidant is in a better position to provide information
concerning Guidant's payments and gifts to him.  If, however, after disclosure by
Guidant, questions remain concerning all payments and gifts to Dr. Higgins, the Court
reserves the right to entertain a motion by Plaintiffs and/or Duron to subpoena
Dr. Higgins' tax records to show whether all of Guidant's payments to Dr. Higgins,
including the various trips and other large gifts, are reflected on Dr. Higgins' tax returns.

the Court's  May 21, 2007 deadline.  Absent an agreement between the

parties, Guidant shall produce any and all remaining documents that relate

in any way to Dr. Higgins within five calendar days from the date of this

Order.

       c.      With respect to Dr. Higgins, the Court respectfully rejects any

suggestion in his briefing that he is under no continuing obligation to

supplement his production of documents and assumes that this argument is

not meant to imply that he has additional documents in his possession.

Given Dr. Higgins' unique relationship with Guidant and the fact that he

has already produced documents in this litigation, the Court orders Dr.

Higgins to supplement any and all documents he has that are responsive to

Plaintiffs' document requests no later than five calendar days from the date

of this Order, absent an agreement between the parties as to a different

discovery time frame.  Dr. Higgins' duty to supplement will remain through

the course of this litigation.

       d.      Absent an agreement between the parties, within five calendar

days from the date of this Order, Guidant and/or Dr. Higgins shall inform

the Court and the parties who is paying for his legal fees.  If Dr. Higgins is

paying for his legal fees himself, he must state whether he is being

reimbursed or will in the future be reimbursed by a third party for those

fees.  And he must identify the third party by name and state whether it has

any affiliation in any way with Guidant or Guidant's related entities.

e.      At this time, the Court denies without prejudice Plaintiffs'

request for a finding of contempt or leave to file a motion for attorney fees.

However, it reserves the right to impose sanctions, either in the form of

monetary relief and/or the exclusion of testimony, after it sees for what

purpose Guidant intends to offer Dr. Higgins' testimony.   The Court will,

of course, factor into any decision concerning sanctions whether Plaintiffs

agreed to any production extensions, rescheduled any depositions, or

contributed in some other way to the discovery delays related to Dr.

Higgins.


Dated:  July 6, 2007                          s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              Judge of United States District Court