UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to All Actions | **PRETRIAL ORDER NO. 35** |

A dispute has arisen among the parties as to how to carry out the terms of the Master Settlement Agreement ("MSA") for the cases and claims of approximately 1,770 deceased device recipients. This includes cases and claims asserting that a Guidant device caused the death of a device recipient (collectively, "wrongful death claims") and cases and claims asserting personal injury resulting from a Guidant device where the claim survives the device recipient's death (collectively, "survival claims").[1]

During the past several weeks, the Court attempted to devise a prudent and economical protocol by which the Court would appoint a trustee authorized to sign a settlement release on behalf of a deceased device recipient, and for any of that deceased device recipient's potential heirs or beneficiaries. This detailed protocol was developed

---

[1] The Court respectfully suggests that the parties have been mistakenly equating issues related to both of these types of claims. To date, the parties have viewed these claims as falling into three categories—true wrongful death claims, survival claims, and hybrid wrongful death/survival claims—but have been unable to provide the Court with information as to how many of the 1,770 claims fall into each category or how many of these claims have already been to state court for resolution. It is not clear if this lack of categorization has been caused by mischaracterization of the claims by individual plaintiffs' attorneys.

after discussions with Guidant, a representative from the PLCC, the claims administrator, and the Clerk of Court. It involved numerous steps that ultimately appointed a trustee, required waivers from potential beneficiaries, and subjected a plaintiff's lawyer to Rule 11 sanctions for violations of the protocol. The Court intended that this protocol would provide substantial protection to each person entitled to recover as a result of the alleged injury and/or death of a deceased device recipient. In addition, the Court sought to provide Guidant with release-of-liability protection without necessitating a return to a state court in this state or in another state for each deceased device recipient. In doing so, this matter would have been brought to an efficient close, serving the best interests of all parties, as well as the interests of justice, while holding down attorney fees and costs. Throughout the course of these discussions, however, Guidant objected to such a procedure or protocol.[2]

      The Court has made its best efforts to effectuate such a protocol. However, an apparently irreconcilable disagreement has arisen among the Court and the parties as to the role of the proposed trustee. Guidant maintains that even with the appointment of a trustee by the Court's proposed protocol, every person with a potential claim (in addition

---

[2]     The Court respectfully rejects Guidant's position that the Court does not have jurisdiction to enact and fulfill such a protocol. The Court maintains that such a protocol was not only workable, but that it would have served the best interests of all parties. Specifically, these interests include avoiding unnecessary procedures, minimizing delay, reducing costs, and addressing Guidant's concerns regarding potential subsequent liability if proper releases are not in place.

to the trustee) would need to sign the settlement release. Guidant's proposal would have, in effect, obviated the need for a trustee.

The Court primarily attributes the impasse to a lack of coordination, as opposed to acrimony, among the parties.[3] The matters that are being discussed now should have been discussed when the MSA and its associated exhibits were drafted.[4] Although the parties generally alluded in the MSA to a process by which deceased device recipients would be required to comply with substantive state law in those cases where court approval and orders resolving and dismissing both survival claims and wrongful death claims were necessary, the terms of the MSA make it clear to this Court that the parties never contemplated precisely how these claims would be handled or the ramifications

---

[3] The Court has been impressed with the level of coordination that has occurred in the last few weeks between all the parties. Unfortunately, this coordination has only highlighted the lack of coordination in the months preceding the Court's involvement in the death protocol issue, in direct contradiction to the express terms of the MSA that requires the parties to "work cooperatively" together to fully resolve the cases involving deceased persons. (MSA § IV. H.)

[4] This observation holds true for many of the procedures (or lack of procedures) in place for living claimants' claims. For example, the Court recently learned of the large number of deficiencies that plaintiffs' lawyers are submitting as part of the SCF process. When reviewing submissions related to attorney fee requests and EIF claims, the Court reserves the right to ask the PLCC for an accounting of which law firms and/or attorneys have repeatedly submitted incomplete or noncompliant forms. The Court may also inquire into whether attorneys themselves or the claimants are completing the forms required by the MSA. The Court would take such information into account when dealing with individual plaintiffs' attorneys' requests for attorney fees. Other procedures appear to be lacking as well. For instance, it is the Court's understanding that Guidant, Plaintiffs, and the claims administrator have not yet established a coordinated procedure for dealing with these issues or tracking these issues in a way that does not create duplicative work and corresponding fees.

flowing from their demands for how they should be handled (*see* MSA IV.H.). The Court met with representatives from Guidant and Plaintiffs on Monday, May 5, 2008, to discuss the details of a process to handle the claims of deceased device recipients. After this meeting, Guidant changed the rules of engagement by removing the language from the Court's proposed protocol that would have allowed the appointed trustee to sign the settlement release on behalf of any potential heirs or beneficiaries to the deceased device recipient.[5] The PLCC barely registered a response to this vast change.

Ultimately, this lack of foresight and lack of coordination among the parties has resulted in a great amount of duplicate work among Guidant, Plaintiffs, and the claims administrator, thereby necessitating additional involvement by the Court and the Special Masters and resulting in needless fees being generated. Considering the lack of coordination, the Court reserves the right to reassess fees (especially those being paid out from the Common Benefit and/or Common Costs funds) related to the issues regarding the protocol for deceased device recipients. The Court will have to consider whether it has an obligation, given the unique contours and the status of the case, to ask for the segregation of the time and money spent on death cases and death case protocol issues. It appears that much of this work could have been resolved before any such costs were incurred. Time and money have been wasted. And the Court has been required to extend deadlines multiple times as a result of the lack of coordination.

---

[5]   Prior to the May 5, 2008, meeting, the Court had the parties review a proposed draft order relating to the proposed protocol.

Based upon the current status of the case, the contents of the MSA, the Court's prevailing desire to bring closure to the claimants, and the Court having received input from all parties in an effort to promote the effective administration of justice and serve the interests of the individual deceased claimants and their representatives, and to protect the rights of living claimants, the Court hereby enters the following:

**ORDER**

1. For deceased device recipients only, absent stipulation and agreement of the parties, the deadline in Section III.F.1 of the MSA is extended to September 1, 2008. Unless for good cause shown, this deadline will not be extended. The May 19, 2008 deadline remains in place for all living claimants.

2. No later than June 15, 2008, the parties shall mutually agree upon a categorization of the 1,770 claims of deceased device recipients, as discussed in footnote 1, above.

3. Given Guidant's position on the Court's proposed protocol and the disputed role of the proposed trustee, the costs associated with the Court's proposed protocol would far exceed any costs associated with a possible return to state court. As a result, for those claims that require the appointment of a legally authorized representative to effectuate a release, it is the individual plaintiff's attorney's responsibility to obtain such a representative. Whether that procedure necessitates a return to state court or a state court order is up to the parties to determine, consistent with the language that the parties drafted in Section IV.H of the MSA.

4.    No later than one week from the date of this Order, Guidant and the PLCC (in consultation, if necessary, with the claims administrator and the Special Masters) shall jointly discuss how the claims process will go forward in a manner that addresses the Court's concerns raised in this Order both related to death and non-death cases.

5.    No later than two weeks from the date of this Order, Guidant, the PLCC, the claims administrator, and Assistant Special Master Patrick Juneau shall each submit a letter brief to the Court, filed on CM/ECF, that includes the following detailed information from each party's perspective:

    a.    Status of the case, including what specific work needs to be completed;

    b.    Proposed and realistic timelines for completion of all remaining work;

    c.    General description of post-settlement work that has been done to-date, and how the party submitting the letter has been working with the other parties to complete this work;

    d.    General description of how the process going forward will look;

e. The party's view of the role that the Court, Assistant Special Master Patrick Juneau, and the claims administrator will play in the work that remains to be done.

Dated: May 16, 2008            s/Donovan W. Frank
                               DONOVAN W. FRANK
                               Judge of United States District Court