## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re:  GUIDANT CORP. IMPLANTABLE
DEFIBRILLATORS PRODUCTS
LIABILITY LITIGATION

MDL No. 05-1708 (DWF/AJB)

This Document Relates to All Actions

**MEMORANDUM OPINION AND
ORDER REGARDING COMMON
BENEFIT ATTORNEY FEE
ALLOCATION**

In February 2008, the Court appointed a Common Benefit Attorney Fee and Cost Committee ("CBAFCC") for the purpose of recommending to the Court the specific allocation of attorney fees and costs among all counsel entitled to share in the Common Benefit Attorney Fee Fund and all counsel and/or parties entitled to share in the Common Cost Fund.  (Doc. No. 2603.)[1]  In April 2008, the CBAFCC submitted the Report of the Common Benefit Attorney Fee and Cost Committee (the "CBAFCC Report"). (Doc. No. 2792-2.)  Currently before the Court are the CBAFCC Report and the Objections filed by twenty-one firms in response to the CBAFCC Report.

Based upon the submissions of the parties, including the pleadings, records, and arguments of counsel, and for the reasons stated herein, the Court adopts, in part, and

---

[1]      Unless otherwise noted, all docket numbers referenced in this Order are to MDL No. 05-1708 (DWF/AJB).

rejects, in part, the CBAFCC Report's recommendations.  The Court orders the

distribution of Common Benefit Attorney Fees consistent with this Order.

## BACKGROUND

## I.      General Background

The background of this multi-district litigation ("MDL") is set forth more fully in

the Court's previous orders.  Most notably, the Court specifically addressed attorney fees

at length in its March 7, 2008 and August 21, 2008 Orders.  (*See* Doc. Nos. 2636

and 3201.)  Briefly, this MDL commenced in November 2005 when the Judicial Panel on

Multidistrict Litigation consolidated certain actions and transferred them to the District of

Minnesota for pre-trial proceedings against Defendants Guidant Corporation, Guidant

Sales Corporation, and Cardiac Pacemakers, Inc. (collectively, "Guidant").  Individual

Claimants[2] commenced these actions against Guidant for injuries alleged to have been

caused by certain defective implantable defibrillator devices and pacemakers

manufactured by Guidant.

From early 2006 through July 2007, the parties conducted extensive discovery,

engaged in motion practice, and prepared for five bellwether trials.  Shortly before the

first bellwether trial was to begin in July 2007, the parties entered into a proposed

settlement.  Later, the parties signed a term sheet with a negotiated settlement fund of

---

[2]      For the sake of consistency and simplicity, the Court will refer to the parties who are subject to the terms of the Master Settlement Agreement and the jurisdiction of this Court as "Claimants," consistent with §§ I.D, III.F, and VI.A-B of the Master Settlement Agreement.

$195,000,000, which included payment both for Claimants' recoveries and for common

benefit attorney fees.  Soon thereafter, the parties commenced a renegotiation process that

lasted approximately four months. The renegotiation process resulted in a new term sheet,

increasing the total settlement fund to $240,000,000.  As before, the total settlement fund

included payment for Claimants' recoveries and for common benefit attorney fees.

Nearly five months after the first proposed settlement was reached, the parties finally

entered into a Confidential Master Settlement Agreement ("MSA") on December 10,

2007.

## II.    Common Benefit Attorney Fees

Section II.K of the MSA provides:

**Common Benefit Payment**. The Settlement Fund includes an amount for a
requested common benefit payment to Claimants' counsel who would be
entitled to such payment. The amount of such common benefit payment
shall be determined by MDL Judge Donovan Frank. The [Lead Counsel
Committee ("LCC")[3]] shall submit the request for common benefit
payment. Guidant shall have no additional financial obligation under the
Settlement beyond the amount required by Section II.E.

---

[3]      The Court designated the following individuals to serve on the LCC:  Richard
Arsenault, Esq., of Neblett, Beard & Arsenault; Elizabeth Cabraser, Esq., of Lieff,
Cabraser, Heimann & Bernstein, LLP; Seth R. Lesser, Esq., formerly of Locks Law Firm,
PLLC and now of Klafter, Olsen & Lesser, LLP; and Charles S. Zimmerman, Esq., of
Zimmerman Reed.

Pursuant to that section, the Plaintiffs' Steering Committee ("PSC")[4] filed a

Request Pursuant to Section II.K of the MSA for a Determination of the Common Benefit

Attorney Fee Amount.  Specifically, the PSC requested $45,250,000 (18.85%, of the

$240,000,000 settlement) for common benefit fees.  On February 15, 2008, the Court

granted in part and denied in part the PSC's request.  Specifically, the Court ordered that

$10,000,000 of the $240,000,000 settlement fund to be set aside for common costs in a

Common Cost Fund (the "Cost Fund").  In addition, based on the Court's equitable

authority and considering the relevant *Johnson* factors,[5] the Court ordered that 15% of the

---

[4]      The Court designated the following individuals to serve on the PSC:
William M. Audet, Esq., of Alexander, Hawes & Audet, LLP; Daniel E. Becnel, Esq., of
the Law Offices of Daniel E. Becnel, Jr.; John R. Climaco, Esq., of Climaco, Lefkowitz,
Peca, Wilcox & Garofoli Co., L.P.A.; C. Brooks Cutter, Esq., of Kershaw, Cutter &
Ratinoff, LLP; Lance A. Harke, Esq., of Harke & Clasby LLP; Irwin B. Levin, Esq., of
Cohen & Malad, LLP; Richard A. Lockridge, Esq., of Lockridge Grindal Nauen, PLLP;
Ramon R. Lopez, Esq., formerly of Lopez, Hodes, Restaino, Milman & Skikos and now
of Lopez McHugh; Tobias L. Millrood, Esq., of Schiffrin & Barroway, LLP;
Stacey L. Mills, Esq., of Heins, Mills & Olson, PLC; Timothy M. O'Brien, Esq., of Levin
Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.; Paul J. Pennock, Esq., of Weitz
& Luxenberg, P.C.; Christopher A. Seeger, Esq., of Seeger Weiss LLP;
Hunter J. Shkolnik, Esq., of Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP;
Thomas M. Sobol, Esq., of Hagen Berman Sobol Shapiro, LLP; Silvija A. Strikis, Esq.,
of Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC; Teresa Toriseva, Esq., of Hill
Toriseva & Williams, PLLC; Sol Weiss, Esq., of Anapol, Schwartz, Weiss, Cohan,
Felman and Smalley, PC; and Justin Witkin, Esq., of Aylstock, Witkin & Sasser, PLC.
On August 1, 2006, the Court appointed Nicholas J. Drakulich, Esq., of Jennings &
Drakulich, LLP to the PSC, replacing John Climaco, Esq., who resigned.

[5]      *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).
The Johnson factors include:  (1) the time and labor required; (2) the novelty and
difficulty of the questions; (3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee for similar work in the community; (6) whether the fee is fixed or
contingent; (7) time limitations imposed by the client or the circumstances; (8) the

(Footnote Continued on Next Page)

$240,000,000 settlement fund,[6] or $34,500,000, be set aside for common benefit attorney

fees in a Common Benefit Attorney Fee Fund (the "Fee Fund").  The Court calculated

this amount using the percentage-of-the-fund method and a lodestar cross-check.  In

performing the lodestar cross-check, the Court capped the attorney hourly rate at $400

and the paralegal hourly rate at $150.  The Court noted that it anticipated that the Fee

Fund would be more than enough to cover common benefit attorney fees, especially after

close scrutiny was applied to fee requests to eliminate duplicative efforts and requests for

reimbursement for work that was not performed for the common benefit.

The Court then appointed six attorneys, some of whom represented MDL

Claimants and some of whom represented non-MDL Claimants, as members to the

CBAFCC:  Charles S. Zimmerman, Esq., of Zimmerman Reed, PLLP;

Elizabeth Cabraser, Esq., of Lieff, Cabraser, Heimann & Bernstein, LLP;

Christopher A. Seeger, Esq., of Seeger Weiss, LLP; Nicholas J. Drakulich, Esq., of

The Drakulich Firm; Michael K. Johnson, Esq., of Goldenberg & Johnson, PLLC; and

---

(Footnote Continued From Previous Page)
amount involved and the results obtained; (9) the experience, reputation, and ability of
the attorneys; (10) the undesirability of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in similar cases.  *Id*. at 719-20.

[6]     As noted in the August 21, 2008 Order, the Court recognizes that, pursuant to
§ II.A.1. of the MSA, the total dollar amount of the settlement, and thus the dollar
amount of the Common Benefit Attorney Fees, could vary depending on the number of
Participating Claimants in the settlement.  In addition, the Court notes that if Common
Costs exceed $10,000,000, any overruns will be paid from the Common Benefit Attorney
Fee allocation.  Thus, the Common Benefit Attorney Fee allocation will be reduced by
any amount of Common Costs that are in excess of $10,000,000.  Any amount of the
Common Cost allocation that is not spent will be redistributed among the Claimants'
recovery.  (*See* Doc. No. 3201 at 19, n.20.)

Gale D. Pearson, Esq., of Pearson, Randall & Schumacher, PA.  Mr. Zimmerman was the chair of the CBAFCC.  The Court ordered the CBAFCC to submit proposed policies, procedures, guidelines, and protocols to guide the CBAFCC's review of common benefit fee requests.

## III.    The CBAFCC Process

The CBAFCC timely submitted the CBAFCC Proposed Policies, Procedures, Protocols, and Guidelines for Allocation of the Common Benefit Attorney Fee Fund and the Common Cost Fund (the "CBAFCC Policies").  On March 3, 2008, the Court adopted the CBAFCC Policies.  In that Order, the Court instructed the CBAFCC "to give each Common Benefit Attorney Fee and Cost application 'careful scrutiny' and provide each application with a 'fair and equitable' allocation" and to make recommendations "only on true and bona fide common benefit work and costs."  (Doc. No. 2628 at 1.)  The CBAFCC was to do so based on its collective "years of experience, extensive knowledge of both the state and MDL litigations and the detailed submissions by each applicant in their determination of each allocation."  (*Id*. at 1-2.)  After doing so, the CBAFCC was instructed to make recommendations to the Court with respect to each application.

The CBAFCC Policies required attorneys seeking reimbursement to submit time records and, by no later than March 10, 2008, to provide a three-page submission describing their common benefit work "with particular emphasis on bona fide efforts made to produce results for the common benefit and as a contribution toward the discovery, trial and/or resolution of the Guidant litigation."  (Doc. No. 2628 at 2.)  The attorneys could also elect to make a confidential fifteen-minute presentation before the

CBAFCC.  The Policies required the CBAFCC to consider these submissions and live

presentations.  After deliberating and utilizing the *Johnson* factors, the CBAFCC was

required to make recommendations to the Court for each applicant, at which time each

applicant had an opportunity to file an objection with the Court.

The CBAFCC Policies explained that each attorney submitting time or cost

applications should consider that they were submitting applications to the Court, under

oath, that their requests were for work that was indeed common benefit work.  "No time

or costs spent on developing or processing individual issues in any case for an individual

client (claimant) will be considered or should be submitted, except for appropriate

bellwether Plaintiffs."  (Doc. No. 2628 at 5.)  The CBAFCC Policies further explained

that only time and costs incurred pursuant to an LCC/PSC assignment would be

considered.  The CBAFCC Policies specifically described which time or costs would be

disallowed:

1)      Time or costs that will be disallowed or discounted:

        a.      Time or cost submissions in which the hours of service and costs were not properly coded;

        b.      Any cost for which proper receipts or other proof of payment have not been submitted;

        c.      Any item of time or cost which was incurred in connection with the discovery or trial of individual cases or group of cases or the case-specific preparation of those cases for trial. This does not include coordinated discovery in the MDL or state proceedings;

        d.      Time submission which does not properly provide hourly rates and/or descriptions of the professional status of each person whose professional time is subject of the submission;

e.   Time submission which does not provide cumulative totals for the time submitted;

f.   Cost submission that does not provide cumulative total for the reimbursable costs claimed;

g.   Any item of cost which does not meet the requirements of these Guidelines;

h.   Any item of time or cost which is not described in sufficient detail to determine the nature and purpose of the service or cost involved;

i.   Time submission in which the amount or extent of "review" or "attendance" time is excessive as a whole when judged in reference to the role which the Attorney, or other timekeeper, had in the litigation;

j.   Time and/or cost submission which is grossly excessive on its face, when considered as a whole in light of the role in which the Attorney, or other timekeeper, had in the litigation;

k.   If it is determined that any time submitted or activity for which Counsel is requesting to be compensated, is clearly outside the scope of authority or is not warranted, as/or considered to be a contribution to the Common Benefit, such time will not be allowed.

(Doc. No. 2628 at 5-7.)  The CBAFCC Policies also contained detailed information concerning the format for submission of records and what particular tasks and expenses would be considered for the common benefit.  The Court ordered the CBAFCC to file and serve its proposed allocation plans within sixty days of the Court's March 7, 2008 Order.  (Doc. No. 2636 at 48.)

IV.     **The CBAFCC Report**

The CBAFCC Report was issued on April 24, 2008.  In that report, the CBAFCC

noted that the recommended allocation for each applicant "was conducted pursuant to the

guidelines set for [sic] in the [CBAFCC Policies] . . . ."  (Doc. No. 2792-2 at 2.)  The

CBAFCC stated:

> The review of each application was conducted pursuant to and [in]
> accordance with these Court approved [CBAFCC Policies] . . . and the
> CBAFCC makes its recommendations based on these Protocol and
> Guidelines in our determination of each fee and cost allocation.  The
> CBAFCC relied upon its combined years of experience, extensive
> knowledge of both the state and MDL litigation, the detailed submissions
> and oral presentations and an intense and cooperative deliberation process
> in the determination of each firm's allocation.

(*Id.* at 2.)

The CBAFCC Report explained the procedure that the CBAFCC used in

reviewing the petitions.  First, the CBAFCC noted that it required counsel making a

common benefit application to submit time and costs pursuant to the CBAFCC Policies.

(*Id.* at 4.)  Second, as required by the CBAFCC Policies, each firm was asked to prepare

and submit a summary of no longer than three pages, describing, "with specificity and

particularity the common benefit work performed by that firm, with particular emphasis

on bona fide efforts made to produce results for the common benefit and as a contribution

toward the discovery, trial and/or resolution of the Guidant litigation."  (*Id.*)  The

CBAFCC also noted that firms were allowed to give a confidential 15-minute

presentation to the CBAFCC on the firm's common benefit time and costs.  (*Id.* at 5.)

The CBAFCC set up four separate CBAFCC sessions throughout the country to hear

these presentations.  (*Id*. at 7, 9.)  Then, the CBAFCC asserted that it reviewed the

submissions of time and costs, the summaries, and the live presentations, deliberated on

the information of these submissions, and submitted the recommendations for allocation

for each firm or attorney.  (*Id*. at 5.)

The CBAFCC Report further detailed the time the CBAFCC spent working on the

CBAFCC Policies and the Report.  Prior to the submissions from counsel, the CBAFCC

met on three occasions to discuss the proposed guidelines.  After submitting the proposed

CBAFCC Policies, which were later approved by the Court, the CBAFCC drafted a

confidential memorandum to its members that laid out the Court's requirements,

activities constituting compensable common benefit time, and other considerations.

(Doc. No. 2792-2 at 8.)  Each CBAFCC member was provided a CD of the firms' time

records and cost submissions that included time that had been submitted throughout the

litigation.  (*Id*.)

The CBAFCC met on April 10 and 11, 2008, to review and discuss submissions

and make recommendations for a plan of allocation.  (*Id*. at 14.)  The CBAFCC noted

that its proposed plan of allocation, attached as Exhibit C to the CBAFCC's Report, was

agreed upon unanimously by the CBAFCC members.  (*Id*.)

In its Report, the CBAFCC noted that in evaluating the common benefit fee

applications, it applied the *Johnson* factors and also took into account "how and to what

extent did an applicant firm actually effect [sic] the overall result of the litigation or

contribute to a seminal benchmark in the litigation."  (*Id*. at 14 (quotation without citation

in the original).)  The CBAFCC Report noted that in this MDL, about ten law firms did

the "lion's share" of the work and that the CBAFCC assigned multipliers to reflect such

contributions.  (*Id*. at 15.)

The CBAFCC stated that it "adjusted each and every lodestar application to reflect

a maximum hourly rate of $400 per hour for attorneys and $150 per hour for paralegals."

(*Id*. at 16.)  Then, the CBAFCC noted:

> In each instance, the Committee attempted to determine, and remove when
> possible, time that was not authorized; not considered to be for the common
> benefit; unreasonable and/or, not appropriate under the circumstances.  This
> was a difficult, if not impossible, task on a quantitative basis.  However, on
> a qualitative basis the task was possible.  The multiplier applied in the fifth
> column of the Proposed Plan of Allocation [] is the CBAFCC's reasonable
> and unanimous "qualitative analysis" of each applicant's work, taking into
> consideration all of the above factors enunciated in the Court's various
> orders.

(*Id*. at 16-17.)  Further, the CBAFCC stated:

> Additionally, as Chairman of the CBAFCC, Charles S. Zimmerman, met
> with Kahn, Hoffman & Hochman, LLP (Certified Public Accountants) and
> Seth Lesser, an LCC member who was the custodian of the Time and Cost
> submissions required throughout the litigation.  Mr. Zimmerman made
> inquiries of both the CPA and Mr. Lesser regarding their review of the
> records and further asked that they point out to the committee any
> inappropriate time records as defined in PTO 6. (Exhibit B).  For PSC
> members, this was done on a monthly basis pursuant to PTO 6 reporting.
> For others the task was done when the records were submitted.  **All records
> as provided and adjusted in the second column of the Proposed Plan of
> Allocation (Exhibit C) subject to individual law firm record keeping
> policies and individual lawyer record keeping practice which do vary,
> appeared to our CPA, Mr. Lesser and the CBAFCC to be within
> reason.**

(*Id*. at 17 (emphasis supplied).)  The CBAFCC Report again stated that the CBAFCC

evaluated the submissions in order to determine what work mattered on a qualitative, not

quantitative, basis.  (*Id*. at 17-18.)

As for costs, the CBAFCC Report stated that as of the date of the filing of the report, costs had increased to approximately $4,132,000.[7]  The CBAFCC noted that both the CBAFCC and the accountants evaluated the costs submitted "with some degree of specificity."  (*Id*. at 19.)  The CBAFCC Report then states:

> As a Committee, we approved only those costs we were confident were appropriate and removed or did not allow others.  The fourth column of the Proposed Plan of Allocation (Exhibit C) is the CBAFCC unanimously approved Costs.  The CBAFCC believes that before reimbursement to each common benefit firm [for] their allocated costs, a final review of those costs should take place.

(*Id*. at 19-20.)  In addition to already-expended costs, the CBAFCC Report stated that the CBAFCC anticipates additional costs for settlement administration and for the CBAFCC's "extensive" work.  (*Id*. at 21.)

The CBAFCC Report noted that "any decision of this Court regarding the CBAFCC recommendations of common benefit fees and cost awards is non-appealable under the terms of the MSA."  (*Id*. at 20.)  Further, the CBAFCC Report stated, "[a]ny counsel who filed an 'attorney declaration' declaring that his or her client is filing a claim, pursuant to the procedure outlined in the MSA, submits him or herself to the jurisdiction of this Court and has thereby assented to all the terms of the MSA, including accepting the 'non-appealability' term of the MSA."  (*Id*. citing Section VI(G) of the MSA.)

---

[7]     Later, in a letter to the Court dated September 5, 2008, Mr. Zimmerman adjusted this number downward to $3,570,831.

Most notable from its absence in the CBAFCC Report was the CBAFCC's complete failure to provide the Court with any detail, summary or not, as to each firm's allocation.  Instead, in its recommendation, the CBAFCC appears to have assumed that 100% of the firms' lodestars, after the fee cap, were compensable.  The CBAFCC never provided the Court with any support to demonstrate its review of the time records.  Instead, in a letter sent to the Court after it was apparent that the Court was troubled by the CBAFCC's lack of analysis, the CBAFCC offered to meet with the Court to "explore issues of importance that might not be apparent from a review of records and reports" and to answer questions that "will enlighten all in making the process more transparent and understandable."  (CBAFCC Letter Oct. 31, 2008.)  The Court respectfully declined the CBAFCC's invitation.

Although the CBAFCC, in its response to objections, provided at least minor detail into their theory behind each firm's multiplier, the Court finds that the response was of virtually no help in determining specific awards.  Basically, the CBAFCC stood by its initial recommendations and continued to reiterate that some work was more important than other work, in an attempt to justify the qualitative multipliers.

## DISCUSSION

An award of attorney fees is committed to the sound discretion of the district court.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).  To avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs and to fairly compensate those attorneys who coordinate the litigation and shoulder its burden, a district court can award attorney fees in MDLs to attorneys whose work contributed to

13

the common benefit of the MDL.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

(1980).  To assist with this task, a court can create a committee, made up of lead counsel

and others representing certain categories of objectors and non-objectors, to allocate fees

among all counsel entitled to share in the common benefit fund.  *In re Diet Drugs*

*(Phentermine, Fenfluramine, Dexfenfluramine) Products*, 2002 WL 32154197, at * 22

(Oct. 3, 2002) (citing cases).  However, "[t]he appointment of a [common fee] committee

does not relieve a district court of its responsibility to closely scrutinize the attorneys' fee

allocation, especially when the attorneys recommending the allocation have a financial

interest in the resulting awards."  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*,

517 F.3d 220, 227 (5th Cir. 2008).

### A.    Fees and Compensable Work

The Court has conducted an exhaustive and detailed *de novo* review of the time

records submitted by fifty-eight attorneys/firms who requested common benefit attorney

fees, regardless of whether the attorneys/firms objected to the CBAFCC's proposed

award.  The Court has also reviewed, in detail, the three-page submissions that were

submitted by forty-four of these attorneys/firms.  In addition, the Court has thoroughly

reviewed the twenty-one objections submitted in response to the CBAFCC Report.[8]  The

Court has also reviewed the CBAFCC's response to these objections.

Moreover, the Court also reviewed an *in camera* report from Seth Lesser, Esq.,

which the Court ordered Mr. Lesser to submit.  (*See* Doc. No. 3364.)  Because the

---

[8]    This number includes an objection received from the Mulligan Firm.
(Doc. No. 2848.)  The Mulligan Firm did not make a request for Common Benefit Fees.

CBAFCC failed to provide the Court with any meaningful basis for its recommendations, the Court was compelled to ask Mr. Lesser to provide this information. In his roles as the individual who allocated work and assignments by virtue of acting as the LCC's liaison to both the Discovery and Law and Briefing Committees, the individual who handled the formation and running of the PSC's working groups and committees, and his additional role as the custodian of the Time and Cost submissions, Mr. Lesser was in a unique position to serve the Court. The Court asked Mr. Lesser to provide a detailed analysis regarding duplication of effort in the time records and to flag specific instances of duplicative time and effort or non-common benefit time in the time records. Mr. Lesser's report served, in part, as a barometer for the Court to assist it in determining what work was indeed assigned or common benefit work. Mr. Lesser, together with PSC member Wendy Fleishman, Esq., completed a line-by-line review of the records in approximately three weeks at the Court's request. The Court emphasizes that it used Mr. Lesser's report to supplement, not supplant, the Court's independent review of the time records. In no instance did the Court substitute Mr. Lesser's judgment for that of the Court. It should be noted that Mr. Lesser suggested discounts to the firms' compensable time that were, as a whole, significantly more generous to the firms than the reductions the Court eventually decided upon. The Court also asked Mr. Lesser to submit to the Court the time expended for his efforts, which he did via e-mail on December 6, 2008.

The records submitted to the CBAFCC and the Court varied greatly in quality. A select few attorneys and firms submitted very detailed and organized time records. Fifteen out of fifty-eight attorneys/law firms never provided a three-page submission,

which significantly hampered the Court's ability to evaluate those firms' fee applications.

Many lawyers provided vague or wholly incomplete time records.  The Court

understands that plaintiffs' lawyers routinely do not keep traditional time records for their

contingency-fee cases. Nonetheless, the lawyers submitting requests for common benefit

reimbursement should have been familiar with how common fees are distributed in an

MDL setting because MDL courts always require attorneys to provide time records for

common fee requests.  *See Manual for Complex Litigation*, Fourth, § 14.122 (discussing

requirements to keep track of hours and listing cases).  In addition, PSC members were

required to submit their detailed time records on a monthly basis pursuant to Pretrial

Order No. 6.  (Doc. No. 56 at 8.)  Given these factors, the Court is unsympathetic to those

attorneys who assert that they were unable to provide detailed time records.

The Court first limited its review to assessing whether the lodestars submitted by

the firms who petitioned for common benefit fees were appropriately compensable in

light of the *Johnson* factors[9] and especially in light of the Court's concerns regarding

duplicative, excessive, and/or non-common benefit work.  As a result, the Court first

limited the awards to determining what portion of the lodestars submitted are attributable

to the common benefit and thus what fees are compensable.  To this extent, no firm or

---

[9]      The Court evaluated the *Johnson* factors generally with respect to all attorneys
requesting common benefit fees in its March 7, 2008 Order.  (Doc. No. 2636 at 17-26.)
Here, the Court considered each common benefit attorney's submission individually and
in light of the *Johnson* factors.  Although it did not discuss each *Johnson* factor
individually, specifically with respect to time and labor required and time limitations
imposed by the circumstances, the Court summarized its findings with respect to each
firm in Section B, below.

attorney was awarded a multiplier greater than 1.0 with respect to the time that they appropriately billed to common benefit attorney fees.

The Court believes that law firms should be compensated for the work that they were assigned to do before firms that bore a large risk are granted an enhancement for that risk.  If this were not the case, then in future MDLs, firms would have little incentive to do the "worker bee" work.  Although the amount of money to pay the common benefit attorney fees here was finite, this is not a case where there was not enough money available to pay all attorneys for 100% of their compensable work.  Yet the CBAFCC appears to have viewed the multipliers for the top ten firms as more important than compensating those who did legitimate, compensable work.  The Court is also extremely troubled by the fact that, throughout this litigation, the MDL leadership never alerted individual attorneys or firms to the fact that they may not be compensated for all of their work should the case reach a favorable outcome for Plaintiffs.  The MDL leadership did not review the bills that were submitted on a monthly basis and did not limit attendance at certain events.  In this way, the leadership perhaps unintentionally lulled the firms into believing that all of their work would be compensated.

With these considerations in mind, the Court conducted its *de novo* review of the firm's submissions.  The Court did a line-by-line review of every firm's time record submissions.  As the Court was reviewing the time records that were submitted for common benefit fee requests, the Court found numerous instances of attorneys submitting time records that were not directed to the common benefit.  Such entries included time related directly to client work, such as making client contacts, research for individual

clients, and the like.  The Court found that many firms submitted excessive time for their

work prior to the MDL inception, much of which the Court attributed to client-related

work.  In addition, many firms submitted time for marketing-related activities, such as

attending an ATLA conference or other conferences.  Other firms submitted time related

to their own firms' marketing activities to be involved in this MDL.  In addition, many

firms submitted time that the Court would view as excessive or duplicative in light of the

tasks performed.  The Court's determinations as to each firm's compensable time are

summarized in Section B, below.

### B.    Court's Review of Firms' Compensable Time

### 1.    Anapol Schwartz Weiss Cohen Feldman & Smalley, PC

The firm of Anapol Schwartz Weiss Cohen Feldman & Smalley, PC, submitted

time records but no three-page submission on behalf of its petition for common benefit

fees.  The firm requested $97,380.  The CBAFCC first considered an adjusted lodestar of

$93,380 and recommended a 0.3 multiplier for an award of $28,014.  The firm did not

object to this recommendation.  After further submissions, the CBAFCC modified the

lodestar after fee cap to $95,380. [10]

The Court's *de novo* review of the firm's time records revealed a great deal of

time that is not attributable to the common benefit.  Such time includes that spent on

client intake, newsletters, review of media, client-specific pleadings, marketing, filing

---

[10]    For this and other submissions where the lodestar was adjusted after the CBAFCC
Report, the Court considered the newly adjusted lodestar in deciding the dollar amount of
the award.

*pro hac vice* motions, and time spent reviewing court documents.  Other time, however, did relate to the common benefit.  The Court notes that Sol Weiss, Esq., from the firm was a PSC member and that some of his time was spent at PSC meetings and working on pre-emption issues.  Therefore, based on the Court's *de novo* review, the Court finds that the CBAFCC's recommended award of $28,014 is appropriate for the work that the firm spent on the common benefit.

## 2.    Aylstock, Witkin, Kreis & Overholtz PLLC

The firm of Aylstock, Witkin, Kreis & Overholtz PLLC submitted time records and a timely three-page submission on behalf of its $974,775 request for common benefit attorney fees.  The firm also presented its request to the CBAFCC.  The CBAFCC first considered an adjusted lodestar of $972,783.  The CBAFCC recommended a 0.9 multiplier, for an award of $875,505.  The firm did not object to this award.  Later, the CBAFCC considered other submissions and revised the adjusted lodestar to $974,783.

The three-page submission detailed the firm's work in document review and the bellwether selection process led by PSC member Justin Witkin, Esq.  Further, firm member Neil Overholtz, Esq., led the firm's efforts in sales and marketing discovery, including taking depositions related to Dr. Higgins' activities for the *Duron* and *Clasby* cases.

The Court's review of the firm's records revealed some time billed from another matter.  Also, the firm included some time the Court would deem marketing activities, such as vague entries for reviewing news articles prior to and after the MDL's inception

and attending an ATLA conference.  In addition, the firm included some client-related entries that cannot be attributed to the MDL.  Otherwise, the Court found that most work was properly attributed to the common benefit.  Therefore, based on the Court's *de novo* review, the Court awards the firm $877,304.

### 3.  Barnow & Associates, PC

The firm of Barnow & Associates, PC, submitted time records but did not submit a three-page submission or appear before the CBAFCC to support the firm's request for common benefit attorney fees.  The firm requested $19,290, and the CBAFCC considered an adjusted lodestar of $13,445 after the fee cap.  The CBAFCC recommended a 0.2 multiplier for an award of $2,689.  The firm did not object to this recommendation.

The firm's time records submitted are quite vague and contain many entries that merely state "review e-mail" or "calls and discussions."  In the absence of a three-page submission to detail the firm's contribution to the common benefit, and in the absence of an objection, the Court is left with no meaningful way to verify what work was done at the PSC's request.  Therefore, based on the Court's *de novo* review, the Court finds that the CBAFCC's recommended award of $2,689 is appropriate.

### 4.  Barrios, Kingsdorf & Casteix, LLP

The firm of Barrios, Kingsdorf & Casteix, LLP, submitted time records and a timely three-page submission in support of its petition for common benefit attorney fees. The firm submitted a lodestar request of $61,175, and the CBAFCC considered an adjusted lodestar of $60,175.  The CBAFCC recommended a multiplier of 0.2 and an award of $12,035.  The firm did not object to this recommendation.

The firm's three-page submission characterizes its involvement in the MDL as

"limited."  It details the firm's contribution to the coordination of state cases with the

MDL.  Specifically, the firm noted its involvement in the pre-MDL strategy and its

attendance at a PSC meeting held in Scottsdale, Arizona, in early February 2006.  In

addition, the firm noted its work related to settlement of the matter.

The Court's review of the firm's time records revealed a significant amount of

time that cannot be attributed to the common benefit.  Specifically, prior to the inception

of the MDL, the firm reported a great deal of time that was client- or marketing-related.

In addition, the firm reported some time spent reviewing materials that is more

appropriately "billed" to the firm's individual client, rather than to the common benefit.

Therefore, based on the Court's *de novo* review, the Court finds that an award of $18,352

is appropriate.

### 5.      Becnel Law Firm

The Becnel Law Firm submitted a lodestar request of $1,459,453.  The firm did

not submit a three-page submission or appear before the CBAFCC.  The CBAFCC first

considered a lodestar after fee cap of $1,179,327, and recommended a 0.25 multiplier for

a proposed fee award of $294,832.  The Becnel firm submitted an objection under seal,

which was primarily related to an alleged conflict of interest between Mr. Becnel and a

member of the CBAFCC.  After further submissions and subsequent to the CBAFCC

Report, the CBAFCC adjusted the lodestar to $1,181,327.

As with all of the other firms who submitted requests for common benefit fees, the

Court has reviewed the firm's request *de novo*.  This should stem any of Mr. Becnel's

concerns regarding any perceived conflict of interest.  As for the Court's detailed review

of the firm's records, the Court finds that a significant portion of the firm's time was

spent on work that the Court cannot attribute to the common benefit.  Specifically, some

entries related to work that the Court finds to be individual client-related, including but

not limited to, time spent on what the Court would classify as marketing activities and

time spent reviewing general orders and correspondence.  In addition, some of the time

entries were so vague that the Court could not determine how the work should be

attributed.  For example, some entries read "participating in conference call."  Other

entries merely read "review and code" without specifically noting the nature of the

document review and coding.  And the Court is personally aware that at least some of

Mr. Becnel's travel time to Court status conferences was, as often noted by Mr. Becnel

himself at the status conferences, also related to his trips to Minnesota for his work on the

Viagra MDL.  This travel time should not be fully compensated by this MDL.  Yet

however vague, the firm spent much time reviewing and coding documents, and there is

nothing in the record to suggest that this work was not assigned by the PSC.  In fact, as a

PSC member, Mr. Becnel submitted time records from the onset of the litigation, and

there is no indication that the PSC ever questioned the propriety of the firm's time.

Therefore, based on the Court's *de novo* review, the Court awards the firm $590,664.

### 6.    Bourland Heflin Alvarez Minor & Matthews, PLC

Bourland Heflin Alvarez Minor & Matthews, PLC submitted a lodestar request of

$13,315.  The fee cap did not change the submitted lodestar.  The firm submitted a timely

three-page submission and did not appear before the CBAFCC.  The CBAFCC

recommended a 0.7 multiplier for a proposed fee award of $9,321.  The firm did not object to the proposed fee award.

The firm's three-page submission explains that their request is based on the work the firm did on behalf of the firm's only Guidant MDL client, Johnny R. Clark. Mr. Clark was selected and deposed as a potential bellwether candidate.  Mr. Clark was later stricken from the potential bellwether candidate list in July 2006.

The Court's review of the firm's time records reveals that nearly all of the time submitted is directly attributed to the bellwether process.  There is nothing in the record to suggest that the firm was not asked to do this work or did not perform this work. There is, however, a small portion of the time submitted related to fee agreements and other tasks that would have to be performed for any individual case and thus cannot be attributed to the common benefit.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $12,649 is appropriate.

### 7.     Charfoos and Christensen, P.C.

Charfoos and Christensen, P.C., submitted a lodestar request of $105,405.  After the fee cap, the CBAFCC considered a lodestar of $102,405.  The firm submitted an untimely three-page submission and appeared before the CBAFCC.  The CBAFCC recommended a 0.3 multiplier for a proposed fee award of $30,722.  The firm did not object to the proposed fee award.  After further submissions, the CBAFCC revised the adjusted lodestar to $105,405.

The firm's three-page submission reveals that it routinely refers its medical appliance cases, including Leland Braund's case, to Zimmerman Reed.  Mr. Braund was

selected as one of the five bellwether cases.  As a result, the firm asserts that it spent a significant amount of time preparing Mr. Braund's case for trial.  In addition, certain attorneys of the firm assisted in drafting the Rule 26 disclosures and also traveled to certain status conferences.

The Court's review of the firm's time records reveals that some of the time submitted, particularly from June 2006 through June 2007, is directly attributed to the bellwether process.  There is nothing in the record to suggest that the firm was not asked to do this work or did not perform this work.  There is, however, a significant portion of the time submitted that cannot be attributed to the common benefit.  Such time relates to pre-MDL activities, activities done before Mr. Braund became part of the bellwether selection process, and activities related to normal individual casework such as ECF filings, reviewing PTOs, and completing plaintiff fact sheets.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $42,162 is appropriate.

### 8. Cohen & Malad, LLP

The firm of Cohen & Malad, LLP, submitted an untimely three-page submission and time records in support of its $555,824 request for common benefit attorney fees. The firm also made a presentation to the CBAFCC.  The CBAFCC considered a $537,505 lodestar after the fee cap.  The CBAFCC recommended a 0.7 multiplier, for an award of $376,253.  The firm objected to this amount.

The firm's three-page submission noted the role of Irwin Levin, Esq., Cohen & Malad's managing partner, as co-chair of the Law and Briefing Committee.  Mr. Levin was also a PSC member.  The summary cited the firm's work on initial case filings that

became lead cases in the MDL.  The summary also noted the firm's work in relation to motion practice on evidence preservation and discovery issues.  In addition, the firm noted its dispositive motion work on the first bellwether case and its pursuit of the Indiana state court class action.  Finally, the firm noted its attendance at settlement negotiations at the LCC's request.

The firm's objection to the CBAFCC recommendation noted that the firm's efforts in the Indiana State Court litigation were not actually compensated by the CBAFCC's proposed award.  The objection further detailed the firm's work, at the direction of the LCC, in that regard.

The Court's *de novo* review of the firm's records revealed some entries that were client-related, including a great number of calls to individual clients, work on individual client fact sheets, and the like.  The Court notes that the firm's time spent on initial case filings is not deemed common benefit work.  In addition, the Court could not attribute any common benefit work to some vague entries.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $483,754 is appropriate.

### 9.    Cuneo Gilbert & LaDuca, LLP

The firm of Cuneo Gilbert & LaDuca, LLP, submitted a timely three-page submission and time records in support of their request for common benefit attorney fees. The firm also appeared before the CBAFCC.  The firm submitted a $684,973 lodestar, and the CBAFCC capped this figure at $645,173.  The CBAFCC recommended a 0.4 multiplier for an award of $258,069.  The firm objected to this recommendation.

The firm's three-page submission describes that the bulk of the firm's work related to document review and coding at the request of lead counsel.  In addition, the firm participated in the Discovery Committee, the bellwether selection process, and assisted in some briefing for the *Duron* and *Clasby* summary judgment motions.

The firm's objection to the CBAFCC's recommendation states that the CBAFCC had conflicts of interest that resulted in unfair multipliers recommended for its members. The firm states that it only had one client in the MDL, and that this client, Otto Morman, was one of the original five complaints that formed the basis for the MDL.  The firm's objection suggested that all firms involved in common benefit work be given a floor of a 0.7 multiplier and that then the Court should distribute the remaining $34.5 million dollars as the Court sees fit.

The CBAFCC responded to this objection by noting that a 0.7 across-the-board multiplier would result in an unjust enhancement to those firms that made a small contribution to the common benefit.  The CBAFCC stated:

> Given the amount of common benefit work that was needed to reach the result that was achieved, the Committee, under no circumstances, felt it could award $600,000 for the totality of the work done by the Cuneo Gilbert & LaDuca firm.  Based on the totality of the work done overall for the common benefit, the Committee feels Cuneo Gilbert & LaDuca firm's recommended allocation is appropriate.

(CBAFCC response at 12.)

The Court's *de novo* review of the Cuneo firm's time records shows that nearly all of the firm's time was related to the common benefit.  Aside from a few vague entries and some entries related to reviewing documents that would have been done aside from

the common benefit, nearly all of the firm's time related to document review and coding. There is no indication from the CBAFCC's submissions that this time was not requested or warranted.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $638,172 is appropriate.

### 10.    Douglas & London, P.C.

Douglas & London, P.C., submitted time records and an untimely three-page submission on behalf of their petition for common benefit attorney fees.  The firm also appeared before the CBAFCC.  The firm requested $58,320 in attorney fees.  The CBAFCC considered an adjusted lodestar of $58,321[11] and recommended a multiplier of 0.2, for a total of $11,664.  The firm did not object to this recommendation.

In its three-page submission, the firm detailed the role of an associate at the firm in coding documents.  In addition, the firm described its role in the *Burmeister* bellwether trial preparation.  Specifically, the firm defended the plaintiff's deposition for that case. The firm noted that as a plaintiff-only firm, it does not typically document its time in detail.  As a result, the firm stated that its time estimates were probably on the low side of what actually was incurred.

The Court has reviewed the firm's time records and its three-page submission. The Court finds that a large portion of the firm's submitted hours are more properly attributed to client- or marketing-related activities, not common benefit work.  Therefore,

---

[11]    The CBAFCC supplied the Court with these numbers.  The Court is unsure why the amount changed by one dollar.

based on the Court's *de novo* review, the Court agrees with the CBAFCC

recommendation and awards the firm $11,664.

### 11.    Ellis, Carstarphen, Dougherty & Goldenthal, PC

The firm of Ellis, Carstarphen, Dougherty & Goldenthal, PC, submitted time

records but no three-page submission on behalf of its $349,477 request for common

benefit attorney fees.  The firm did not appear before the CBAFCC.  The CBAFCC

considered an adjusted lodestar of $217,459.  The CBAFCC recommended a

0.2 multiplier for an award of $43,492.  The firm objected to this recommendation.

The firm's objection, combined with that of the other "Texas firms," primarily

focused on procedural objections with the CBAFCC's work.  The Texas firms noted that

the CBAFCC Report fails to provide the necessary transparency of the process of

awarding common benefit fees and that the CBAFCC Report is not supported by

evidence of the CBAFCC's decision-making process.  The Texas firms stated that the

CBAFCC failed to provide the Court with an appropriate factual analysis to support the

CBAFCC's conclusions.  The Texas firms further stated that the CBAFCC Report applies

the wrong analysis for determining the amount of fees to be awarded.  Specifically, the

Texas firms take issue with the CBAFCC's multiplier approach.

The CBAFCC responded to the Texas firms' objections by stating that none of the

Texas firms did a three-page submission to support their requests.  The CBAFCC noted

that a number of the Texas cases were settled separately and outside of this MDL's

settlement and that there was no coordination with this MDL.  The CBAFCC assumed

that the Texas firms would have been compensated as part of that Texas state court litigation.

The Texas firms submitted detailed billing records through June 2006. The Court's *de novo* review of the Texas firms' time records revealed a great deal of client-specific and marketing-related activities. The Texas firms submitted multiple entries related to such things as the preparation of PowerPoint presentations to which the Court cannot attribute a common benefit. Moreover, the Texas firms declared significant time records for reading general Court orders and correspondence. In the Court's view, little of the time submitted by this firm is compensable from the common benefit. Thus, based on the Court's *de novo* review, the Court finds that an award of $21,746 is appropriate.

### 12.    Goldenberg & Johnson PLLC and Crosby Law Office

The firm of Goldenberg & Johnson, PLLC, together with the Joseph Crosby Law Office, submitted a timely three-page submission and time records in support of their $526,868 and $146,003 requests, respectively, for common benefit attorney fees. Michael Johnson, Esq., presented to the CBAFCC on behalf of the Goldenberg & Johnson firm. The CBAFCC considered adjusted lodestars after the fee cap of $439,975 for Goldenberg & Johnson and $111,240 for Joseph Crosby. The CBAFCC recommended a 1.2 multiplier for the Goldenberg & Johnson firm, for an award of $527,970. The CBAFCC recommended a 1.0 multiplier for Joseph Crosby, for an award of $111,240. The firms did not object to these recommendations.

The firms' collective three-page submission detailed the firms' significant participation in the Minnesota bellwether cases. In addition, the firms noted their

significant and active involvement in the settlement negotiations that led to the final resolution of this litigation.  The firms noted that their time records were not kept contemporaneously because they filed the majority of their cases in Minnesota state court.  However, the firms reconstructed their time records based on their file notes, calendars, and e-mail.  The firms noted that due to the fact that they reconstructed their time records, the firms probably only submitted about 60-70% of the common benefit time that was actually performed.

The Court's review of the Goldenberg & Johnson firm's time records revealed that although the time submitted is easily attributed to the common benefit, some of the time the firm submitted is excessive in light of the tasks performed.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $417,976 is appropriate for the Goldenberg & Johnson firm.

The Crosby Law Office's time similarly revealed some excessive time, but it primarily showed appropriate common benefit time.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $105,678 to the Crosby Law Office is appropriate.

### 13.    Grady Schneider & Newman LLP

The firm of Grady Schneider & Newman LLP submitted an untimely three-page submission and time records on behalf of its $412,318 request for common benefit attorney fees.  The firm made a presentation to the CBAFCC to support its request.  The CBAFCC did not adjust the lodestar and recommended a 0.3 multiplier for an award of $123,695.  The firm objected to this recommendation.

The firm's three-page submission noted the firm's significant contribution toward document review and coding.  The firm noted that aside from the 1,176.5 hours it submitted for coding and review, it did not submit any of its other "common benefit" time, including its time spent corresponding with the PSC and discussing case strategies.

The firm objected to the CBAFCC's recommendation, stating primarily that all of the firm's work was done at the request of the PSC.  The CBAFCC responded to this objection by noting that the CBAFCC valued document review and coding to be a qualitatively less significant contribution than other work.

The Court's *de novo* review of the firm's time revealed some portion of time that the Court would view as client-related work, including reviewing general court orders.  In addition, the Court found that some time submitted related to researching medical issues and reading depositions was excessive in light of the nature of the common benefit work that was performed.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $329,854 is appropriate.

### 14.    Hagen Berman Sobol, LLP

The firm of Hagen Berman Sobol, LLP, submitted some time records but no three-page submission on behalf of its $262,284 request for common benefit attorney fees.  The firm did not appear before the CBAFCC.  The CBAFCC considered an adjusted lodestar of $261,473.  The CBAFCC recommended a 0.5 multiplier, for an award of $130,737.  The firm did not object to this recommendation.

Thomas M. Sobol, Esq., from the firm was a member of the PSC.  The Court's review of the firm's time records revealed some marketing and client-specific work,

especially in the time prior to the MDL's inception.  In addition, the firm submitted time

records related to completing plaintiff fact sheets and working on complaints that the

Court does not deem to be common benefit work.  Therefore, based on the Court's

*de novo* review, the Court finds that an award of $209,178 is appropriate.

### 15.    Harke & Clasby, LLP

The firm of Harke & Clasby, LLP, submitted a timely three-page submission and

some time records on behalf of its petition for common benefit attorney fees.  The firm

also made a presentation before the CBAFCC.  The firm requested a lodestar of

$805,789, and the CBAFCC first considered an adjusted lodestar of $805,026.  The

CBAFCC awarded the firm a 0.8 multiplier, for an award of $644,021.  The firm objected

to this recommendation.  After further submissions, the CBAFCC changed the adjusted

lodestar to $805,789.

Lance A. Harke, Esq., a member of the firm, was on the PSC.  The firm's

three-page submission described the firm's work regarding discovery and depositions for

the *Clasby* bellwether case.  The summary details the firm's significant role in briefing

associated with Guidant's Motions for Summary Judgment and Motion to Strike

Plaintiff's Expert Reports.  In addition, the summary describes the firm's work on the

Experts Committee and the Allocation Committee.  The firm noted that it "effectively

shut down work on all other cases for significant periods of time to focus entirely on the

bellwether pretrial preparation and briefing."  (H&C at 2.)

The firm objected to the CBAFCC's 0.8 multiplier, noting that, with no

rationalization, the CBAFCC unfairly reduced some firms' awards, while increasing

other firms' awards to significant multipliers.  The firm noted that it worked at the express direction of the LCC for the common benefit.  The firm detailed its specific work toward the common benefit, further expanding on the information set forth in the three-page submission.  The CBAFCC responded to the objection by noting that, given the limited funds allocated to the common benefit, the CBAFCC awarded the highest allocation it thought possible.

The Court has reviewed the firm's records and finds that some of the time the firm submitted related to client-specific work, including dealing with plaintiff fact sheets and reviewing orders that would have been done on an individual client basis.  Unfortunately, the firm did not submit detail for many of its time reports, so the Court often was left with no meaningful way to assess the firm's time.  However, based on the Court's own involvement in the *Clasby* case, the Court is aware of counsel's significant and appropriate time commitment.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $644,631 is appropriate.

### 16.    Heins Mills & Olson

The firm of Heins, Mills & Olson, PLC, submitted time records and a timely three-page submission in support of its petition for common benefit attorney fees.  The firm did not appear before the CBAFCC.  The firm submitted a $697,304 lodestar request.  The CBAFCC adjusted this amount to $695,508 after the fee cap and recommended a multiplier of 0.3, for an award of $208,653.  The firm objected to that recommendation.  The CBAFCC's fee cap lodestar was slightly adjusted to $695,617 after further submissions from counsel.

Firm member Stacey L. Mills, Esq., was on the PSC.  The firm's three-page submission describes how the great majority of the firm's submitted time was spent on discovery.  In addition, the firm states that another portion of the firm's time was spent dealing with issues prior to the inception of the MDL, specifically researching matters that culminated in the Edith Walker complaint, the original case filed in this District.

The firm objected to the CBAFCC's request, stating that the 0.3 multiplier was not justified when the firm conducted work that was specifically directed by the LCC.  The CBAFCC responded to this objection by stating that it had to place a certain value on the various types of common benefit work that were performed and that it did not view Heins Mills Olson's contribution as highly as that of others.

The Court's review of the firm's time records revealed some time that was spent doing client specific-work, reviewing general orders, and working on what the Court would classify as marketing-related activities, especially prior to the inception of the MDL.  This time cannot be attributed to the common benefit.  Yet the firm also submitted a significant portion of time that was related to document coding and review, time which is legitimately for the common benefit.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $556,493 is appropriate.

### 17.    Hersh & Hersh

The law firm of Hersh & Hersh submitted time records and an untimely three-page submission in support of its $777,323 request for common benefit attorney fees. The firm also appeared before the CBAFCC. The CBAFCC considered an adjusted lodestar of $687,080. The CBAFCC recommended a 1.1 multiplier for an award of $755,788. The firm did not object to this recommendation.

The firm's three-page submission detailed the firm's involvement in the Minnesota state court litigation, together with the Pearson firm and the Goldenberg & Johnson firm. Hersh & Hersh filed the *Wislocki* case that involved a significant remand motion. The firm stated that it was the *de facto* leader for the state court litigants in settlement negotiations.

The Court's review of the firm's time records revealed some time that the Court would attribute to client-related work. In addition, the records included some vague entries and time for travel to marketing-related activities that occurred, for example, in Las Vegas, Houston, and Washington, D.C. The remainder of the firm's time was properly attributed to the common benefit. Therefore, based on the Court's *de novo* review, the Court finds that an award of $652,726 is appropriate.

### 18.    Hilliard & Munoz, LLP

The firm of Hilliard & Munoz, LLP, submitted time records but no three-page submission in support of their $889,258 request for common benefit attorney fees. The firm did not make a presentation to the CBAFCC. The CBAFCC considered an adjusted lodestar of $654,643. The CBAFCC recommended a 0.2 multiplier for an award of

$130,929.  The firm filed an objection collaboratively with the Ellis Carstarphan firm, as noted above.

The Court's review of this firm's records revealed an unusual amount of time submitted prior to the inception of the MDL.  For example, the firm submitted five hours per month for "research of design defect of Guidant defibrillator model 1861:  research of all Guidant recalled defibrillators" from January 2005 through June 2005, even though the recall first occurred in June 2005.  The Court is mystified as to how the firm could research a recalled device when it had not yet been recalled.  The firm also submitted significant client-related time records.

As noted with the Ellis Carstarphan firm, neither the firm nor the CBAFCC has provided the Court with any indication as to how the Texas cases were coordinated with the MDL.  In fact, in the Court's view, the work done on the Texas cases was often directly opposed to the plaintiffs efforts in this MDL.  In addition, the Court assumes that the Texas firms were compensated for their common benefit work through the Texas settlement.  The Texas firms' records reveal little, if any, common benefit work for this MDL.  In the Court's view, little of the time submitted by this firm is compensable from the common benefit.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $65,464 is appropriate.

### 19.   Jennings and Drakulich

The firm of Jennings & Drakulich, LLP, submitted time records and a three-page submission in support of its petition for Common Benefit Attorney Fees.  The firm did not appear before the CBAFCC.  The firm submitted a lodestar request of $2,937,869.

After the fee cap, the CBAFCC considered a lodestar of $2,543,715.  The CBAFCC recommended a multiplier of 1.6 for an award of $4,069,944, to which the firm did not object.

Nicholas Drakulich, Esq., was a member of the PSC.  The firm's three-page submission outlines Mr. Drakulich's role as the Leader of the Trial Team, appointed by the Lead Counsel Committee.  It highlighted, among other things, Mr. Drakulich's contributions taking and defending key depositions, tracking internal Guidant documents and regulatory submissions, working with testifying experts, and his involvement in motion practice and trials.  In addition, the firm noted Mr. Drakulich's involvement in the settlement as the special advisor to the negotiating team.

The Court finds that some of the firm's time records revealed time that was not appropriately billed to the common benefit.  Such entries include time spent reviewing and corresponding with media about the Guidant litigation, time spent reviewing individual complaints (unrelated to the bellwether trials) and client retainers well before the MDL was commenced, work related to the Senate Finance Committee, time spent reviewing the Court's orders (which the Court attributes to client work, not common benefit work), as well as examples of duplicate effort where more than one attorney was involved unnecessarily.  The records also included some blank entries in monthly time detail reports, for which the Court will not reimburse as common benefit time.  In sum, the Court finds that some of the time spent contained in the firm's records cannot be attributed to common benefit work.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $2,416,529 is appropriate.

### 20.    John F. Nevares and Associates

John F. Nevares and Associates submitted a lodestar request of $201,443.  The fee

cap did not change the submitted lodestar.  The firm did not submit a three-page

submission and did not appear before the CBAFCC.  The CBAFCC recommended a

0.025 multiplier for a proposed fee award of $5,036.  The firm did not object to the

proposed fee award.

Without the benefit of a three-page submission, an objection, or an explanation

from the CBAFCC as to what work Mr. Nevares was asked to do, the Court has no

meaningful way to determine what work Mr. Nevares did at the PSC's request.

Mr. Nevares submitted time records from July 2005 through April 2007.  Some of this

time could arguably be attributable to common benefit time, such as researching and

drafting preemption issues and participating in the hearing before the JMPL.  The vast

majority of the time submitted appears to be work that was and should have been done on

behalf of individual clients.  Examples of this work include reviewing orders and other

filed submissions.  Therefore, based on the Court's *de novo* review, the Court accepts the

CBAFCC's proposed award to Mr. Nevares of $5,036.

### 21.    Kellogg Huber Hansen Todd Evans & Figel, PLLC

The firm of Kellogg Huber Hansen Todd Evans & Figel, PLLC, submitted a

timely three-page submission and extensive time records in support of its $4,414,533

request for common benefit fees.  The firm also presented before the CBAFCC.  The

CBAFCC first considered an adjusted lodestar of $4,400,966.  The CBAFCC

recommended a 0.7 multiplier for an award of $3,080,676.  The firm objected to this

recommendation.  Subsequent to the CBAFCC report and after further submissions, the CBAFCC adjusted the lodestar to $4,414,127.

Firm member Silvija Strikis, Esq., was on the PSC and also co-chaired the Discovery Committee.  The firm's three-page submission documented the firm's involvement in establishing the MDL and overseeing all of Plaintiffs' discovery efforts. The firm was the principal drafter of every discovery request.  The firm was significantly involved in document coding and training document coders.  The firm managed and supported the deposition discovery process and took a lead role in briefing and court filings.  The firm also documented its integral involvement in trial preparation for the *Duron* trial.  Finally, the firm noted its direct involvement in the settlement negotiations and finalizing documents for the settlement.

The firm's objection states that all firms should get a lodestar without penalty before anyone gets a multiplier above their lodestar.  The objection notes that the firm has only 18 of the 8,550 Claimants in this MDL and that the firm has agreed to waive contingencies as to these eighteen Claimants.  The objection reiterates the firm's significant common benefit role in status conferences, discovery, privilege log review, and deposition coordination.  The objection further details the firm's role in court filings and trial preparation for bellwether trials.  Finally, the firm describes its significant role in the settlement negotiations and finalization of the settlement.  Notably, the objection states that even though, as a member of the PSC, Ms. Strikis submitted her time records on a monthly basis, at no time did the PSC indicate that the firm was performing unnecessary work.

The CBAFCC responded to this objection by stating that the CBAFCC's primary discount to the firm's time was because the firm's 12,000 paralegal hours were 2.5 times as many hours as Zimmerman Reed's entire paralegal staff.

The Court's review of the firm's time demonstrated meticulous, outstanding record-keeping by the firm.  The Court's review revealed that a slight amount of the time submitted was related to what the Court would classify as marketing-related activities. There is nothing in the record to suggest that the firm was ever told that its time was excessive or unnecessary.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $4,325,844 is appropriate.

## 22.  Kershaw Cutter & Ratinoff LLP

Kershaw Cutter & Ratinoff, LLP, submitted time records and a timely three-page submission in support of their petition for Common Benefit Attorney Fees.  The firm also made a presentation to the CBAFCC.  The firm submitted a lodestar request of $1,327,918.  After the fee cap, the CBAFCC considered a lodestar of $1,022,994.  The CBAFCC recommended a multiplier of 1.1 for an award of $1,125,293, to which the firm objected.  After further submissions from the CBAFCC, the newly adjusted lodestar is $1,065,178.

The firm's three-page submission detailed its work retaining and developing experts, staffing the document depository, reviewing and coding documents, taking depositions, briefing, and preparing for trial.  C. Brooks Cutter, Esq., from the firm was a member of the PSC.

The firm's extensive objection to the CBAFCC's recommendation expanded further on the details of the three-page submission and focused, in part, on the wide multiplier divergence among the nine core firms that ran the litigation, and the inequities created by the multiplier recommendation and the lodestar reduction. Specifically, the firm challenged the lack of specificity by which the CBAFCC applied the Court's fee cap and the CBAFCC's failure to discount fees for duplication of effort by multiple attorneys at other firms. The firm also asserts that the CBAFCC's methodology appears to unfairly penalize the firms who used senior lawyers to do their work. Specifically, the firm suggests that the CBAFCC should have reduced the billing rate of junior associates who typically bill below $400 an hour to proportionately reflect the fee cap imposed by the Court. The firm also noted that it is difficult to ascertain the manner in which the fee cap was applied.

The CBAFCC responded by recognizing Kershaw Cutter & Ratinoff's "exceptional contributions towards the common benefit" and Mr. Cutter's position as an integral member of the trial team. (Doc. No. 2871 at 15.) Yet, the CBAFCC considered this work not as important as the work on settlement negotiations and other related matters, and it stood by its recommendation to give the firm a 1.1 multiplier.

The Court reviewed the time records submitted by the firm and found that a small amount of its time submitted was actual client work, including letters and telephone communications with clients and reading orders that would have been read in the natural course of work for its clients and thus would be compensated by a contingency fee in the individual cases. In addition, the firm included in its submission a small number of

entries related to drafting complaints, preparing fact sheets, and reviewing medical records for individual clients.

The Court finds that a small portion of the time submitted by Kershaw Cutter Ratinoff LLP cannot be attributed to common benefit work.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $1,033,222 is appropriate.

### 23.    Kirtland & Packard, LLP

The law firm of Kirtland & Packard, LLP, submitted a lodestar request of $24,210. The fee cap did not change the firm's lodestar request.  The firm did not submit a three-page submission or appear before the CBAFCC.  The CBAFCC recommended a 0.1 multiplier for a proposed fee award of $2,421.  The firm did not object to the proposed fee award.

Without the benefit of three-page submission, an objection, or an explanation from the CBAFCC as to what work the firm was asked to do, the Court has no meaningful way to determine what work the firm did at the PSC's request.  The firm submitted time records for the period from June 2005 through December 2006.  The Court's review of the firm's time records reveals a significant amount of time that cannot be attributed directly to common benefit work.  For instance, there are several entries related to correspondence with "associate counsel" or "co-counsel."  Such entries, without more, do not amount to common benefit work.  There is, however, a small amount of time for document review that can be attributable to common benefit work.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $2,421 is appropriate.

### 24.    Klafter & Olsen, LLP

The law firm of Klafter & Olsen, LLP submitted a lodestar request of $458,354. After the fee cap, the CBAFCC originally considered a lodestar of $325,035. The firm submitted a timely three-page submission and appeared before the CBAFCC. The CBAFCC recommended a 1.0 multiplier, to which the firm objected. Subsequent to the CBAFCC report, the CBAFCC adjusted the lodestar to $297,825.

The firm's three-page submission details the firm's involvement with the first Guidant class action case filed in this Court and with the firm's extensive briefing filed with the Court. Jeffrey Klafter, Esq., was appointed as the co-chair of the Law and Briefing Committee. As co-chair, Mr. Klafter was involved with, among other things, drafting the Client Questionnaire, researching the viability of certain claims, drafting the Master Complaint, and opposing Guidant's preemption summary judgment motion and Guidant's motion to dismiss. In addition, the firm was involved with researching and drafting briefs for various significant legal issues during 2007, in advance of the first bellwether trial.

In its objection, the firm reiterated many of the points made in its three-page submission and noted that, in effect, it was receiving a negative 0.71 multiplier on its pre-adjusted time. It also stated that all of the work the firm performed was requested by the LCC and that a 1.0 multiplier does not compensate it for the risk it was subjected to by agreeing to perform certain tasks. Finally, the firm objected to the CBAFCC's award of larger multipliers to certain firms and to the committee's explanation that those multipliers were awarded after considering "what work mattered."

The CBAFCC responded to the firm's objection by stating that while its work was of the "highest quality," it was focused only on "6 briefing issues over a limited period of time." (Doc. No. 2871 at 15.) For that reason, the CBAFCC believed that the recommendation was appropriate.

The Court has considered the firm's records and submissions and finds that most of the firm's time reflects work that is properly attributed to the common benefit. Yet a small amount of time the firm submitted early in the MDL cannot be attributed to common benefit work. Therefore, based on the Court's *de novo* review, the Court finds that an award of $282,933 is appropriate.

### 25.    Lawrence E. Feldman & Associates

Lawrence E. Feldman & Associates submitted a lodestar request of $47,582. The fee cap did not change the firm's lodestar request. The firm did not submit a three-page summary or appear before the CBAFCC. The CBAFCC recommended a 0.1 multiplier for a proposed fee award of $4,758. The firm did not object to the proposed fee award.[12]

Without the benefit of a three-page summary, an objection, or an explanation from the CBAFCC as to what work the firm was asked to do, the Court has no meaningful way to determine what work the firm did at the PSC's request. Much of the firm's submitted

---

[12]    On December 18, 2009, the firm submitted an affidavit describing the firm's common benefit work along with additional time records. The firm explained that it was submitting this information now because it somehow did not receive e-mail notification of the CBAFCC Report, although the firm has received all other notices. Whether characterized as a supplement or an objection, this submission is untimely and will not be considered. If it had been considered, the Court's decision would not have been changed by the submission.

time was incurred prior to the inception of the MDL.  Moreover, the Court's review of

the time records reveals a significant amount of time that cannot be attributed directly to

common benefit work.  For instance, there are several entries prior to the MDL's

inception related to reviewing news articles, gaining background on Guidant's devices,

and reviewing recently filed cases.  This work should have been done for individual

cases.  There is, however, some work with respect to obtaining an expert for the MDL

and discovery that can be attributable to common benefit work.  Therefore, based on the

Court's *de novo* review, the Court finds that an award of $19,032 is appropriate.

### 26.    Levin Papantonio Thomas Mitchell Echsner & Proctor, PA

Levin Papantonio Thomas Mitchell Echsner & Proctor, PA, submitted an untimely

three-page submission and time records on behalf of its petition for common benefit fees.

The firm also appeared before the CBAFCC.  The firm requested a lodestar of $116,120.

The CBAFCC considered an adjusted lodestar of $95,095 and recommended a 0.3

multiplier for a total award of $28,529.  The firm did not object to this recommendation.

The firm's three-page submission noted the firm's participation in document

review, its response to Guidant's summary judgment motion, and its preparation of some

guidelines for use in the Allocation Committee process.  The firm also noted its

200 case-inventory filings and its requests for medical records.  Timothy M. O'Brien,

Esq., from the firm was on the PSC.

The Court finds that a significant portion of the firm's time is not attributable to

the common benefit.  Specifically, the Court found entries for pre-MDL time that the

Court would classify as marketing-related activities, some client-specific work, and other

vague entries that are not attributable to the common benefit.  A large case inventory in itself does not result in common benefit time.  The Court also notes that many of the firm's document review entries were vague and did not describe for whom the document review occurred.  Yet the firm did submit other time that was related to bellwether trial depositions and document coding and review that is justifiably common benefit time. Therefore, based on the Court's *de novo* review, the Court finds that an award of $47,547 is appropriate.

### 27.    Levin Simes Kaiser and Gornick, LLP

The firm of Levin Simes Kaiser and Gornick, LLP, submitted a timely three-page submission and time records in support of its petition for common benefit fees.  The firm did not appear before the CBAFCC.  The firm requested a lodestar of $46,087.  The CBAFCC considered an adjusted lodestar of $40,800 and recommended a 0.5 multiplier for $20,400.  The firm did not object to this recommendation.

The firm's three-page submission describes the firm's 274 Guidant cases, 150 of which were filed in Ramsey County, Minnesota.  The firm stated that it only requested attorney time but did not submit any paralegal or administrative time in its common benefit request.  The firm noted its discovery requests that were served with each complaint.  The firm also detailed its time coordinating discovery for purposes of the Minnesota state cases, organizing the document depository for state court litigants, and the firm's efforts to coordinate the state court litigants.  The firm also noted its role in the settlement for state court litigants.  The firm asserted that it did not submit its time related to travel or conference calls.

The Court found that some of the firm's submitted time related to case-specific matters. Although the Court's review would have been easier had the firm provided better detail on its time records, it appears to the Court that most of the firm's work was related to the work the firm did for the common benefit. Therefore, based on the Court's *de novo* review, the Court finds that an award of $30,600 is appropriate.

### 28.    Lieff Cabraser Heimann & Bernstein, LLP

The firm of Lieff Cabraser Heimann & Bernstein, LLP, submitted very detailed time records and a timely three-page submission in support of its petition for Common Benefit Attorney Fees. The firm did not appear before the CBAFCC. Lieff Cabraser submitted a lodestar request of $3,465,429. After the fee cap adjustment, the CBAFCC considered a lodestar of $2,398,895. The CBAFCC recommended a multiplier of 1.6 for an award of $3,838,232, to which Lieff Cabraser did not object.

The firm's three-page submission detailed the firm's work initiating the MDL proceedings with the Judicial Panel on Multidistrict Litigation, Elizabeth Cabraser's extensive work on the LCC, and partner Wendy Fleishman, Esq.'s, active participation in the litigation. The firm also described its work negotiating and drafting early case management orders and plaintiffs' fact sheets, the Master Complaint, and bellwether trial and plaintiff selection processes. In addition, the firm described its extensive work in motion practice and pre-trial work.

The Court's review of the firm's extensive and detailed records revealed that nearly all of the time submitted was attributable to the common benefit. The firm's submissions included a slight amount of time related to completing client-specific fact

sheets and time spent attending the ATLA conference, which the Court views as marketing-related activities.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $2,374,906 is appropriate.

### 29.    Lockridge, Grindal, Nauen, P.L.L.P.

Lockridge, Grindal, Nauen, P.L.L.P., submitted a lodestar request of $2,055,206. After the fee cap, the CBAFCC considered a lodestar of $1,842,975.  The firm submitted a timely three-page summary and appeared before the CBAFCC.  The CBAFCC recommended a 0.6 multiplier for a proposed fee award of $1,105,785, to which the firm did not object.

Richard Lockridge, Esq., was a member of the PSC.  The firm's three-page submission reveals that its common benefit work falls into four categories, all of which were performed at the PSC's request.  Specifically, PSC members Hunter Shkolnik, Esq., and Nick Drakulich, Esq., directed the firm's review of scientific-related documents, and they asked the firm to prepare cross-examination outlines for Dr. Robert Hauser. Moreover, one of the firm's attorneys, Rob Shelquist, worked extensively with the bellwether trial team with respect to the choice-of-law issues surrounding jury instructions.  Finally, the firm was extensively involved with the settlement allocation process, especially given their recent Medtronic MDL experience.  The firm asserts that its work for the common benefit precluded or limited its ability to do work on other matters.

The Court's review of the firm's time records reveals that a small portion of the time records submitted did not relate to common benefit work.  This work included work

that should have been done for the firm's individual cases such as file management, completing plaintiff fact sheets, and reviewing PTOs.  Some of this time was also incurred several months before the inception of the MDL and cannot be directly attributable to the common benefit.  Rather, it appears to be marketing-type work that the Court does not consider to be common benefit work.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $1,750,826 is appropriate.

### 30.    Locks Law Firm

The Locks Law Firm submitted very detailed time records and a timely three-page submission and appeared before the CBAFCC in support of its petition for Common Benefit Attorney Fees.  The firm submitted a lodestar request of $2,076,127.  After the fee cap adjustment, the CBAFCC considered a lodestar of $1,513,525.  The CBAFCC recommended a multiplier of 1.5 for an award of $2,270,288, to which the Locks Law Firm objected.

The firm's three-page submission describes in detail attorney Seth R. Lesser's work on the LCC.  The summary summarizes Mr. Lesser's vast oversight role on nearly all plaintiffs' work.  In addition, the summary details Mr. Lesser's work briefing and arguing various motions, participating in status conferences, and actively negotiating in the settlement, among many other tasks.

The firm's objections to the CBAFCC's recommendation centers primarily on the inequities of the CBAFCC's methodology in determining the lodestar after fee cap and in determining the qualitative multipliers.  First, the firm noted that although the CBAFCC adjusted the higher-paid attorneys to a $400 fee cap, per the Court's instruction, the

CBAFCC did not proportionately adjust the fees for those attorneys making less than $400 per hour.  The objection pointed out that this resulted in a situation where the hourly rates were disproportionately skewed for lesser-paid attorneys and staff.  Second, the objection noted that the qualitative multipliers set forth by the CBAFCC amplified the disproportions of the fee cap.  Third, the objection described the CBAFCC's failure to take into account duplicative law firm work.  Ultimately, the objection asked that the Court consider the allocation of large qualitative multipliers for a small number of firms, while other firms took cuts in their lodestars.  The objection included some global suggestions as to how the Court could deal with these inequities.

In response to the objection, the CBAFCC stated that the objection did not appropriately take into account various firms' relative contributions to the common benefit.  In addition, the CBAFCC noted that the spread between the lodestar and final awards was significantly more compressed than in other MDLs.

The Court's review of the firm's detailed records showed very little time that was not directly attributable to the common benefit.  Specifically, the firm included some time entries that were related to individual client-related work and a slight bit of time that could be attributed to marketing-related activities.  Otherwise, nearly all of the firm's time was appropriately submitted as common benefit work.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $1,498,389 is appropriate.

### 31.    Lopez, Hodes, Restaino, Milman & Skikos and Lopez McHugh, LLP

Lopez, Hodes, Restaino, Milman & Skikos ("Lopez Hodes") submitted a lodestar

request of $816,275.  After the fee cap, the CBAFCC considered a lodestar of $604,180.

Lopez McHugh, LLP ("Lopez McHugh") submitted a lodestar request of $184,340.

After the fee cap, the CBAFCC considered a lodestar of $113,440.  Lopez Hodes

submitted a timely three-page submission and appeared before the CBAFCC.  Lopez

McHugh did not submit a three-page submission or appear before the CBAFCC.  Ramon

R. Lopez, Esq., formally of Lopez Hodes and now of Lopez McHugh, was a member of

the PSC.[13]  The CBAFCC recommended a 0.5 multiplier for a proposed fee award of

$302,090 for Lopez Hodes, and the CBAFCC recommended a 0.1 multiplier for a

proposed fee award of $11,344 for Lopez McHugh.  Lopez Hodes and Lopez McHugh

submitted a joint objection to the proposed fee awards.

In its three-page summary, Lopez Hodes explains that several members of its firm,

including Mr. Lopez, Thomas Schultz, Esq., and Kyle Lakin, Esq., performed a

significant amount of common benefit work.  Lopez Hodes grouped its work into four

categories:  (1) the initial MDL formation process; (2) the early MDL period prior to the

trial selection process; (3) the trial selection process, including having one of its clients,

Leopold Duron, chosen as a bellwether plaintiff; and (4) preparing Mr. Duron's case for

trial.  Lopez Hodes then provided more detail with respect to each category.  Specifically,

---

[13]    Lopez Hodes' three-page summary suggests that Dave Suggs and Janet Abaray were also members of the PSC.  This is incorrect.

with respect to Mr. Duron's case, Lopez Hodes acted as primary or secondary counsel on 18 depositions, prepared materials for summary judgment motions, and assisted with trial preparation.

In their joint objection, Lopez Hodes and Lopez McHugh (collectively, "Lopez") take issue with the CBAFCC's methodology.  Lopez asserts that the CBAFCC did not apply the *Johnson* factors.  Taking issue with the CBAFCC's secret deliberations, Lopez asks the Court to grant all interested parties access to all submissions to the CBAFCC and to any documents that reflect the CBAFCC's decision-making process.  The CBAFCC responds that Lopez is merely raising procedural objections that should be denied because the CBAFCC asserts that it adhered to the CBAFCC Policies, Procedures, Protocols, and Guidelines for Allocation of the Common Benefit Attorney Fee Fund and the Common Cost Fund.  The CBAFCC then stated:

> The committee acknowledges the [Lopez Hodes] firm for the important contributions it made toward the common benefit.  Thomas Schultz and Kyle Lakin were valuable contributors to the team that prepared Mr. Duron's case for the first bellwether trial.  Mr. Ramon Lopez and Mr. Steve Skikkos played important roles in settlement coordination and the late state re-negotiations.  The firms however did not make significant contributions toward certain other important aspects of the case, such as legal research, writing, argument and the continuous management and suppose of the litigation, which also required expenditure of substantial time, effort and skill.  The committee took these factors into consideration in makings its recommended awards.  For the above reasons, the Committee believes that the recommended allocations are appropriate.

(Doc. No. 2871 at 18-19.)  Lopez submitted a reply to the CBAFCC's response.  In that reply, Lopez focuses on the fact that nothing in the Court's prior orders, the PSC communications, or the CBAFCC's statements suggest that law firms would be awarded

negative multipliers if they did not participate in all aspects of the litigation.  Lopez also

questions the CBAFCC's reasoning with respect to other law firms that did not

participate in all aspects of the litigation but nonetheless received larger multipliers than

did Lopez.

The Court's review of Lopez Hodes' time records reveals that a portion of the time

submitted was non-common benefit time incurred prior to the inception of the MDL.

That time included reviewing press and law review articles, attending an ATLA

conference, and general background work.  The Court does not consider much of this to

be common benefit time, as any attorney would have performed many of those activities

prior to filing a complaint.  However, it is also apparent that some of the coordination and

research efforts during that time directly benefited the common benefit.  For that reason,

the Court will consider some of the time submitted prior to the inception of the MDL to

be common benefit work.  Much of the remaining time entries can be attributed to

common benefit work.  This work included preparing Mr. Duron's case, reviewing

documents, and responding to various motions.  Other work that is not attributable to the

common benefit includes reviewing the Court's PTOs, something all attorneys should

have done; organizing files; and completing plaintiff fact sheets.  Therefore, based on the

Court's *de novo* review, the Court finds that an award of $525,637 for Lopez Hodes is

appropriate.

The Court's review of Lopez McHugh's time records reveals that the majority of

the submissions can be directly attributable to common benefit work, specifically related

to Mr. Duron's trial preparation and settlement negotiations.  Nothing in the record

suggests that Lopez McHugh was not asked to perform this work or did not do it. Therefore, based on the Court's *de novo* review, the Court finds that an award of $107,768 for Lopez McHugh is appropriate.

### 32.    Martin & Jones

The firm of Martin & Jones submitted a timely three-page submission in support of their request for common benefit fees. The CBAFCC considered an adjusted lodestar of $133,025. The CBAFCC recommended a 0.2 multiplier for an award of $26,605. The firm did not object to this recommendation.

The firm's three-page submission details the firm's involvement in screening and selecting four potential bellwether cases. In one case, the firm conducted depositions. Notably, the firm stated that it works entirely on a contingency fee basis, so it prepared documentation based on the likely amount of time that a task would have taken. The firm submitted no time records.

Although the firm has not submitted any time records, there is nothing in the record to suggest that the firm did not perform at least a minimal amount of work with regard to the bellwether cases, as suggested in the firm's summary. The Court is unsympathetic to the firm's assertion that it did not keep records because the firm does not typically bill time. This may be the case for the great majority of firms that participated in this MDL. Therefore, based on the Court's *de novo* review, the Court finds that an award of $13,302 is appropriate.

### 33.    Martha Wivell

Martha Wivell, Esq., submitted time records and a late three-page submission on behalf of her petition for common benefit fees.  She submitted a request for $195,457.  After the fee cap, the CBAFCC considered a lodestar of $165,800.  The CBAFCC recommended a 0.5 multiplier for an award of $82,900, to which Ms. Wivell did not object.

Ms. Wivell, a solo practitioner, described her involvement in the remand motion for the *Machalowski* case, which allowed the state court litigation to go forward.  She also was involved in consolidating the Minnesota state court cases and served on the PSC's Law Committee.

The Court reviewed Ms. Wivell's time records and found that although most of Ms. Wivell's time appeared to be directly related to the common benefit, a portion of the time related to the *Machalowski* remand motion appeared to be excessive.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $99,480 is appropriate.

### 34.    Mason Law Firm

The Mason Law Firm submitted a lodestar request of $11,718.  With the fee cap, the CBAFCC considered an adjusted lodestar of $11,717.  The firm did not submit a three-page summary and did not appear before the CBAFCC.  The CBAFCC recommended a 0.2 multiplier for a proposed fee award of $2,343.  The firm did not object to the proposed fee award.

Without the benefit of a three-page summary, an objection, or an explanation from the CBAFCC as to what work the firm was asked to do, the Court has no meaningful way to determine what work the firm did at the PSC's request. Yet the firm's records include time entries that appear to be common benefit work, specifically time spent related to reviewing and coding documents. Therefore, based on the Court's *de novo* review, the Court will accept the CBAFCC's recommendation and award the firm $2,343.

### 35. Milberg Weiss

Milberg Weiss submitted a lodestar request of $173,198. After the fee cap, the CBAFCC considered a request of $159,388. The firm submitted an untimely three-page submission and did not appear before the CBAFCC. The CBAFCC recommended a 0.2 multiplier for a proposed fee award of $31,878. The firm did not object to the proposed fee award.

The firm's records include some time entries that appear to be common benefit work, specifically time spent with respect to the bellwether process. One of Milberg's clients was Joyce Valls, who was selected as a bellwether plaintiff. Given the Court's involvement in the bellwether process and its familiarity with the trial process, the Court concludes that some of Milberg's time is directly attributable to the common benefit. Therefore, based on the Court's *de novo* review, the Court finds that an award of $47,816 is appropriate.

### 36.    Neblett, Beard & Arsenault, LLP

Neblett, Beard & Arsenault, LLP, submitted a lodestar request of $2,433,975.
After the fee cap, the CBAFCC considered a lodestar of $2,069,225.  The firm submitted
a timely three-page submission and appeared before the CBAFCC.  The CBAFCC
recommended a 1.6 multiplier for a proposed fee award of $3,310,760.  The firm did not
object to the proposed award.

Richard Arsenault, Esq., was a member of the LCC.  The firm's three-page
submission is directed at Mr. Arsenault's activities.  The submission describes in detail
the management challenges presented by this MDL, and it explains the integral role
Mr. Arsenault took in dealing with those challenges.  The submission explains that
Mr. Arsenault, as a member of the LCC, "shared the responsibility to assign, oversee and
monitor all PSC activities."  Given this, Mr. Arsenault helped to coordinate extensive
discovery, document review, motion briefing, and oral argument.  Among other things as
detailed in a bullet-point list in the three-page submission, Mr. Arsenault also personally
assisted with expert witnesses, bellwether candidates, trial preparation, and settlement
negotiations.

The firm's submission specifically mentions that Mr. Arsenault performed the
majority of these tasks, as opposed to others in his firm acting in "any duplicative
capacity."  For the most part, the Court agrees with this assessment.  In its *de novo* review
of the firm's records, the Court was struck by the level of detail of most of the time
entries, especially by Mr. Arsenault.  Such detail gave the Court more than sufficient
information on which to judge whether work performed was indeed performed for the

common benefit.  The Court notes that Mr. Arsenault was a significant point person for the Court throughout the litigation.  The Court did, however, observe a few instances where the firm submitted time that appeared to be duplicative work associated with attending depositions by other members of the firm.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $2,028,840 is appropriate.

### 37.   Parker, Waichman Alonso, LLP

The law firm of Parker Waichman Alonso, LLP, submitted a lodestar request of $44,306.  After the fee cap, the CBAFCC considered a lodestar of $40,700.  The firm submitted an untimely three-page submission and appeared before the CBAFCC.  The CBAFCC recommended a 0.4 multiplier for a proposed fee award of $16,280.  Parker did not object to the proposed fee award.  After further submissions, the CBAFCC readjusted the lodestar to $41,700.

The firm's three-page submission explains that the PSC asked the firm to participate in both the Discovery and Law and Briefing Committees.  Specifically, the firm reviewed, analyzed, and summarized reports contained in the Manufacturer and User Facility Device Experience Database ("MAUDE"); drafted memoranda regarding emotional distress claims, breach of warranty claims, and other specific causes of action under certain states' laws; and assisted in responding to portions of Guidant's motion to dismiss.

The Court's review of the firm's time records reveals that nearly all of the time submitted is directly attributed to common benefit work for either the Discovery Committee or the Law and Briefing Committee.  There is nothing in the record to suggest

that the firm was not asked to do this work or did not perform this work. Therefore, based on the Court's *de novo* review, the Court finds that an award of $37,530 is appropriate.

### 38. Pearson Randall & Schumacher PA

Pearson Randall & Schumacher PA submitted a timely three-page submission and time records in support of its request for common benefit attorney fees. The firm also appeared before the CBAFCC. The firm submitted a lodestar request of $722,454. The CBAFCC considered a lodestar after application of the fee cap of $580,554. Then, the CBAFCC recommended a multiplier of 1.2 for a total award of $696,665. The firm did not object to this recommendation.

The firm's three-page submission detailed the role of Gale D. Pearson, Esq., as State Liaison Counsel in the MDL. In that role, the firm was responsible for receiving, coordinating, and distributing all pleadings, documents, and notices between the Court, Guidant, and the State Court Plaintiffs. The firm also played a large role in coordinating discovery and deposition review, monitoring MDL hearings and other state court proceedings, dealing with legal issues related to the state court litigation and removal issues, and selecting and preparing state court bellwether plaintiffs, among other work. In addition, the firm played a significant role in the settlement negotiations.

The Court reviewed the firm's billing records and reduced some time for client-specific activities, excessive time, and duplicative work. Otherwise, most of the firm's work can be attributed to the common benefit. Therefore, based on the Court's *de novo* review, the Court finds that an award of $551,526 is appropriate.

### 39.    Preti, Flaherty, Beliveau, Pachios & Haley, LLP

Preti, Flaherty, Beliveau, Pachios & Haley, LLP, submitted a lodestar of $99,126. After the fee cap, the CBAFCC considered a lodestar of $86,125.  The firm submitted a timely three-page submission and appeared before the CBAFCC.  The CBAFCC recommended a 0.2 multiplier for a proposed fee award of $17,225, to which the firm objected.

The firm's three-page submission explains that the firm performed class action work on behalf of its clients and class of purchasers, work that contributed to the common benefit.  Members of the firm also served on the Experts and Science Committee.  In addition, one of the firm's clients was a potential bellwether plaintiff so the firm performed work associated with her deposition, and the firm assisted in the preparation of another potential bellwether plaintiff.

In its objection, the firm contends that the disparity of the proposed multipliers is the product of inherent conflicts of interest that shock the conscience.  The firm calls for an independent arbiter to conduct a *de novo* review of the common benefit fee applications.  The CBAFCC responds that the firm's objection only raises procedural concerns that should be disregarded, given that the Court appointed the CBAFCC.

The Court's review of the records shows submissions that reflect a significant amount of time spent on individual client matters.  For example, the time records include time completing and correcting plaintiff facts sheets for individual clients; communicating with local counsel and co-counsel; registering for ECF, organizing files, addressing service issues, and reviewing billing; research concerning different states'

contingency fee statutes and correspondence with referral counsel regarding contingency fees; and reviewing the MSA.  The time records also contain vague entries such as "background research, analysis of factual and legal issues, case planning and next steps" that cannot be directly attributed to common benefit work, especially since the majority of such time was expended prior to the formation of the MDL.  The time records also reflect that the firm did indeed perform some common benefit work with respect to bellwether and expert issues.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $43,062 is appropriate.

### 40.    Price, Waicukauski & Riley, LLC

Price, Waicukauski & Riley, LLC submitted a lodestar request of $46,855.  After the fee cap, the CBAFCC considered a lodestar of $42,034.  The firm submitted a timely three-page submission but did not appear before the CBAFCC.  The CBAFCC recommended a 0.3 multiplier for a proposed fee award of $12,610.  The firm did not object to the proposed fee award.

The firm's three-page submission explains that William N. Riley, Esq., was invited to join the Third Party Payer ("TPP") Committee.  As part of the TPP Committee and at the PSC's request, members of the firm conducted research regarding breach of warranty claims and choice-of-law analysis for all fifty states.  In addition, the firm assisted in responding to sections of Guidant's motion to dismiss and drafting a motion for reconsideration.

The Court's review of the firm's time records reveals that nearly all of the time submitted is directly attributed to common benefit work for the TPP Committee.  There is

nothing in the record to suggest that the firm was not asked to do this work or did not

perform this work.  There was, however, some time that the Court finds excessive in light

of the nature of the tasks reported.  Therefore, based on the Court's *de novo* review, the

Court finds that an award of $31,525 is appropriate.

### 41.    Pritzker Ruohonen & Associates, PA

Pritzker Ruohonen & Associates, PA, submitted a lodestar request of $6,263.

After the fee cap, the CBAFCC considered a lodestar of $5,000.  The firm did not submit

a three-page submission or appear before the CBAFCC.  The CBAFCC recommended a

0.2 multiplier for a proposed fee award of $1,000.  The firm did not object to the

proposed fee award.

Without the benefit of a three-page summary, an objection, or an explanation from

the CBAFCC as to what work the firm was asked to do, the Court has no meaningful way

to determine what work the firm did at the PSC's request.  This is especially true since

the firm's time records do not specifically describe how the work was directed at the

common benefit.  There are, however, some time entries that appear to be common

benefit work.  Therefore, based on the Court's *de novo* review, the Court will accept the

CBAFCC's recommendation and award the firm $1,000.

### 42.    Rheingold Valet Rheingold Shkolnik & McCartney LLP

Rheingold Valet Rheingold Shkolnik & McCartney LLP submitted time records

and a timely three-page submission in support of its request for Common Benefit

Attorney Fees.  The firm also made a presentation to the CBAFCC. The firm submitted a

lodestar request of $1,892,343.  After the fee cap adjustment, the CBAFCC considered a

lodestar of $1,015,400.  The CBAFCC recommended a multiplier of 1.6 for a recommended award of $1,624,640.  The firm did not object to this recommendation.

Hunter J. Shkolnik, Esq., was on the PSC.  The firm's three-page submission describes, primarily, Mr. Shkolnik's extensive work on the MDL.  Specifically, Mr. Shkolnik's work included, among other things, discovery, deposing key witnesses, drafting pleadings, motion practice, and being a leader of the trial team.  Notably, the firm stated that it did not submit any advisory time billed by Paul Rheingold, Esq., or 500 hours of paralegal time incurred in trial preparation work.

The firm's time records revealed some work that is not attributable to the common benefit.  Specifically, the Court noted some vague time entries, instances of specific client intake work, work incurred prior to the inception of the MDL that was either non-critical or duplicative of similar time spent by other attorneys at other firms, and some work that the Court would attribute to marketing.  In addition, the Court has reduced for some time that was billed for "travel delays."  Most of the time the firm submitted, however, is properly attributed to the common benefit.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $964,630 is appropriate.

### 43.    Robinson Calcagnie & Robinson, Inc.

The firm of Robinson Calcagnie & Robinson, Inc., submitted time records but no three-page submission in support of its request for attorney fees.  The firm did not make an appearance before the CBAFCC.  The firm requested $229,763.  The CBAFCC adjusted the lodestar to $224,568, and it recommended a 0.5 multiplier for an award of

$112,284.  The firm did not object to this award.  The CBAFCC subsequently adjusted the lodestar to $229,761.

In the absence of a three-page submission, the Court has no meaningful way to classify the time that was asked of the firm for the common benefit.  As a result, the Court relied solely upon its own review of the firm's time records.  The Court's review revealed a significant portion of time spent reviewing orders, work that the Court would deem to have occurred outside of the realm of common benefit work.  In addition, the records showed some time that the Court would attribute to marketing-related activities, such as attending an ATLA conference.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $134,740 is appropriate.

### 44.   Russ Abney

Russ Abney, Esq., submitted incomplete time records but no three-page submission in support of his $267,190 request for common benefit attorney fees. Mr. Abney did not appear before the CBAFCC.  The CBAFCC considered an adjusted lodestar of $194,200.  The CBAFCC recommended a 0.2 multiplier for an award of $38,840.  The firm objected to this recommendation in conjunction with the Ellis Carstarphan and Hilliard Munoz firms, as addressed within the summary for the Ellis Carstarphan firm, above.

Absent a three-page submission and more detailed time records, the Court had a difficult time doing a meaningful review of this firm's time.  However, the firm did submit some time records detailing the firm's time related to attending mediation with Guidant in Minnesota.  In the Court's view, little of the time submitted by this firm is

compensable from the common benefit.  Therefore, based on the Court's *de novo* review, the Court finds an award of $19,420 appropriate.

### 45.    Schiffrin Barroway Topaz & Kessler, LLP

The firm of Schiffrin Barroway Topaz  & Kessler, LLP, submitted time records but no three-page submission in support of its request for common benefit fees.  The firm did not give a presentation to the CBAFCC.  The firm submitted a request for $1,204,324.  The CBAFCC considered an adjusted lodestar of $969,230.  The CBAFCC recommended a 0.2 multiplier for an award of $193,846.  The firm objected to this award.

The firm's objection notes that Tobias L. Millrood, Esq., formerly of the firm, was on the PSC, where he discussed strategy issues and attended meetings of the PSC.  The firm stated that Mr. Millrood "kept well apprised of all of the issues in this case."  In addition, the firm notes that an associate at the firm served on the Law and Briefing Committee and assisted in drafting the Master Complaint.  Finally, the firm asserts that it retained several full-time contract attorneys to assist in document review.

The CBAFCC responded to this objection by stating that it placed a qualitative valuation on the firm's work and did not value the document coding as greatly as other tasks performed in the litigation.  In addition, the CBAFCC noted that some of the firm's time was spent staying apprised of the case, work that could not be attributed to the common benefit.

The Court's review of the firm's time records revealed a significant time spent reviewing materials that the Court does not attribute to the common benefit.  In addition,

the files reveal some time spent doing client-related work, time that the Court would regard as marketing activities, and time that the Court deems excessive and duplicative in light of the nature of the work performed—specifically, the time spent working on the master complaint. Further, the majority of the firm's time spent on document review was not detailed in the time entries and merely noted up to ten hours a day for "document review" which, on its face, seems excessive. Therefore, based on the Court's *de novo* review, the Court finds that an award of $678,461 is appropriate.

### 46.   Schneider & Wallace

The firm of Schneider & Wallace submitted an untimely three-page submission and time records on behalf of its petition for common benefit attorney fees. The firm also appeared before the CBAFCC. The firm requested $96,381 and, after the fee cap, the CBAFCC considered an adjusted lodestar of $92,380. The CBAFCC recommended a 0.2 multiplier for an award of $18,476. The firm objected to this recommendation. Subsequent to the report, and after further submissions, the CBAFCC considered a new adjusted lodestar of $96,380.

The firm's summary addresses the firm's work in researching and drafting an opposition to Guidant's motion to dismiss the master complaint. The firm also drafted a motion for sanctions and participated in document coding. The firm's objection focused on the inherent conflict in allowing CBAFCC members to award themselves higher multipliers while other firms' lodestars were significantly reduced. In their articulate objection, the firm argued that no firm should be awarded a multiplier greater than 1.0 unless each firm's lodestar is paid on a dollar-for-dollar basis. Finally, the firm noted

that all of the work done by Schneider & Wallace was done at the request of the PSC and that the CBAFCC should not now argue that that work was superfluous.  The CBAFCC responded to this objection by noting that its discount of the firm's lodestar was related to the CBAFCC's qualitative valuation of the firm's work compared with that of other firms.

The Court's review of the firm's time revealed that nearly all time submitted was related to the common benefit.  The firm did submit some vague entries such as "review documents" that the Court cannot evaluate as to the common benefit value.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $81,923 is appropriate.

### 47.    Seeger Weiss LLP

The firm of Seeger Weiss LLP submitted time records and an untimely three-page submission in support of its petition for $621,278 of common benefit fees.  The firm did not appear before the CBAFCC.  The firm had a member, Christopher A. Seeger, Esq., on the PSC.  The CBAFCC considered an adjusted lodestar of $501,163 and awarded a multiplier of 0.7, for an award of $350,814.  The firm did not object to this recommendation.

The firm's three-page submission details the firm's work deposing key witnesses and retaining experts.  The firm also served on the Expert and Legal Research and Briefing Committees.  In addition, the firm contributed significantly to document review. The firm also located and developed at least one significant witness.

The Court's review of the firm's time records demonstrated some time incurred prior to the inception of the MDL that the Court would attribute to client-specific, not common benefit, work. In addition, a small portion of the time entries were rather vague and left the Court with no meaningful way to determine whether the work was common benefit work. But for the most part, the firm's time was attributable to common benefit work. Therefore, based on the Court's *de novo* review, the Court finds that an award of $451,046 is appropriate.

### 48.   Sheller, Ludwig & Badey

Sheller, Ludwig & Badey submitted time records and a timely three-page submission in support of its request for common benefit fees. The firm did not appear before the CBAFCC. The CBAFCC considered an adjusted lodestar of $125,320. The CBAFCC awarded a 0.1 multiplier for an award of $12,532. The firm objected to this award.

The firm's three-page submission details its work on its cases which ended up being selected as bellwether cases in state court. For these cases, the firm appears to have engaged in discovery and significant work regarding litigation strategy and analysis. The firm prepared certain witnesses for depositions and retained experts for the matters. The firm also noted its involvement in the *Machalowski* preemption issue.

The firm's objection again noted the firm's participation in document review and its work related to a bellwether case. Specifically, the firm stated that it engaged in investigation and research, discovery, and litigation strategy discussions for this case. In addition, the firm stated that it reviewed pleadings and prepared witnesses for their

depositions related to this case.  The firm also requested certain discovery from the CBAFCC related to the CBAFCC's recommendation.

The CBAFCC responded by acknowledging that the firm did indeed work with local counsel on a remand motion and assisted in the efforts for a bellwether plaintiff. The CBAFCC also responded that the firm's participation in document review and coding was limited, and that the firm had only logged into the document system four times during the litigation.

Based on the Court's review of the firm's time records, the Court found that a large portion of the time that the firm reported was related directly to client-specific work and obviously not the common benefit.  Yet, the firm did document some hours spent on document review and coding.  The Court finds that this time is appropriately compensated by the common benefit.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $25,000 is appropriate.

### 49.     The Schmidt Firm, LLP

The Schmidt Firm, LLP, submitted some summary records and a timely three-page submission in support of its common benefit attorney fee application, requesting a lodestar of $175,436.  The firm did not appear before the CBAFCC.  The CBAFCC considered an adjusted lodestar of $145,036 after the fee cap.  The CBAFCC recommended a multiplier of 0.5, for a total of $72,518.  The firm did not object to this recommendation.  After reviewing further submissions, the CBAFCC provided the Court with an adjusted lodestar of $155,036.

The firm's three-page submission details the firm's involvement in depositions.  In addition, the firm described its involvement in the bellwether trial selection process.

The Court's review of the time records revealed some entries that were excessive in light of the work performed and the time detail provided.  For instance, in October and November 2007, the firm submitted three entries totaling 286 hours stating, "prepared medical chronology for Guidant State Court Bellwether Plaintiff."  The Court is not sure what these entries mean, nor is the Court convinced that whatever work was performed could possibly have taken that much time.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $77,518 is appropriate.

### 50. Todd & Weld LLP

The firm of Todd & Weld, LLP, submitted time records and a timely three-page submission in support of its $177,173 request for common benefit attorney fees.  The firm also appeared before the CBAFCC.  The CBAFCC adjusted the lodestar to $172,094 with the fee cap, and recommended a 0.8 multiplier for an award of $137,675.  The firm did not object to the CBAFCC's recommendation.  After the CBAFCC report was submitted, the CBAFCC noted a further adjusted lodestar of $174,094.

The firm's three-page submission details the firm's time preparing the original class complaint, developing experts, and doing trial preparation work including motions *in limine* and motion practice, among other things.  In addition, the firm performed some document review.

The Court's review of the firm's time records revealed some work that the Court would deem client-related, including reviewing court orders and other

individual-client-related work.  In addition, the records included some vague entries and some marketing-related activities, including attending a Heart Rhythm Society conference in May 2006.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $156,684 is appropriate.

### 51.    Wallace & Graham, PA

The firm of Wallace & Graham, PA, submitted time records and a timely three-page submission in support of its petition for common benefit fees.  The firm did not appear before the CBAFCC.  The firm requested $32,103.  The CBAFCC considered an adjusted lodestar after fee cap of $29,916, and recommended a 0.2 multiplier for an award of $5,983.  The firm did not object to this recommendation.

The firm's three-page submission details the firm's filing of three cases in North Carolina Federal Court.  The firm notes the individual research it conducted regarding their claims, medical devices, Guidant, preemption, and class action issues. The firm asserts that it shared its research with the PLC once the MDL gained pace.  The firm noted its time spent on discovery of medical records, device records, and the like from hospitals and its clients.  The firm specifically addressed its time spent working with clients.  In addition, the firm noted its time spent reviewing cases for potential bellwether status.

The Court's review of the firm's time records revealed that a great deal of the firm's time was spent on client-specific activities, including client-specific medical record discovery, plaintiff fact sheets, and client contacts.  In addition, a portion of the firm's time was spent reading general orders and correspondence.  Therefore, based on

the Court's *de novo* review, the Court finds that the proposed award of $5,983 is appropriate.

### 52.    Weitz & Luxenberg, PC

The firm of Weitz & Luxenberg, PC, submitted time records and a timely three-page submission on behalf of its $642,110 request for common benefit time.  The CBAFCC considered an adjusted lodestar of $586,892, and it recommended a 0.5 multiplier for an award of $293,446.  The firm did not object to this recommendation. After further submissions, the firm's adjusted lodestar is $590,892.

The firm had a member on the PSC, Paul J. Pennock, Esq.  The firm's three-page submission describes the firm's work filing one of the early class action complaints against Guidant.  The firm retained, prepped, and worked up a purportedly key expert witness, Dr. Swerdlow, and also deposed Dr. Joseph Smith.  The firm also noted its work regarding document review, trial preparation for a bellwether trial, and depositions.  The firm also participated in the Expert Discovery and Expert working groups.

The Court finds that the firm submitted some time records that included entries for client-specific work, including attorneys' general review of court orders.  In addition, the firm submitted some vague entries that the Court could not necessarily attribute to the common benefit.  Other entries related to prepping for and reviewing depositions seemed excessive in light of the tasks performed.  Finally, the firm submitted time records for work that the Court would view as marketing activities, such as attending an ATLA conference and the PSC meeting in Scottsdale.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $472,713 is appropriate.

### 53.    Wexler Toriseva Wallace, LLP

The firm of Wexler Toriseva Wallace, LLP, submitted time records and a timely three-page submission in support of its $68,972 request for common benefit fees.  The firm did not appear before the CBAFCC.  The CBAFCC considered an adjusted lodestar of $53,060 and recommended a 0.3 multiplier for an award of $15,918.  The firm did not object to this recommendation.

The firm had a member on the PSC, Teresa Toriseva, Esq.  The firm's three-page submission noted its work on the bellwether case for Beverly Douglas.  In addition, the firm noted its participation in briefing to respond to Guidant's motion for summary judgment on Plaintiff's unjust enrichment claim.  The firm also drafted discovery requests, consulted on settlement, and considered related class certification issues.

In this instance, the firm submitted time records that were wholly incomplete.  The records provided little detail that allowed the Court to evaluate the firm's time.  However, the Court assumes that the CBAFCC was familiar with the firm's contribution, especially considering that Ms. Toriseva was on the PSC and thus the CBAFCC should have evaluated the firm's time appropriately.  Based on the Court's *de novo* review, the Court finds that the proposed award of $10,612 is appropriate.

### 54.    Whatley Drake & Kallas, LLC

The firm of Whatley Drake & Kallas, LLC, submitted time records and an untimely three-page submission in support of its request for common benefit fees.  The firm did not appear before the CBAFCC.  The CBAFCC considered an adjusted lodestar

of $116,044.  The CBAFCC recommended a 0.2 multiplier for an award of $23,209. The firm did not object to this award.

The firm's three-page submission details the firm's work serving as a member of the Discovery Committee, overseeing the sales representative deposition project, scheduling and organizing the deposition process for the LCC, and the firm's work on depositions.

The Court's review of the firm's time indicated some vague entries that the Court could not attribute to the common benefit.  The records also revealed some work that would have been done for individual clients.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $92,835 is appropriate.

### 56.   Zelle Hoffman Voelbel Mason & Gette

The firm of Zelle Hoffman Voelbel Mason & Gette submitted time records and a timely three-page submission on behalf of its request for $733,024 of common benefit fees.[14]  The firm also made a presentation to the CBAFCC.  The CBAFCC considered an adjusted lodestar of $635,935, and it awarded a 0.6 multiplier for an award of $381,561.

Later, the parties made submissions to the Court concerning the CBAFCC's assertion that a member of the firm, James Reece, Esq., had an alleged conflict of interest related to his work with the TPPs and that the firm should therefore not be awarded any common benefit fees.

---

[14]   Subsequent to the CBAFCC Report, the firm submitted an appropriate withdrawal of some client-specific time, thereby adjusting their submitted lodestar to $724,675.50. The Court considers withdrawal of time as part of the firm's submissions.

The firm's three-page submission detailed its extensive work on the Expert Committee. The firm also performed a significant amount of work for the Research and Briefing Committee at the request of the LCC. The firm prepared a white paper on pacemaker claims and was involved in other discovery and pretrial issues.

The firm's time records detail its time spent on document review and other work as directed by the PLC, much in line with the firm's summary of its common benefit time. The Court found a slight amount of entries related to client-specific work and research and plaintiff fact sheets. There is nothing in the record to suggest that the MDL's leadership's lacked knowledge of Mr. Reece's activities, and the record shows that the PLC directed the firm to engage in the above-mentioned activities. Therefore, based on the Court's *de novo* review, the Court finds that an award of $623,216 is appropriate.

### 57. Zimmerman Reed PLLP

The firm of Zimmerman Reed PLLP submitted time records and a timely three-page submission in support of its $3,936,694 request for common benefit attorney fees. The firm did not appear before the CBAFCC. The CBAFCC considered a $3,672,930 adjusted lodestar. The CBAFCC recommended a 1.7 multiplier for an award of $6,243,981. The firm did not object to this recommendation. After further submissions, the CBAFCC readjusted the lodestar to $3,669,034.

The firm's summary detailed Zimmerman Reed's extensive involvement in this litigation. Charles S. Zimmerman, Esq., from the firm was Co-Lead Counsel, Liaison Counsel, Lead Plaintiff negotiator, and Chair of the CBAFCC. The firm described

Mr. Zimmerman's involvement in nearly every aspect of the litigation, including all settlement negotiations, and his leadership role throughout the case.  The firm stated that it "provided the infrastructure and staffing that facilitated document review, deposition preparation, and communication with all lawyers in the field, including the PSC, the MDL claimants' lawyers, the press, the U.S. Attorney, state court lawyers, and the Court."  (ZR at 2.)  Moreover, the firm noted that it supervised attorney Elizabeth Peterson as the MDL person responsible for the document depository, document review, deposition preparation, settlement facilitation, and a variety of other roles.[15]  The firm further noted its role in developing the primary liability theory of the case, specifically identifying the failed polyimide insulation as a design and manufacturing defect.  In addition, the firm noted Mr. Zimmerman's extensive role as lead settlement negotiator. The firm further detailed its roles, among other things, initiating and organizing the MDL, drafting the MDL master complaint, directing discovery, providing two of the bellwether plaintiffs (Beranek and Braund), drafting interrogatories and document requests, reviewing documents, and numerous other tasks throughout the course of the litigation.

The Court reviewed Zimmerman Reed's time records *de novo*.  The time submitted by the firm was, for the most part, compensable time directed toward the common benefit, which is in line with the superior work the Court observed from the firm throughout this litigation.  However, the Court did find some time records that were

---

[15] Notably, however, Ms. Peterson's time records have not been submitted as part of Zimmerman Reed's request here.

related to client-specific work and others that the Court would classify as marketing-related activities, such as entries related to dealing with the press and reviewing news articles and press releases, and those entries for attending preliminary MDL organizational meetings and the ATLA meetings.  The firm submitted some entries that were too vague to allow the Court a meaningful way to determine whether the work was directed to the common benefit, such as "conf call with many people" or "reception." Other entries were connected with purely clerical work that the Court finds inappropriate to compensate as attorney fees, much less common benefit attorney fees.  Such entries included those submitted for paying bills and making bank deposits.  In addition, the firm submitted a small number of time entries that were actually directed to a different MDL. Finally, the Court found that, at times, the firm unnecessarily had more than one attorney in attendance at court hearings.  Therefore, based on the Court's *de novo* review, the Court finds that an award of $3,558,963 is appropriate.

### C.   Enhancement

To enhance a lodestar, a court must explain with reasonable specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.  *See In re Enron Corp. Securities, Derivative & ERISA Litig.*, --- F.3d ---, 2008 WL 4178130 at * 19 (S.D. Tex. Sept. 8, 2008).  The Court acknowledges that in certain circumstances in the contingency-fee context, an enhancement is necessary to adequately compensate those specific attorneys who shouldered the risk of the litigation.  As discussed in many of the submissions to the Court, certain attorneys shouldered a significant amount of risk, especially prior to the

Court's preemption decision.  But after that decision and especially with the first

settlement, the risk greatly diminished because the firms should have reasonably expected

to receive compensation for their efforts.

The CBAFCC did assist the Court in one important regard.  The CBAFCC's

qualitative-focused report awarded ten multipliers greater than 1.0.  In this way, the

CBAFCC gave the Court insight as to which firms went above and beyond the call of

duty in their work for the common benefit.  In some instances, the Court was well aware

of the work by certain law firms to this MDL, especially the firms associated with the

LCC.  The Court knows that these law firms were consistently, deeply involved in nearly

every portion of the litigation.  These firms made themselves available to the Court, to

Claimants, and to Guidant for a significant portion of time.  In this way, from the

beginning of this litigation, these firms took a significantly greater risk and invested more

expense into this MDL.  Other firms that the CBAFCC awarded a greater than 1.0

multiplier were associated with the state cases, the trial team, and one had significant

involvement with briefing multiple issues before the Court.  The Court found the

CBAFCC's Report helpful to the extent that it indentified these ten law firms as

deserving of a multiplier.

Therefore, after conducting its *de novo* review of the time records and the firms'

submissions and considering the history of the MDL, the Court awarded enhancements—

not to the submitted lodestars but rather to the Court's actual determination of

compensable work—to reflect the Court's acknowledgement that certain law firms

should be awarded fees based on the novelty and difficulty of the legal issues in this

MDL, the fact that these firms were likely precluded from doing other work during parts of this fast-paced MDL, the skills required to bring this matter to an efficient close, and the firms' experience and reputation.

Specifically, because of their notable contributions to this MDL, the Court finds that a 1.19 multiplier is appropriate for the four firms associated with the LCC: namely, Lieff, Cabraser, Heimann & Bernstein, LLP; Locks Law Firm; Neblett, Beard & Arsenault, LLP; and Zimmerman Reed, PLLP. In so limiting the enhancements, the Court does not intend to diminish the role that the firms involved in state court litigation or the trial teams played in the MDL. Rather, the Court is acknowledging the extensive role that the LCC played throughout the entire course of this litigation.

The Court notes, however, that because of certain provisions of the MSA that could result in a ratchet-down of the total settlement amount and, in turn, a ratchet-down of the CBAFCC award (*see* fn. 6, *supra*), the Court will not actually award any enhancements until a final determination is made with regard to the final settlement amount and all Claimants' awards have been met.

### D.   Costs

To the Court's knowledge, the CBAFCC never thoroughly evaluated the expenses submitted by those attorneys seeking reimbursement for common benefit expenses prior to the CBAFCC Report. Considering that the Court has now gone through each firm's time records and discounted compensable time for things such as marketing activities, client-related activities, and the like, the Court asks that the CBAFCC again review the files to determine which costs are compensable, in line with the Court's individual

determinations of compensable time.  The Court will trust that a thorough review will be

taken.  The Court expects that, with further review, the amount of compensable expenses

will go below the $3,570,831 estimated by Mr. Zimmerman.  (*See* fn. 7, *supra*.)

### CONCLUSON

During the course of this litigation, the Court has frequently expressed its concerns

about efficiency and minimizing the costs to Claimants.  By its awards today, the Court

is, in no way, judging these attorneys or firms relative to multipliers that have been

awarded in other MDLs across the country.  Rather, the Court is recognizing that the

Court instigated a fee cap for a reason—because the Court believed that fees over

$400/hour for attorneys and $150/hour for paralegals generally were not reasonable for

most attorneys or paralegals involved in this litigation, especially given the unique and

specific contours of this case.  A multiplier significantly greater than 1.0 would thwart

that determination.  Moreover, the Court also rejects any assertions that firms will not

receive a profit without a multiplier.

Finally, as a practical matter that was recognized by many firms who objected to

the CBAFCC's initial report and fee recommendations, the CBAFCC's multiplier

approach often results in unfair, subjective determinations by a committee of firms that

often benefit from the greater multipliers awarded to themselves.  This system potentially

results in a great disparity among firms who did work directly at the request of the PSC

and who were never told that the work they were doing was excessive or inappropriate,

even when, in the case of PSC members, bills were submitted on an ongoing basis during

the course of the litigation.  The qualitative multiplier approach results in a situation

where some firms who did legitimate, requested work are paid some discounted percentage on each dollar that they actually worked, while other firms are paid a 100-plus percentage on the same work that was requested of them.  If anything is going to discourage participation in MDLs, it is that system.  In fact, some would suggest that such a system concentrates work to the in-crowd and discourages diversity of other firms participating in the MDL litigation.

With this MDL, as with other MDLs and other highly complex litigation, the Court accepts that responsible case management requires the Court to maintain a delicate balance of, on one hand, encouraging highly skilled attorneys with significant experience in mass tort litigation to do common benefit work and provide leadership to the case by compensating them fairly, while, on the other hand, maximizing economies of scale so that individual claimants realize the benefit of consolidated and coordinated MDL litigation.  In so doing, individual claimants feel that they have been treated in a fair and just manner.  Moreover, only in this way can the public continue to view MDL litigation as fair and highly beneficial to the public interest and the interests of justice.

The Court is of the view that the lead attorneys and their firms in this case who have done the lion's share of the common benefit work have made this MDL more manageable and efficient.  In doing so, they have served the interests of not only their clients, but all plaintiffs, the Court, and yes, the public and the interests of justice.

The Court hopes that by the result reached today, and based on its *de novo* review of all petitions, the Court has maintained this delicate balance and, in so doing, furthered the goals and benefits of MDL litigation.

Thus, based on the Court's *de novo* review of the fifty-eight petitions and the twenty-one objections, the pleadings, procedural history, and record before the Court, **IT IS HEREBY ORDERED** that:

1.      Consistent with this Order, the Claims Administrator shall distribute by wire transfer from the Common Benefit Attorney Fees Account seventy-five percent (75%) of the compensable attorney fees awarded to the attorneys/law firms listed below**.**

| FIRM NAME | Compensable Award |
|---|---|
| Anapol Schwartz Weiss Cohan Feldman & Smalley PC | $28,014 |
| Aylstock, Witkin, Kreis & Overholtz, PLLC | $877,304 |
| Barnow & Associates, P.C. | $2,689 |
| Barrios, Kingsdorf & Casteix, LLP | $18,352 |
| Becnel Law Firm, LLC | $590,664 |
| Bourland Heflin Alvarez Minor & Matthews, PLC | $12,649 |
| Charfoos & Christensen, P.C. | $42,162 |
| Cohen & Malad, LLP | $483,754 |
| Cuneo Gilbert & LaDuca, L.L.P | $638,172 |
| Douglas & London, P.C. | $11,664 |
| Ellis, Carstarphen, Dougherty & Goldenthal, PC | $21,746 |
| Goldenberg & Johnson, PLLC | $417,976 |
| Grady Schneider & Newman, LLP | $329,854 |
| Hagen Berman Sobol, LLP | $209,178 |
| Harke & Clasby, LLP | $644,631 |
| Heins, Mills & Olson, PLC | $556,493 |
| Hersh and Hersh | $652,726 |
| Hilliard & Munoz, LLP | $65,464 |
| Jennings & Drakulich, LLP | $2,416,529 |
| Joe Crosby | $105,678 |
| John F. Nevares | $5,036 |

| | |
|---|---|
| Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC | $4,325,844 |
| Kershaw, Cutter & Ratinoff, LLP | $1,033,222 |
| Kirtland & Packard, LLP | $2,421 |
| Klafter & Olsen, LLP | $282,933 |
| Lawrence E. Feldman | $19,032 |
| Levin Papantonio Thomas Mitchell Echsner & Proctor, PA | $47,547 |
| Levin Simes Kaiser and Gornick, LLP | $30,600 |
| Lieff, Cabraser, Heimann & Bernstein LLP | $2,374,906 |
| Lockridge Grindal Nauen PLLP | $1,750,826 |
| Locks Law Firm | $1,498,389 |
| Lopez McHugh LLP | $107,768 |
| Lopez, Hodes, Restaino, Milman & Skikos | $525,637 |
| Martin & Jones | $13,302 |
| Marty Wivell | $99,480 |
| Mason Law Firm | $2,343 |
| Milberg Weiss LLP | $47,816 |
| Neblett, Beard & Arsenault, LLP | $2,028,840 |
| Parker Waichman Alonso, LLP | $37,530 |
| Pearson, Randall & Schumacher, PA | $551,526 |
| Preti Flaherty Beliveau & Pachios LLP | $43,062 |
| Price Waicukauski & Riley, LLC | $31,525 |
| Pritzker Ruohonen & Associates PA | $1,000 |
| Rheingold, Valet, Rheingold Shkolnik & McCartney LLP | $964,630 |
| Robinson, Calcagnie & Robinson Inc. | $134,740 |
| Russ Abney | $19,420 |
| Schiffrin, Barroway, Topaz & Kessler, LLP | $678,461 |
| Schneider & Wallace | $81,923 |
| Seeger Weiss LLP | $451,046 |
| Sheller, Ludwig & Badey | $25,000 |
| The Schmidt Firm, LLP | $77,518 |
| Todd & Weld LLP | $156,684 |
| Wallace & Graham, PA. | $5,983 |
| Weitz & Luxenberg PC | $472,713 |
| Wexler Toriseva Wallace, LLP | $10,612 |
| Whatley Drake & Kallas, LLC | $92,835 |
| Zelle, Hofmann, Voelbel, Mason & Gette | $623,216 |
| Zimmerman Reed, PLLP | $3,558,963 |

**Total:**                                      $30,340,028

2.     The attorneys/firms that are entitled to receive compensable attorney fees from the Common Benefit Attorney Fees Account shall contact Mr. Chris Lordan, Controller of Analytics, Inc., at 952-404-5723 to coordinate the wire transfers.  Absent further Order of this Court, these distributions shall be made within five business days after each attorney/firm has completed the paperwork necessary to effectuate the wire transfer.

3.     Any fees incurred by the Claims Administrator in connection with the wire transfers ordered by the Court shall be paid from the Common Benefit Cost Fund.

4.     To ensure that there are enough funds remaining at the end of this litigation, the remaining portions of the common benefit awards and any enhancements will be distributed at the close of this litigation.

5.     Consistent with this Order, the CBAFCC shall review the submissions made by attorneys for common costs and make recommendations to the Court in that regard.

Dated:  December 23, 2008              s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      Judge of United States District Court