# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This document applies to: <br><br> ALL ACTIONS | **ORDER REGARDING REIMBURSEMENT FOR COMMON COSTS** |

This matter is before the Court on the request of the Plaintiffs' Steering Committee ("PSC") for reimbursement for certain attorney fees and expenses from this Court's $10,000,000 set aside for Common Costs. Based upon the submissions of the parties, including the pleadings, records, and arguments of counsel, and for the reasons stated herein, the Court adopts, in part, and rejects, in part, the PSC's recommendations. The Court orders the distribution of Common Costs consistent with this Order.

## BACKGROUND

The background of this multi-district litigation ("MDL") is set forth more fully in the Court's previous orders. The Court addressed attorney fees at length in its Orders dated March 7, 2008, August 21, 2008, and December 23, 2008. (Doc. Nos. 2636, 3201, and 3558.) Briefly, this MDL commenced in November 2005 when the Judicial Panel on Multidistrict Litigation consolidated certain actions and transferred them to the District of Minnesota for pre-trial proceedings against Defendants Guidant Corporation, Guidant Sales Corporation, and Cardiac Pacemakers, Inc. (collectively, "Guidant"). Individual

claimants[1] commenced these actions against Guidant for injuries alleged to have been caused by certain defective implantable defibrillator devices and pacemakers manufactured by Guidant.

## DISCUSSION

In its July 24, 2009 (Doc. No. 4037) and July 29, 2009[2] (Doc. No. 4362) requests, the PSC recommended allocations in five distinct categories related to the Common Cost allocation: (1) Common Benefit Attorney Fee and Costs Committee ("CBAFCC") fees and costs; (2) Claims Review Committee ("CRC") fees and costs; (3) Claims Administration fees and costs; (4) Plaintiffs' Steering Committee ("PSC") and Lead Counsel Committee ("LCC") fees and costs; and (5) Common Benefit expenses.

The Court conducted a thorough examination of all submissions in each of these categories. This was an enormous undertaking. The Court reviewed thousands of pages of receipts and submissions. Firms did not submit their receipts and summaries in a uniform manner. Even when expense summaries were submitted, the summaries often did not reflect receipts that were included in the submissions. And for a great majority of firms, receipts were submitted out of chronological (or any other) order and, as a result, the Court was forced to organize and categorize the voluminous receipts before it could

---

[1]     As with previous orders, and for the sake of consistency and simplicity, the Court will refer to the parties who are subject to the terms of the Master Settlement Agreement and the jurisdiction of this Court as "claimants," consistent with §§ I.D, III.F, and VI.A-B of the Master Settlement Agreement.

[2]     This request was initially submitted on July 2, 2009 and then amended on July 29, 2009, due to a mathematical error in the first submission. The request was not filed on ECF until December 23, 2009.

cross-check the firms' submissions for accuracy. Many firms reported time and expenses that were not related to their designated committee, the common benefit, or common costs. Some firms submitted receipts for expenses that were specifically delineated as expenses for *other* MDLs. Needless to say, the firms' lack of organization in collecting and recording their expenses resulted in the Court taking a great deal longer to rule on these matters than the Court would have had the firms been organized. Any delay that has occurred in the Court reaching a determination can be attributed to the firms.

That said, the Court will address each category in turn.

## I.     CBAFCC

In February 2008, the Court appointed the CBAFCC "for the purpose of recommending to the Court the specific allocation of attorney fees and costs among all counsel entitled to share in the Common Benefit Attorney Fee Fund and all counsel and/or parties entitled to share in the Common Cost Fund." (February 15, 2009 Order at 3.) The Court appointed the following attorneys to the CBAFCC: Charles S. Zimmerman, Zimmerman Reed, PLLP; Elizabeth Cabraser, Lieff, Cabraser, Heimann & Bernstein, LLP; Christopher A. Seeger, Seeger Weiss, LLP; Nicholas J. Drakulich, The Drakulich Law Firm; Michael K. Johnson, Goldenberg & Johnson, PLLC; and Gale D. Pearson, Pearson, Randall, Schumacher & LaBore, PA. The Court designated Charles S. Zimmerman as chair of the CBAFCC.

In its July 24, 2009 Brief, the PSC detailed the CBAFCC's work. (*See* Doc. 4037 at 22-31.) The CBAFCC met in person on five occasions to prepare the procedures for evaluating time and expenses in the litigation. They also held a number of conference

calls and met in four different cities with the attorneys who submitted common benefit fee and cost reimbursement applications. Then, the CBAFCC met in person on a number of occasions to discuss and draft the recommendations to the Court. The CBAFCC filed its report regarding common benefit fees and costs in April 2008. (Doc. No. 2792.)

The Court ruled on the CBAFCC's recommendations on December 23, 2008. (Doc. No. 3558.) In that Order, the Court noted "the CBAFCC's complete failure to provide the Court with any detail, summary or not, as to each firm's [recommendation]." (*Id*. at 13.) The Court noted its frustration with the CBAFCC's failure to conduct a quantitative review of the firms' common benefit submissions, and the Court further stated that the "CBAFCC failed to provide the Court with any meaningful basis for its recommendations." (*Id*. at 15.) Because of the CBAFCC's failure to provide any detail as to their recommendations, the Court, at that time, was forced to conduct a line-by-line review of each of the firm's time submissions in order to come up with a meaningful approach for payment of the common benefit attorney fees.

The Court also noted that, to its knowledge, the CBAFCC had never thoroughly evaluated the expenses submitted by the Common Benefit attorneys prior to the CBAFCC Report. (*Id*. at 79.) As a result, the Court directed the CBAFCC to review anew the cost submissions in light of the Court's determination of compensable time. (*Id*. at 79-80.) Subsequently, in early 2009, the CBAFCC met for two days to consider the cost submissions. (Doc. No. 4037 at 24-25.) The CBAFCC submitted its report regarding common benefit costs on July 29, 2009. (Doc. No. 4362; *see also* fn.2, *supra*.)

Subsequently, six firms submitted requests for reimbursement for their work on the CBAFCC:

## A.    Goldenberg & Johnson, PLLC

The firm requested $68,336, an amount that included the fee cap in its calculation. The PSC noted that Mr. Johnson attended all CBAFCC meetings and presentations. The PSC recommended awarding the firm's request in full, along with $11,093.44 of related expenses.

Mr. Johnson submitted detailed time records. Mr. Johnson distinguished between his travel time spent working, which the Court finds compensable, and his pure travel time that was not otherwise spent working. Consistent with the Court's treatment of other common benefit time submissions throughout this Order, the Court does not find pure travel time compensable. As a result, the Court finds that Mr. Johnson is appropriately compensated $51,600 for his CBAFCC time. In addition, the Court finds that Mr. Johnson is entitled to compensation for his expenses of $11,093.44.

## B.    Lieff, Cabraser, Heimann & Bernstein, LLP

The firm requested $32,120. This amount included time submissions through June 2008, for a total of 80.3 hours. Ms. Cabraser did not include travel time in her request. Upon review, the Chair included time for which he stated that he knew Ms. Cabraser was present—including 12.5 hours spent in Phoenix, Arizona, reviewing original common benefit cost submissions. The Chair recommended payment of $37,120 for fees and $25,022.35 of expenses.

Ms. Cabraser submitted very detailed time records. The Court concurs with the Chair's recommendation, insofar as it compensates the firm for all of the time submitted—$32,120. However, the Court will not compensate the firm for time that was not requested by the firm. In addition, the great majority of the firm's receipts for submitted expenses either pre-dated the Court's appointment of the CBAFCC, or did not correspond to the firm's time submissions or summaries of expenses. On this basis, the Court finds that $1,344.00 of expenses are appropriately compensated.

### C. Pearson, Randall, Schumacher & LaBore, PA

The firm submitted a request of $64,780, an amount that only included time submissions through April 2008. The Chair added time for which he knew Ms. Pearson was present, including 12.5 hours spent in Phoenix, Arizona, reviewing original common benefit cost submissions. Ms. Pearson did not submit this time with the firm's request. Including this added time, the PSC recommended payment of $70,080 for fees and $7,350.10 of expenses.

The Court deducted a significant amount of Ms. Pearson's time because it was pure travel time not described as time spent working while traveling. In addition, similar to the Court's treatment of Ms. Cabraser's time, above, the Court did not compensate Ms. Pearson for her unreported time. As such, the Court finds that a total fee payment of $23,180 is appropriate. In addition, the Court conducted a line-by-line review of the firm's receipts. The Court made deductions for some expenses that were excessive or extraneous. The Court finds that the firm is appropriately compensated $6,388.48 for its expenses.

### D. The Drakulich Law Firm

The firm submitted a request for $57,320 of fees. The PSC noted that Mr. Drakulich attended CBAFCC meetings and presentations. The PSC's brief also noted that Mr. Drakulich removed his travel time related to the CBAFCC meetings and presentations. The PSC recommended payment of $42,020 for fees and $12,563.28 of expenses.

The Court completed a detailed review of the firm's time records and concurs with the PSC's recommendation for Mr. Drakulich's CBAFCC fees. However, although Mr. Drakulich submitted a summary page indicating $12,563.28 of expenses, he only submitted receipts for $1,108.40. The Court will only compensate for his documented expenses. As a result, the Court orders that the firm be compensated $42,020 for its fees and $1,108.40 for expenses.

### E. Seeger Weiss, LLP

The firm submitted a request for $65,400. The PSC noted that Mr. Seeger's time submission included several entries for non-CBAFCC related activities, including PSC conference calls. The PSC further noted that Mr. Seeger was unable to attend all CBAFCC meetings in person, but that he did attend portions of these meetings by phone. Mr. Seeger also participated in some CBAFCC conference calls. The PSC recommended payment of $41,800 for fees and $9,481.80 of expenses.

The firm's records do indicate significant time entries for non-CBAFCC-related activities. After deductions for pure travel time and PSC-related activities, the Court finds that $13,800 of Mr. Seeger's time is compensable. Mr. Seeger submitted some

hotel receipts that were not related to Guidant CBAFCC work.  The Court finds that $8,863.42 of expenses could be attributed to Mr. Seeger's work on the CBAFCC.

### F.     Zimmerman Reed, PLLP

The firm requested $245,572.50 for its work on the CBAFCC.  Charles S. Zimmerman was the Chair of the CBAFCC and attended all CBAFCC meetings and presentations.  The firm also submitted fee requests for partners Robert Hopper and Ronald Goldser and associate Elizabeth Peterson.  The PSC noted that Mr. Hopper and Ms. Peterson provided assistance to Mr. Zimmerman on the CBAFCC, managed the committee's work, prepared reports, and reviewed the time and cost submissions. Further, Ms. Peterson and Zimmerman Reed paralegals distributed CBAFCC communications to counsel, coordinated and received CBAFCC submissions, coordinated meetings, and distributed data to committee members.  The PSC stated that after removing some time for "non-common benefit activities" and some duplicative entries, the PSC recommended payment of $240,325.50 for fees plus $54,755.36 for expenses.

The firm's request included some pure travel time.  In addition, the firm included a significant portion of time for partners at the firm whose time submissions duplicated that of Mr. Zimmerman—the only firm member appointed to the committee.  Nearly all of these partners' time was incurred in creating the "qualitative multipliers" that were submitted by the CBAFCC prior to the Court's December 23, 2008 Order.  Because this work was duplicative and excessive in light of the work product the Court received, and because the Court did not authorize three Zimmerman Reed partners to be appointed to

the CBAFCC, the Court will not compensate the firm for the full measure of these additional partners' time. The Court also deducted expenses that were excessive or extraneous, as well as expenses related to Mr. Zimmerman's trips from his Phoenix home to Minneapolis for meetings. Finally, the Court specifically deducted some miscellaneous travel expenses, including a private plane charter for $16,692.88 that goes beyond the pale of an acceptable cost.[3] Thus, the Court finds that the firm is appropriately compensated $186,360.50 for its CBAFCC time and $32,062.48 for its submitted expenses.

Thus, the Court's authorized payments are as follows:

| Firm | Compensable Fees | Compensable Expenses | Total |
|------|------------------|----------------------|-------|
| Goldenberg & Johnson, PLLC | $51,600.00 | $11,093.44 | $62,693.44 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $32,120.00 | $1,344.00 | $33,464.00 |
| Pearson, Randall, Schumacher & LaBore, PA | $23,180.00 | $6,388.48 | $29,568.48 |
| The Drakulich Law Firm | $42,020.00 | $1,108.40 | $43,128.40 |
| Seeger Weiss, LLP | $13,800.00 | $8,863.42 | $22,663.42 |
| Zimmerman Reed, PLLP | $186,360.50 | $32,062.48 | $218,422.98 |
| Totals | | | $409,940.72 |

---

[3] The Court discovered this expense upon its preliminary, spot-check review of the many expense records submitted to the Court. The Court's discovery of this egregiously excessive expense compelled the Court to perform a line-by-line review of all expense submissions.

**II.     Claims Review Committee (CRC): Post 2/2008 Time and Expenses**

In the Court's August 1, 2008 Order, the Court appointed the following individuals to the CRC:  Stacy K. Hauer of Zimmerman Reed, PLLP, Co-Chair; Yvonne Flaherty of Lockridge Grindal Nauen PLLP, Co-Chair; Thomas Anapol of Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.; Richard J. Arsenault of Neblett, Beard & Arsenault; Gale Pearson of Pearson, Randall, Schumacher & LaBore, PA; Hunter Shkolnik of Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP; Kenneth Seeger of Seeger, Salvas LLP; Neil Overholtz of Aylstock, Witkin, Kreis & Overholtz, PLLC; and Michael Johnson of Goldenberg & Johnson, PLLC.

The CRC was charged with determining settlement distributions among the participating claimants.  According to the July 24, 2009 submission, the CRC first conferred and prepared a proposed settlement protocol that was approved by Magistrate Judge Arthur J. Boylan on August 7, 2008.  The Court's October 10, 2008 Order set a deadline of November 26, 2008, for the CRC to complete its allocation recommendations.  The CRC reviewed EIF requests of approximately 2,100 claimants. The July 24, 2009 submission reported that base allocations were calculated pursuant to the March 19, 2008 Settlement Plan of Allocation, under the direction of Elizabeth Peterson.  The CRC reviewed each EIF claim and the committee, as a whole, determined a final allocation amount.

The July 24, 2009 submission indicated that CRC members performed much of the preparatory work at their own offices and held many of the CRC's preliminary

meetings by conference call.  The CRC met in-person on two occasions for a final review of EIF requests.

Individual plaintiffs' counsel and *pro se* claimants were notified of their base and EIF allocations on October 20, 2008, and October 31, 2008, respectively.  Pursuant to a Court-approved process, claimants were allowed to object to their base allocations or EIF awards to the CRC.  Approximately 600 claimants objected to their allocations.  The CRC then re-reviewed the submissions for each objecting claimant and conferred regarding each objection.  Then, the CRC prepared individual responses to each of the objections and provided these to counsel and the Special Masters on November 26, 2008.  After the CRC's work was complete, the CRC members submitted their time to the co-chairs for auditing.[4]  The CRC has requested $1,092,783.75 for its fees and costs.  This number exceeds the $750,000 estimate that was included in Mr. Zimmerman's September 5, 2008 estimate to the Court by $342,783.75.[5]

---

[4]    Notably, the Court did not see the Chairs' "mark-ups" of the CRC members' records that were submitted.

[5]    Mr. Zimmerman submitted a letter to the Court on September 5, 2008, that purported to offer the Court an estimate of the costs to be charged against the Court-ordered $10,000,000 set aside for common costs.  In that letter, Mr. Zimmerman stated that he had "reviewed all settlement administration time and costs incurred to date, as well as projected these settlement administration costs going forward to completion of the settlement process."  In addition, Mr. Zimmerman stated that he had "asked all authorized persons who have contributed time and expenses to the settlement process to provide their time and expense reports" including the Special Master, claims administrator, and the Garretson firm.  Despite Mr. Zimmerman's diligence, the reports submitted to the Court in July 2009, just ten months after these estimates were made, came in significantly higher than the estimated costs.

**A. Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.**

The firm requested $66,500 for its CRC fees. The brief indicated that Mr. Anapol reviewed applications, actively participated in committee conference calls, and attended both in-person meetings. The PSC recommended an award of $62,500 for fees and $5,833.36 of expenses.

After deductions for pure travel time, consistent with the Court's overall treatment of submissions, the Court finds $58,300 of compensable time. As for expenses, the Court concurs with the co-chair recommendation of $5,833.36.

**B. Aylstock, Witkin, Kreis & Overholtz, PLLC**

The firm requested $88,012.50 for its CRC fees. The July 24, 2009 Brief indicated that Mr. Aylstock's recorded time reflected time spent reviewing EIF applications, his active participation in committee conference calls, and his attendance at both in-person meetings. The co-chairs made minor adjustments and recommended a fee award of $86,012.50 for fees and $3,474.75 of expenses.

The Court made some minor adjustments for client-related (non-CRC) time and for pure travel time. On this basis, the Court finds $78,412 of compensable time. In addition, the Court concurs with the co-chairs' recommendation of $3,474.75 of expenses.

**C. Goldenberg & Johnson, PLLC**

The firm requested $52,800. The co-chairs noted that Mr. Johnson's recorded time reflected time spent reviewing EIF applications, his active participation in

committee conference calls, and his attendance at both in-person meetings.  The co-chairs recommended $50,850 of fees and $693.30 of expenses.

The Court concurs with the co-chairs' recommendation of $50,850 of attorney fees.  However, because the firm only submitted an expense receipt for copies totaling $257.55, the Court will only reimburse that amount.

### D.     Lockridge Grindal Nauen PLLP

The firm requested $213,272.50 for attorney fees.  Yvonne Flaherty from the firm was one of the co-chairs of the CRC.  According to the July 24, 2009 Brief, Ms. Flaherty reviewed EIF applications and organized and attended conference calls and in-person meetings.  She organized and implemented the EIF review process and final recommendations.  She also drafted CRC responses to the EIF allocation objections.  Her Co-chair recommended an award of $213,272.50 for fees and $1,085.51 of expenses.

The time records submitted by the firm showed time for Tinzing Artman and Brian Gravely, but not for Ms. Flaherty.  Artman and Gravely's time totaled $192,015, and the Court finds this amount compensable.  The firm did not provide any receipts, so there are no compensable expenses.

### E.     Neblett Beard & Arsenault

The firm requested $165,062.50.  The CRC indicated that the firm reviewed a number of EIF applications, actively participated in committee conference calls, and attended in-person meetings.  The firm also helped draft the CRC responses to allocation objections.  The co-chairs recommended award of $162,262.50 and expenses of $10,603.94.

The firm provided detailed billing records to support its submission. The firm's time included that of an associate, Jennifer Hoekstra, who summarized all of the EIF claims. Based on the Court's review, the Court concurs with the PSC's recommended award of $162,262.50. Further, the Court finds $9,215.45 of compensable expenses with supporting receipts.

### F.     Pearson, Randall, Schumacher & LaBore, PA

The firm requested $31,200. The CRC indicated that Ms. Pearson reviewed EIF applications, actively participated in committee conference calls, and attended both in-person meetings. The Co-chairs recommended a $31,200 award and no expenses.

Ms. Pearson's two-page submission included a number of vague entries. The Court finds $27,000 of compensable time and no expenses.

### G.     Seeger, Salvas LLP

The firm requested $74,620. The CRC indicated that Mr. Seeger reviewed EIF applications, actively participated in committee conference calls, and attended in-person meetings. The co-chairs recommended an award of $74,620 for fees and $2,649.83 of expenses.

The Court made slight deductions for pure travel time and finds that the firm's total compensable time is $70,220. The Court concurs with total expenses of $2,649.83.

### H.     Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP

The firm requested $86,555. The brief indicated that Hunter Shkolnik reviewed EIF applications, participated in committee conference calls, and attended both in-person

meetings.  After minor adjustments, the co-chairs recommended $85,355 for fees and $958.48 of expenses.

The Court made deductions for pure travel time and for one duplicate entry.  The Court finds total compensable time of $73,955.  There were no receipts, so no expenses will be reimbursed.

## I.    Zimmerman Reed, PLLP

The firm requested $275,500.  Stacy Hauer from the firm was Co-Chair of the CRC.  She reviewed EIF applications and organized and attended committee conference calls and in-person meetings.  She organized and implemented the EIF review process and the execution of the final recommendations.  Ms. Hauer also drafted the CRC responses to allocation objections.

Ms. Hauer's billing records were quite thorough.  After removing some time submitted for duplicate entries, the Court finds $253,125 of compensable CRC time.  The firm did not submit any expenses in this category, so none will be compensated.

Thus, the Court finds that the CRC firms' compensable fees and expenses are as follows:

| Firm | Compensable Fees | Compensable Expenses | Total |
|---|---|---|---|
| **Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.** | $58,300.00 | $5,833.36 | $64,133.36 |
| **Aylstock, Witkin, Kreis & Overholtz, PLLC** | $78,412.00 | $3,474.75 | $81,886.75 |
| **Goldenberg & Johnson, PLLC** | $50,850.00 | $257.55 | $51,107.55 |

| | | | |
|---|---|---|---|
| **Lockridge Grindal Nauen PLLP** | $192,015.00 | $0 | $192,015.00 |
| **Neblett, Beard & Arsenault** | $162,262.50 | $9215.45 | $171,477.95 |
| **Pearson, Randall, Schumacher & LaBore, PA** | $27,000.00 | $0 | $27,000.00 |
| **Seeger, Salvas LLP** | $70,220.00 | $2,649.83 | $72,869.83 |
| **Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP** | $73,955.00 | $0 | $73,955.00 |
| **Zimmerman Reed, PLLP** | $253,125.00 | $0 | $253,125.00 |
| **Total** | | | $987,570.44 |

## III.     Claims Administration

The July 24, 2009 Brief indicated that Zimmerman Reed had the primary responsibility for collecting, tracking, data entry, and accuracy review of the claimant settlement submissions.  Zimmerman Reed hired seven additional staff members to support these tasks.  The Zimmerman Reed attorneys, along with contract attorneys from the firm of Lockridge Grindal Nauen PLLP, were responsible for (1) receiving and storing individual claimants' settlement document submissions; (2) data entry of claimant information into a central database; (3) tracking claimants' settlement documents; (4) initially reviewing claimants' submitted documents for compliance; (5) e-mailing counsel with deficiencies; and (6) reviewing corrections.  These firms also played a role in collecting and checking documents related to the EIF claims.

As part of this request for claims administration reimbursement, the PSC also included Liaison Counsel's work regarding the settlement process and procedures.

Specifically, the PSC detailed Elizabeth Peterson's work with defense counsel creating, verifying, editing, and finalizing the settlement list of 8,550 eligible claimants. Attorneys Charles S. Zimmerman, Randy Hopper, and Elizabeth Peterson also worked with defense counsel to clarify and designate deficiencies with claimants' settlement documents.

In addition, the PSC noted its responsibilities assisting *pro se* claimants who wished to participate in the settlement. Zimmerman Reed assigned a full-time paralegal to assist the *pro se* claimants in completing their settlement paperwork. As of the PSC's July 24, 2009 Brief, Zimmerman Reed had assisted seventy-four *pro se* claimants to become payment eligible in the settlement.

Finally, Zimmerman Reed, in its role as Liaison Counsel, coordinated communication with all Plaintiffs' counsel and provided education as to the settlement terms, procedures, and progress. The firm also was the main contact for attorneys and claimants who had questions regarding all aspects of the settlement.

The July 24, 2009 Brief includes requests from February 1, 2008, to February 1, 2009, related to the Claims Administration of the settlement. The PSC requested Claims Administration reimbursement for two firms: Lockridge Grindal Nauen PLLP, and Zimmerman Reed, PLLP.

## A. Lockridge Grindal Nauen PLLP

The firm submitted a request of $576,022.50 for fees and no request for expenses. The PSC noted that the firm provided claims administration support related to settlement documentation review and allocation documentation review. The PSC brief noted:

> The Chair disallowed submissions for claims allocation work already submitted to the Court in the previous Common Benefit submission (i.e., Claims administration time prior to February 1, 2008[,] and reimbursed through the Court's December 23, 2008 Common Benefit Order – "Finally, the firm was extensively involved with the settlement allocation process, especially given their recent Medtronic MDL experience.") and a slight amount of non-PTO time. [sic]

(7/24/09 Brief at 48.)  The PSC recommended a payment of $137,882.50.

The Court's detailed review of time records revealed that almost all time submitted was spent on entering claim data into a database at Zimmerman Reed law firm or reviewing and coding records for settlement purposes.  The Court compared the firm's current request with its previous Common Benefit time submission and noted that a great portion of the firm's time was already submitted and compensated pursuant to the Court's December 23, 2008 Order on Common Benefit Attorney Fees.  Notably, even the month of February 2008 was already compensated by the December 23, 2008 Order, a detail that the PSC appears to have overlooked.  Thus, considering these factors, the Court authorizes payment of $97,112.50 for the firm's fees.

### B.    Zimmerman Reed, PLLP

Zimmerman Reed requested $1,826,880 in fees and $43,311.17 in expenses.  The PSC's brief noted that the firm provided the majority of the labor involved in the claims administration process.  The PSC disallowed time that was already compensated in the firm's CRC request, as well as some client-related entries. The PSC recommended a payment of $1,561,836.25 for fees and $43,311.17 in expenses for Zimmerman Reed.

The Court completed a close review of the time records and compared them to the firm's other submissions.  Deducting the time that was already accounted for Stacy

18

Hauer's CRC work, a minimal amount of client work, some non-PTO 6 expenses, and a few duplicate entries, the Court finds $1,555,052.50 to be compensable time. As for expenses, the Court made some cuts for extraneous and excessive costs and finds total compensable expenses of $42,343.40.

Thus, the Court authorizes payment as follows:

| Firm | Compensable Fees | Compensable Expenses | Total |
|---|---|---|---|
| Lockridge Grindal Nauen PLLP | $97,112.50 | $0 | $97,112.50 |
| Zimmerman Reed, PLLP | $1,555,052.50 | $42,343.40 | $1,597,395.90 |
| Total Claims Administration Award | | | $1,694,508.40 |

## IV. PSC/LCC

The July 24, 2009 Brief summarizes the PSC/LCC time from February 2008 to February 2009. The brief describes the PSC/LCC's significant involvement in determining the so-called "death protocol" for deceased claimants. The LCC engaged in negotiations with Guidant regarding settlement document deficiencies and finalized settlement documentation for claimants. The LCC provided information to claimants' counsel about the settlement and relayed settlement information regarding the settlement requirements, deadlines, and settlement progress. The LCC played an important role in securing the 95% settlement participation requirement. And, since claimants' disbursements began in December 2008, LCC members have continued to be intimately

involved in finalizing other matters related to the settlement, including TPP issues, the ratchet-back, and resolving remaining deficiencies.

The PSC requested PSC/LCC reimbursement for six firms:

## A. Kellogg Huber Hansen Todd Evans & Figel PLLC

The firm submitted a request of $24,205, which was adjusted to $20,355 after the fee cap. The firm's time related to its work negotiating and finalizing the Claimant's Release for the MDL settlement, as well as compiling information for the PSC's request for Common Benefit Attorney Fees and Costs. The PSC recommended payment of $20,355 plus $1,875.78 of expenses.

The Court's review of Kellogg Huber's time demonstrated some pure travel time on trips to LCC/PSC meetings or meetings with the Court. Some of the expenses were excessive, and a small number did not have accompanying receipts. The Court finds that the firm's total compensable time is $17,555.00 with total compensable expenses of $1,655.32.

## B. Lieff, Cabraser, Heimann & Bernstein, LLP

The firm did not submit a request for common benefit time or expenses related to the PSC/LCC from February 1, 2008, through February 1, 2009. Yet the PSC recommended payment of $30,000 of expenses for that period. The PSC/LCC later confirmed that the $30,000 reflects MDL assessments paid by the firm. The Court finds that payment of that amount is appropriate.

### C.  Klafter, Olsen and Lesser LLP

The firm requested $39,487.55, which Mr. Lesser indicated in an affidavit was for 77.45 hours of time.  Upon review, the PSC accounted for 62.15 hours and found one duplicative entry.  After the fee cap and these adjustments, the PSC recommended payment of $24,540 plus $15,035.36 of expenses.  The expenses include $15,000 of assessments.

The Court's review of the records indicated that Mr. Lesser did not include the fee cap in his submission.  In addition, the Court removed a minimal amount of client-specific time and finds $26,620 of compensable LCC/PSC time.  Further, the Court will reimburse the firm $15,035.36 for its expenses.

### D.  Neblett, Beard & Arsenault

The firm requested $511,100 for its PSC/LCC time.  After the fee cap, the PSC considered a lodestar of $410,194.  The July 24, 2009 Brief detailed Mr. Arsenault's work as a member of the LCC who participated in weekly LCC conference calls, bi-weekly Settlement Administration calls, and was involved in the death protocol, resolving claimant deficiencies, and dealing with various settlement issues.  After reductions for entries related to another case and other activities not compensable pursuant to PTO 6, the PSC recommended payment of $402,237.50 for fees and $25,549.39 for expenses.

The Court's review of the firm's time revealed a great deal of "receipt and review of email" entries with no follow-up detailed.  On some occasions, this time amounted to more than seven hours a day.  The Court recognizes that reviewing e-mails and

correspondence to keep apprised of the goings-on of the MDL is a valuable task to effectively manage this litigation, especially for a prominent player involved in the claims administration and PSC. However, the Court finds that the firm's time spent reading and reviewing e-mails is excessive, especially considering that the review of such e-mails often did not require any follow-up, as evidenced by the firm's own detailed time records. The uniform fifteen minute entries strike the Court as excessive, if not implausible, as it is highly unlikely that every single review of an e-mail, without follow-up, required fifteen minutes of time. Moreover, not even Lead Counsel recorded such a significant amount of time for such activities. As a result, the Court reduced the firm's time to reflect what the Court believes is a reasonable amount of time spent reading and reviewing these e-mails. In addition, the Court found travel entries that were detailed as pure travel time—that is, travel time not spent working. The Court authorizes a $145,260 payment to the firm for its time. After some extraneous expense deductions, the Court finds that the firm's compensable expenses are $25,500.29.

### E. Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP

Without explanation, the LCC/PSC included an $80.74 request for LCC/PSC expenses for this firm. The firm submitted a summary expense report for $1,009.55 without accompanying documentation. The expense report did not reflect charges that appeared to be connected in any way to compensable Guidant LCC/PSC activities. Because the Court has no information by which to evaluate the firm's request, the Court will not pay any money for this firm's alleged expenses.

### F. Zimmerman Reed, PLLP

The firm requested $249,207.50, which reflected the fee cap. Charles S. Zimmerman's time reflected his work as Lead Counsel and Liaison Counsel. As Liaison Counsel, the firm was responsible for communicating with all claimants' counsel. Mr. Zimmerman and Mr. Hopper were the lead negotiators with the TPPs. The firm was involved in the deceased claimant settlement procedures, negotiations with Guidant regarding claim deficiencies, ratchet back negotiations, and other settlement issues. The firm indicated that it cross-checked the time that the firm submitted in other categories to ensure that there was no duplicate efforts. After minor adjustments to remove client-specific work and activities not compensable pursuant to PTO 6, the PSC/LCC recommended payment of $244,317.50. The PSC/LCC also recommended payment of $132,318.14 for related expenses.

The Court reviewed and removed a small amount of time that was duplicative, administrative, or pure travel time. The firm is appropriately compensated for $241,362.00 of its time. The Court deducted some marketing-related and other excessive or extraneous expenses and finds that $126,806.41 of the firm's submitted expenses are compensable.

Thus, the Court authorizes payment as follows:

| Firm | Fees | Expenses | Total |
|---|---|---|---|
| **Kellogg Huber Hansen Todd Evans & Figel, PLLC** | $17,555.00 | $1,655.32 | $19,210.32 |
| **Klafter Olsen & Lesser LLP** | $26,620.00 | $15,035.36 | $41,655.36 |

| | | | |
|---|---|---|---|
| **Lieff, Cabraser, Heimann & Bernstein, LLP** | $0 | $30,000.00 | $30,000.00 |
| **Neblett Beard & Arsenault** | $145,260.00 | $25,500.29 | $170,760.29 |
| **Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP** | $0 | $0 | $0 |
| **Zimmerman Reed, PLLP** | $241,362.00 | $126,806.41 | $368,168.41 |
| **Total** | | | $629,794.38 |

## V.  Common Benefit Attorney Fee Expenses

As briefly noted above, the firms who requested reimbursement for common benefit attorney fees in 2008 submitted documentation at that time to support their requests for associated expense reimbursement.  In the Court's December 23, 2008 Order, the Court directed the CBAFCC to review the submitted expenses in light of the Court's Order and to make recommendations consistent with that Order.  (December 23, 2008 Order at 79 (Doc. No. 3558).)  The CBAFCC completed this review and submitted its Report of the Common Benefit Attorneys Fee and Cost Committee Regarding Common Benefit Costs to the Court, in amended form, on July 29, 2009. (Doc. No. 4362.)

In its July 29, 2009 submission, the CBAFCC noted that it met after the Court's December 23, 2008 Order and, considering the criteria set forth in PTO 6, came up with five categories of disallowed expenses:  (1) pre-MDL costs; (2) non-documented costs; (3) hotel, transportation, and meal caps pursuant to PTO 6; (4) charges not authorized by PTO 6; and (5) individual client costs.  The CBAFCC then met in person for two days

and reviewed every entry and every page of each firm's submission. (July 29, 2009 brief at 5.) The CBAFCC noted that at least one Committee member viewed every page of every submission. (*Id*.)

The CBAFCC flagged costs that fell within the five categories of disallowed expenses. The CBAFCC allowed the firms, one last time, to submit supporting documentation for their expense requests. To the extent that firms submitted such supporting documentation, the CBAFCC considered it. The CBAFCC then created a disbursement detail and disallowment packet to each firm, outlining the disallowed costs and the categories for disallowment. This disallowment packet was sent to each firm on April 24, 2009. (*Id*. at 6.) The firms were given an opportunity to object with a deadline of May 15, 2009. (*Id*.) Eight firms objected to the CBAFCC's initial conclusions. The CBAFCC then reviewed the objections and amended the recommendations as it saw fit.

Because the CBAFCC conducted such a thorough review of the firms' expense reports after the Court's December 23, 2008 Order and directives, the Court only reviewed the submissions for those firms who objected to the CBAFCC's initial conclusions regarding disallowments. In addition, the Court reviewed submissions from the LCC as to the MDL Assessments paid to the LCC by the firms that now request reimbursement from the common cost fund. Specifically, the Court reviewed detailed expense submissions and receipts as to what costs the MDL Assessments were used to fund. The Court wanted assurance that it was not authorizing money to be paid for unnecessary or excessive costs. After its detailed review, the Court is assured that the MDL Assessments were used to fund appropriate common costs. As a result, the Court

does not quarrel with the common cost fund reimbursing the firms in full for their MDL Assessments that were paid to the LCC.

The Court will address the expense submissions of each of the eight objecting firms in turn.

**A.      Aylstock, Witkin, Kreis & Overholtz, PLLC**

The firm submitted $180,063.18 request for common benefit cost reimbursements, which included $140,000 of MDL assessments paid.  The CBAFCC disallowed some costs related to pre-MDL activities and non-PTO 6 related costs.  The CBAFCC recommended payment of $155,067.18.  The firm objected to this recommendation.

In its objection, the firm specifically noted that its expenses (beyond the $140,000 of assessments) are legitimate MDL common benefit expenses and that the firm had audited its expenses in order to ensure that these were legitimate.  The firm noted its heavy involvement in the litigation and that, at times, its expenses may not have matched receipts exactly because some expenses were divided among other MDLs for which the firm was simultaneously traveling.  The CBAFCC reviewed the firm's additional submissions and recommended payment of $167,684.06.

The Court extensively reviewed the firm's receipts that were submitted along with its objection.  The Court finds that a large portion of the firm's claimed common benefit expenses were, indeed, undocumented.  Based on the Court's review, the Court finds that the firm should be compensated $164,053.43 for its Common Benefit expenses.

**B. Barnow & Associates PC**

The firm requested $384.25 for common benefit costs and expenses. Initially, the CBAFCC disallowed certain cost submissions that occurred prior to the inception of the MDL and other individual client-related costs. The CBAFCC's initial recommendation was $189.25. The firm objected to this recommendation and submitted further documentation to support its request. After considering this additional information, the CBAFCC modified its recommendation to $327.

The Court thoroughly reviewed the firm's submission and found that some fax charges were incurred prior to the inception of the MDL. After careful review of the firm's submissions, including the documented Fed Ex charges and the firm's submissions that were sent to the CBAFCC with the firm's objection, the Court finds that the firm should be compensated $190.73 for its common benefit expenses.

**C. Barrios Kingsdorf & Casteix LLP**

The firm of Barrios Kingsdorf & Casteix, LLP, submitted a $21,214.92 request for common benefit cost reimbursement, which included $15,000 of MDL assessments. The CBAFCC disallowed some expenses related to pre-MDL costs, individual client-related costs, and costs that exceeded the PTO 6 caps. The CBAFCC initially recommended payment of $17,511.74. The firm objected to this recommendation.

Specifically, the firm objected to several disallowments that the firm alleged had been counted more than once when totaling the firm's final recommendation. In addition, the firm asserted that the dollar amount of the firm's request was greater than that set forth by the independent auditors. Upon re-review, the CBAFCC acknowledged

that some disallowances had been counted twice. Thus, the CBAFCC adjusted its recommendation to $19,768.04.

Based on the Court's close review of the firm's submissions, including the summaries that the firm submitted with its objection to the CBAFCC's initial recommendation, the Court concurs with the CBAFCC's recommendation of $19,768.04.

### D. Hersh & Hersh

The firm submitted a request for $69,661 for its common benefit expenses. The firm did not have any MDL assessments. The CBAFCC reviewed the firm's request and because there was no documentation for the firm's summary of requests, the CBAFCC initially recommended an allocation of $0.00. The firm objected to this recommendation and submitted additional documentation to support its request. According to the CBAFCC, that documentation totaled $63,902.71. Upon re-review, the CBAFCC disallowed submissions that occurred prior to the inception of the MDL, as well as non-PTO 6 related costs, requests that were over the set caps for hotel, taxi, and meal allowances, and individual client-related costs. Then, the CBAFCC recommended payment of $41,722.82.

After considering the firm's submissions, and with some minor deductions for expenses that were excessive or extraneous, the Court finds $40,837.44 of compensable expenses.

### E. Jennings & Drakulich

The firm requested $154,960.50 in common benefit expenses, which included $25,000 of MDL assessments. The CBAFCC disallowed pre-MDL costs and those that

were over the caps for hotel, taxi, and meal allowances, and recommended payment of $141,900.73. The firm objected to this amount, asserting that certain expenses had been mistakenly deducted. On re-review, the CBAFCC determined that Jennings & Drakulich was entitled to $149,317.51 of expenses.

The Court thoroughly reviewed the firm's submissions, including the firm's handwritten ledgers and the over 500 pages of receipts submitted with the objection. The Court found some pre-MDL submissions, some expenses that exceeded PTO 6 caps, and other non-reimbursable expenses, including: (a) "travel delays" that amounted to $9.95 nearly every time Mr. Drakulich traveled; and (b) unexplained "expense reimbursements." Based on its review, the Court finds that the firm is entitled to $142,362.69 for its expenses.

## F.     Kershaw Cutter & Ratinoff LLP

Kershaw & Cutter submitted a request for $139,866.76 of common benefit expenses, which included $90,000 of assessments. The CBAFCC disallowed some non-PTO 6 costs, submissions that were not supported by documentation, and requests that were over the CBAFCC set caps for hotel, taxi, and meal allowances. The CBAFCC recommended payment of $136,889.61. The firm objected to this recommendation. Specifically, the firm objected to specific instances where the CBAFCC disallowed portions of certain expenses due to the caps.

Upon re-review, the CBAFCC considered some "clarifying information" that the firm had provided regarding the disallowments, including evidence verifying group dinners that the CBAFCC had considered solo dinners, as well as evidence regarding the

length of hotel stays and the like. The CBAFCC then recommended an allocation of $139,445.42.

The Court has reviewed the firm's submissions, including the firm's objection. The Court finds that the firm is appropriately compensated $139,445.42 for its common benefit expenses, including its MDL assessments.

### G. Lieff, Cabraser, Heimann & Bernstein, LLP

The Lieff, Cabraser, Heimann & Bernstein, LLP firm requested $367,654.36 for its common benefit costs, which included $125,000 of MDL assessments. The CBAFCC disallowed some non-PTO 6 costs and others that exceeded the set caps and recommended payment of $344,060.13. The firm objected to one hotel stay that was disallowed because it was not accompanied by a receipt. After reviewing the missing receipt, the CBAFCC adjusted the firm's recommendation to $345,185.61. The Court concurs with the CBAFCC's recommendation.

### H. Neblett Beard & Arsenault

The firm requested $259,188.39 in common benefit cost reimbursements, which included $190,000 in MDL assessments. The CBAFCC disallowed certain submissions that were incurred prior to the inception of the MDL, costs that exceeded the set caps for hotels, taxis, and meals, as well as some non-PTO 6 related costs. The CBAFCC initially recommended an allocation of $247,558.13.

The firm objected to this recommendation. Specifically, the firm objected to certain instances where it only claimed a certain portion of a receipt, but the entire receipt amount was disallowed. In addition, the firm objected to the blanket disallowment of all

pre-MDL costs. Upon re-review, the CBAFCC adjusted some of the excessive disallowments and recommended payment of $248,742.51.

The Court has reviewed the firm's submissions, including the firm's objections to the CBAFCC's initial recommendation. The Court stands by the so-called "blanket" deductions for pre-MDL costs. As noted by the CBAFCC, much of this pre-MDL time was marketing-related, conferences, or related to the firm's individual clients. Thus, based on the Court's review, the Court finds that the firm is appropriately compensated $248,742.51 for its common benefit costs.

Thus, the Court authorizes the following payments:

| Firm | Compensable Expenses |
|---|---:|
| Anapol, Schwartz, Weiss, Cohen, Feldman & Smalley, P.C. | $55,566.56 |
| Aylstock, Witkin, Kreis & Overholtz, PLLC | $164,053.43 |
| Barnow & Associates | $190.73 |
| Barrios Kingsdorf & Casteix, LLP | $19,768.04 |
| Becnel Law Firm | $161,704.17 |
| Bourland Heflin Alvarez Minor & Matthews PLC | $703.20 |
| Charfoos and Christensen, P.C. | $4,360.10 |
| Cohen & Malad, LLP | $135,163.86 |
| Cuneo Gilbert & LaDuca, LLP | $13,756.76 |
| Douglas & London, PC | $5,852.05 |
| Ellis, Carstarphan, Dougherty & Goldenthal, PC | $0 |
| Goldenberg & Johnson, PLLC | $37,911.00 |
| Grady Schneider & Newman LLP | $0 |
| Hagen Berman Sobol, LLP | $76,995.50 |
| Harke & Clasby, LLP | $174,218.37 |
| Heins Mills & Olson, PLC | $141,606.97 |
| Hersh & Hersh | $40,837.44 |
| Hilliard & Munoz, LLP | $0 |
| Jennings & Drakulich, LLP | $142,362.69 |
| Joe Crosby, Esq. | $0 |
| John F. Nevares and Associates | $5,360.20 |
| Kellogg Huber Hansen Todd Evans & Figel, PLLC | $294,592.30 |

| | |
|---|---|
| Kershaw Cutter & Ratinoff LLP | $139,445.42 |
| Kirtland & Packard, LLP | $0 |
| Klafter & Olsen, LLP | $44,526.68 |
| Lawrence E. Feldman & Associates | $1,513.33 |
| Levin Papantonio Thomas Mitchell Echsner & Proctor, PA | $159,528.42 |
| Levin Simes Kaiser and Gornick, LLP | $0 |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $345,185.61 |
| Lockridge Grindal Nauen PLLP | $141,991.09 |
| Locks Law Firm | $203,408.84 |
| Lopez Hodes Restaino Milman & Skikos | $119,687.68 |
| Lopez McHugh, LLP | $4,646.70 |
| Martin & Jones, PLLC | $27,486.00 |
| Martha Wivell, Esq. | $282.00 |
| Mason Law Firm | $0 |
| Milberg, LLP (formerly Milberg Weiss) | $13,564.26 |
| Neblett Beard & Arsenault | $248,742.51 |
| Parker Waichman Alonso, LLP | $0 |
| Pearson, Randall, Schumacher & LaBore, PA | $72,963.91 |
| Preti Flaherty Beliveau Pachios & Haley, LLP | $7,546.61 |
| Price, Waicukauski & Riley, LLC | $561.03 |
| Pritzker Ruohonen & Associates, PA | $0 |
| Rheingold, Valet, Rheingold, Shkolnik & McCartney, LLP | $126,933.89 |
| Robinson Calcagnie & Robinson, Inc. | $15,276.80 |
| Russ Abney, Esq. | $0 |
| Schiffrin Barroway Topaz & Kessler, LLP | $51,564.01 |
| Schneider & Wallace | $2,272.12 |
| Seeger Weiss, LLP | $78,083.49 |
| Sheller Ludwig & Badey, PC | $4,191.43 |
| The Schmidt Firm, LLP | $37,140.00 |
| Todd & Weld, LLP | $3,046.84 |
| Wallace & Graham, PA | $938.36 |
| Weitz & Luxenberg, PC | $110,036.73 |
| Wexler Toriseva Wallace, LLP | $121,023.03 |
| Whatley Drake & Kallas, LLC | $1,177.61 |
| Zelle Hofmann Voelbel & Mason, LLP | $40,327.52 |
| Zimmerman Reed, PLLP | $234,984.89 |
| Alexander Hawes & Audet | $50,000.00 |
| TOTAL | $3,883,080.18 |

## CONCLUSION

On November 24, 2009, the LCC filed its Memorandum Regarding the Current Status of the Common Cost Fund. (Doc. No. 4233.) In that Memorandum, the LCC analyzed the attorney fees and costs incurred so far, the fee distributions remaining from the Court's initial award of fees, the fees incurred in the evaluation and processing of settlement claims, and the previously unanticipated time and expenses incurred in completing the case. The LCC recognized that a shortfall exists of approximately $3 million if all firms were to be compensated at the levels recommended by the PSC.

The LCC reviewed several possibilities as to how this shortfall could be funded. First, the LCC discussed a number of areas in which certain counsel who have required a great deal of hand-holding, as well as certain categories of claimants (namely, *pro se* or late-participating claimants), have contributed to the common detriment of this MDL. The LCC suggested a sort of "tax" be assessed on these groups to cover the additional time spent by the LCC to resolve their issues.

Second, the LCC recommended that the Court review and reallocate the 25% currently being heldback from the Court's December 23, 2009 Order on common benefit attorney fees. Specifically, the LCC suggested that the Court make a redetermination of those firms' awards based on the solely qualitative multipliers set forth by the LCC in their recommendations to the Court prior to that Order.

Third, the LCC recommended that the Court consider reallocating unclaimed funds that remain from the Court's December 23, 2008 Order. The LCC suggested that because thirteen firms have failed to request their awarded common benefit fees for

nearly a year, the Court should consider these fees waived and redistribute the unclaimed money—approximately $426,224—to be paid toward claims administration costs.

Finally, the LCC addressed the Court's August 11, 2009 suggestion that any overages in common benefits or fees would be accommodated by vacating that portion of the Court's December 23, 2008 Order in which the Court allowed for potential enhancements for the four lead firms in this litigation. (Doc. No. 4044.) The LCC suggested that this would result in an unfair penalty to these firms.

The Court finds that, as a preliminary measure to compensate the overages, the Court will vacate that portion of the Court's December 23, 2008 Order in which the Court allowed for enhancements for the four lead firms in this MDL. Although the Court recognizes the commitment of these firms, the Court finds that it would be unfair to reduce the compensable fees and expenses of the many firms who performed work toward the common benefit of this MDL, while allowing a select few firms to receive an enhanced multiplier that exceeds their compensable expenses. That said, the Court recognizes that even the removal of the multiplier may not fully compensate for the overages on the common costs. The Court finds that all of the common benefit firms should bear any additional overages proportionately. As a result, the Court will allow all of the common costs to be paid in full, but the Court will still maintain the 25% holdback of the Common Benefit Attorney Fee distribution from the Court's December 23, 2008 Order until the close of this litigation so that the Court can ensure that enough funds remain. At the close of the litigation, the Court will reserve the right to make any

proportional reductions in each firm's allocation for Common Benefit Attorney Fees to accommodate any overages.

Thus, **IT IS HEREBY ORDERED** that:

1.      That portion of the Court's December 23, 2008 Order which found a 1.19 multiplier appropriate for the four firms associated with the LCC is hereby **VACATED**.

2.      The Court respectfully requests that within ten (10) days of this Order, the LCC contact the Court to recommend the specific MDL accounts from which the Court should order payment of common costs, consistent with this Order.  Once the Court is provided with this information, the Court promptly will issue a short order directing wire transfer payment to be made from the specified accounts.

3.      To ensure that there are enough funds remaining at the end of this litigation, the remaining portions of the previously-ordered common benefit attorney fees (*see* December 23, 2008 Order), less any potential proportional deductions, will be distributed at the close of this litigation.


Dated:  January 8, 2010                          s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge