# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This document Relates to ALL ACTIONS | **ORDER AMENDING THE AUGUST 7, 2009 ORDER AMENDING THE DISTRIBUTION OF FUNDS FOR ALL CLAIMANTS** |

This matter is before the Court based on the Plaintiffs' Lead Counsel Committee (hereinafter "LCC") request for approval of a 2.7432856% individual ratchetback to the gross allocated settlement amount of each claimant participating in the Guidant MDL Settlement Program as required under Section II(A)(1) of the Master Settlement Agreement (hereinafter "MSA") for the Guidant MDL. Based on the LCC's submission, the Court grants the request.

## BACKGROUND[1]

On December 10, 2007, members of the MDL Plaintiffs' LCC and Counsel for Boston Scientific and Guidant reached an amended settlement agreement for 8550 claims relating to several of Guidant's implantable cardiac devices. Pursuant to that agreement, on December 1, 2008, Plaintiffs provided Guidant with settlement documents for 95% of the eligible settlement participants. Upon reaching this 95% participation threshold, the Guidant MDL Settlement was guaranteed to go forward, and it did. Upon completion of

---

[1] This background and accompanying order were proposed by the LCC and set forth in the LCC's motion, Document No. 4630.

the required settlement paperwork, claimants were provided with their gross allocated settlement amounts (hereinafter "gross allocations") by the Claims Review Committee.[2] These gross allocations were based on the supposition that Plaintiffs would reach the participation level listed in Section II(A)(1) of the MSA and would thereby receive the full negotiated settlement amount of $240,000,000. After reaching this 95% participation threshold, the parties agreed that the vast majority of claimants' obligations under the MSA had been met and further agreed that these claimants were eligible for payment. Accordingly, on December 19, 2008, the Court ordered a partial distribution of settlement funds so as to provide payment eligible claimants with access to a portion of their gross allocations. (Doc. No. 3403.) The partial distribution meant allocated funds would be retained by the claims administrator (hereinafter "holdback funds"). Although these funds were already paid by Guidant and Boston Scientific into the general settlement fund, they were not to be released to claimants until further order of the Court. The parties agreed, and the Court ordered, that the remaining funds would be held back by the claims administrator until Medicare and Medicaid obligations were resolved by The Garretson Firm, participation in Third-Party Payor (hereinafter "TPP") Global Lien Resolution Programs had been concluded, and any potential ratchetback under Section II(A)(1) of the MSA was determined so that a final distribution of settlement funds could be made. Since the creation of these holdback funds, the LCC and the parties

---

[2] Gross allocations for claimants participating in the Guidant MDL Settlement Program were calculated using the Court approved allocation plan and evaluation by the Claims Review Committee and ultimately approved by the Court through the Special Masters' Allocation Reports.

2

have been working diligently to ensure that a final distribution could be made as soon as possible.

I.  *Global Resolution of Medicare and States' Medicaid Liens*

Through the MSA, the parties appointed The Garretson Firm to negotiate and resolve any liens with Medicare and Medicaid for all claimants participating in the Guidant MDL Settlement Program. The Garretson Firm negotiated a global lien resolution program with Medicare for all participating settlement claimants with outstanding Medicare liens. The Garretson Firm also worked with all 50 states and Puerto Rico to resolve, in most cases on a discounted basis, all outstanding Medicaid liens for claimants participating in the Guidant MDL Settlement Program. The Garretson firm is completing the final payments to Medicare and state Medicaid agencies on behalf of these claimants.

In December 2009, Medicare received payment for satisfaction of its outstanding lien for the majority of Guidant MDL Settlement Claimants. The difference between the original Court-ordered holdback for Medicare and the final amount paid was released to claimants. The Garretson Firm is currently working with the LCC and the claims administrator to finalize a second, supplemental Medicare payment for claimants who were not included in the first round payment. Both the LCC and The Garretson Firm anticipate one additional, final payment to Medicare to resolve liens for claimants who were recently approved by Guidant and the Special Master for participation and payment in the Guidant MDL Settlement Program. These funds will continue to be held back by

the claims administrator until a final determination is made by The Garretson Firm and the funds can be paid to Medicare or released back to the claimant.

In addition, beginning in August 2009 the claims administrator, under the direction of The Garretson Firm, provided payment to various states' Medicaid programs as full satisfaction of Medicaid lien obligations for Guidant MDL Settlement Claimants. The Garretson Firm is currently working with the LCC and the claims administrator to finalize the last few remaining claimants' obligations in a small number of states. As with the remaining Medicare funds, these funds will continue to be held back by the claims administrator until a final determination is made by The Garretson Firm and the funds can be paid to Medicaid or released back to the claimant.

II.     *Voluntary Participation in Third-Party Payor Lien Resolution Programs*

After the December 19, 2008 Distribution Order, the LCC began working to resolve the outstanding settlement issues. Through that effort, the LCC entered into global lien resolution agreements with United Healthcare, several Blue Cross Blue Shield plans, WellPoint, Inc., and counsel representing other general TPP plans. Pursuant to these agreements, the LCC agreed to hold back a set amount of settlement funds for each eligible claimant to allow for possible voluntary participation in these global lien resolution programs. On August 7, 2009, the Court entered a Confidential Order Amending the December 19, 2008 Order Distributing Claims Funds to provide for these new holdback agreements. (Doc. No. 4040.) Depending on an individual claimant's circumstance, a claimant's holdback amount under this new agreement could range between 5% and 25% of their gross allocation. At the close of the participation phase for

each program, the LCC requested that the Court release the holdback funds for those claimants who chose not to participate in the lien resolution program. Specifically, the LCC requested the Court release the funds that had been set aside for a claimant's voluntary participation in the TPP Global Lien Resolution Program under the August 2009 Order. The Court has subsequently ordered the release of funds for all claimants who chose not to participate in any global lien resolution program.

a. <u>United Healthcare Global Lien Resolution Completion</u>

At this time, the global lien resolution program is complete for United Healthcare. Final payments to United Healthcare for claimants participating in that voluntary global lien resolution program pursuant to the negotiated terms of that program were ordered on March 2, 2010. (Doc. No. 4555.) At that time, the claims administrator, by order of the Court, released holdback funds not required under the terms of the program to resolve a claimant's United Healthcare lien obligation to the claimant.

b. <u>Blue Cross Blue Shield and WellPoint Global Lien Resolution Programs Completion</u>

At this time, global lien resolution programs are completed for the various Blue Cross Blue Shield programs with whom a program was negotiated with the LCC.[3] Final

---

[3] Blue Cross Blue Shield has provided the LCC with final payment amounts under the global resolution program for claimants from the following Blue Cross Blue Shield plans: WellPoint, Inc., Blue Cross and Blue Shield Association, Blue Cross and Blue Shield of Florida, Blue Cross and Blue Shield of Michigan, Blue Cross Blue Shield of California, Horizon, Blue Cross Blue Shield HealthCare Services, Blue Cross Blue Shield of Tennessee, Wellmark, Blue Cross Blue Shield of Rhode Island, Blue Cross Blue Shield of Alabama, Excellus, Blue Cross Blue Shield of Idaho, Premera, Blue Cross Blue Shield of Louisiana, and Regence. Blue Cross and Blue Shield of Florida, Blue Cross

(Footnote Continued on Next Page)

payments to the Blue Cross Blue Shield plans, including WellPoint, Inc., for the majority of claimants who voluntarily participated in the BCBS Global Lien Resolution Program were ordered on June 16, 2010. (Doc. No. 4627.) The claims administrator has been instructed to release any holdback funds not necessary under the terms of the program to satisfy the Blue Cross Blue Shield's lien obligation to the claimant.

      c.      <u>Other Private Third-Party Payor Global Lien Resolution Program</u>

Finally, the LCC filed with the Court on June 11, 2010, a motion to release holdback funds for claimants who chose to participate in the voluntary Global Lien Resolution Program for other TPPs but who were not designated by participating TPPs as having an outstanding lien obligation. (Doc. No. 4625.) The Court approved this motion on June 16, 2010. (Doc. No. 4628.) The LCC will file a motion, similar to those filed for United Healthcare and Blue Cross Blue Shield programs, for payment of lien obligations for claimants who were identified by participating TPPs as having an outstanding lien once the lien information is final and made available by the Lien Resolution Administrator.

---

(Footnote Continued From Previous Page)
and Blue Shield of Michigan, and the Blue Cross and Blue Shield Association continue to have a small number of outstanding final payment amounts. The LCC will file a similar motion supplementing the payment amounts for these three Blue Cross Blue Shield plans upon receipt.

## Section II(A)(1) of the Master Settlement Agreement

Under Section II(A)(1) of the Master Settlement Agreement, if Plaintiffs are unable to produce 8,400 settlement participants the final settlement amount owed by Guidant will be reduced proportionally:

> **Reduction in Settlement Fund Based on Participation.** To the extent that fewer than 8400 Claimants participate in the Settlement as "Participating Claimants" (as defined in Section Ill.F.3), the amount of the Settlement Fund will be reduced by an amount equal to the difference between 8400 and the number of Participating Claimants, divided by 8400, and multiplied by $240,000,000. As an example, if there are 8300 Participating Claimants (i.e., 100 less than 8400), the amount of the Settlement Fund will be reduced by $2,857,143 ([8400 - 8300] / 8400 x $240,000,000) to $237,142,857.

At the time of the Court's December 2008 Distribution Order, the parties agreed that based on what was known about outstanding claimants' settlement documentation, the final ratchetback could be no more than 5% for each participating settlement claimant. Based on this calculation, the Court ordered that 5% of all participating settlement claimants' gross allocations be held back in order to allow for the possible future reduction of gross allocations under Section II(A)(1) of the MSA.

LCC and Guidant were in disagreement as to the final implementation of Section II(A)(1) of the MSA, specifically the definition of "Participating Claimant." The parties filed briefs and had oral argument before the Court on the issue. The Court provided its ruling on December 14, 2009. (Doc. No. 4319.) Under the Court's December 14, 2009 definition of Participating Claimant, Plaintiffs cannot produce the number of participating claimants necessary to avoid any potential ratchetback under

Section II(A)(1) of the MSA. Therefore, a final ratchetback amount is required under the Guidant MDL Master Settlement Agreement.

I. *Ratchetback Determination*

In order to ensure that the opportunity to participate in the Guidant MDL Settlement Program was available to all interested claimants, the LCC and the Court continued to make efforts to reach out to all non-participating claimants beyond participation deadlines.[4] The end result of these efforts was realized with the acceptance of the final participating claimant by Guidant on May 11, 2010. The Court approved the Seventh and Final Special Masters' Allocation Report on May 19, 2010 (Doc. No. 4600), which established the final participation number as 8,180 claimants. With the number of settlement participants determined, the final ratchetback amount can be calculated:

> Ratchetback formula under Section II(A)(1) of the MSA:
> ((8,400 – No. of participants)/8,400) * Negotiated Settlement Total
>
> Negotiated Settlement Total: $240,000,000
> Final No. of participants: 8,180
> Ratchetback Amount: ((8400-8180)/8400) * $240,000,000 = $6,285,714.29
>
> Final Settlement Total: $240,000,000 - $6,285,714.29 = $233,714,285.71

Based on the Court's February 15, 2008 Order on Common Benefit Funds (Doc. No. 2603) the negotiated settlement amount was divided as follows: 85% for claimants' allocations and 15% for Common Benefit Attorney Fees and Costs. When this division is

---

[4] Non-participating claimant is defined in this case as a settlement eligible claimant who had not submitted the required settlement participation forms as required under the MSA.

applied to the Final Settlement Total the following funds are available for claimants' allocation and Common Benefit Attorney Fees and Costs:

| Final Settlement Total | Claimant Allocations | Common Benefit |
|---|---|---|
| $233,714,285.71 | $190,157,142.85 | $43,557,142.86 |

Through the seven Allocation Reports approved by the Special Masters, $195,520,837.81 was allocated in base and EIF allocations to claimants participating in the Guidant MDL Settlement Program. To calculate the final Amended Allocation for each claimant the following formulas are used:

Formula: Amount allocated / Amount available to allocate
$195,520,837.81 / $190,157,142.85 = 97.2567144%

Final Claimant Amended Allocation Amount Formula:
Gross Allocation * 97.2567144%
(Exhibit A)

The final amended allocation amount creates a ratchetback amount for each individual claimant that is less than the original agreed upon holdback amount (100% - 97.2567144% = 2.7432856%). The Court now has the information required to release the difference between the 5% currently being held back for all Guidant MDL Settlement Claimants for ratchetback satisfaction and the 2.7432856% actually required for the discharge of Section II(A)(1) of the MSA.

Based on the information above, the Court agrees that the previously ordered 5% holdback for all claimants is no longer necessary. For the majority of Guidant MDL Settlement Claimants, the determination of the final ratchetback amount allows for the Court to approve the final payment of settlement funds from the claims administrator. Therefore, it is now proper for the Court to amend its August 7, 2009 Amended

Distribution Order for all settlement claimants and order the final settlement payment for claimants whose current holdback is currently 5% of their gross allocation. Therefore, **IT IS HEREBY ORDERED** that:

1. All awards shall be issued by Analytics on checks drawn from the held back funds remaining in the Settlement Fund Escrow Account.

2. For claimants found on Allocation Reports 1-7, Analytics shall release funds held-back pursuant to The Garretson Firm's Medicare and/or Medicaid initial hold-back that are in excess of the amount necessary to satisfy any final Medicare and/or Medicaid reimbursement, as set forth by The Garretson Firm. For those claimants for whom The Garretson Firm has yet to determine a final Medicare and/or Medicaid reimbursement amount, no funds shall be released at this time in relation to the Medicare and/or Medicaid hold-back.

3. For claimants found on Allocation Reports 1-7, Analytics shall apply the final ratchetback amount of 2.7432856% to their current gross allocations.

4. For claimants found on Allocation Reports 1-7, Analytics shall release the difference between the Court ordered 5% holdback and the 2.7432856% required to satisfy Section II(A)(1) of the Guidant Master Settlement Agreement for all Guidant MDL Settlement Claimants.

5. For claimants found on Allocation Reports 1-7 whose current holdback equals 5% of their gross allocation their settlement funding is satisfied in full.

6. Each attorney of record may withhold from the check payable to his or her client the amount of attorney fees described in the Court's Order dated August 21, 2008, in proportion to the following formula:

Attorney Fees to be taken from current Distribution: (Final Amended Allocation Amount * contingency fee allowed under the Court's August 21, 2008 Order) – (Attorney fees taken already from claimant's previous distributions).

7. Before mailing a settlement check to any claimant's attorney of record or *pro se* claimant, Analytics shall provide written verification to the Court, the LCC, and Guidant that the amount of each check to be distributed complies with the terms of this Order and the terms of Pretrial Order No. 38 (in which Analytics was "directed to withhold ten percent (10%) of the net of those *pro se* Claimants' awards").

Date: June 23, 2010        s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge